In The
# United States Court of Appeals
### For The Second Circuit

## ELIZABETH BROKAMP,

*Plaintiff – Appellant*,

v.

**LETITIA JAMES, in her official capacity as Attorney General of the State of New York, BETTY A. ROSA, in her official capacity as the New York State Commissioner of Education, NEW YORK STATE EDUCATION DEPARTMENT BOARD OF REGENTS, NEW YORK STATE BOARD OF MENTAL HEALTH PRACTITIONERS, THOMAS BIGLIN, in his official capacity as a member of the New York State Board of Mental Health Practitioners, RODNEY MEANS, in his official capacity as a member of the New York State Board of Mental Health Practitioners, TIMOTHY MOONEY, in his official capacity as a member of the New York State Board of Mental Health Practitioners, HELENA BOERSMA, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SARGAM JAIN, in her official capacity as a member of the New York State Board of Mental Health Practitioners, RENE JONES, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SUSAN L. BOXER KAPPEL, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SARA LIN FRIEDMAN McMULLIAN, in her official capacity as a member of the New York State**

*(Caption Continued Inside Cover)*

**Board of Mental Health Practitioners, ANGELA MUSOLINO, in her official capacity as a member of the New York State Board of Mental Health Practitioners, MICHELE LANDERS MEYER, in her official capacity as members of the New York State Board of Mental Health Practitioners, NATALIE Z. RICCIO, in her official capacity as a member of the New York State Board of Mental Health Practitioners, HOLLY VOLLINK-LENT, in her official capacity as a member of the New York State Board of Mental Health Practitioners, JILL R. WELDUM, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SUSAN WHEELER WEEKS, in her official capacity as a member of the New York State Board of Mental Health Practitioners,**

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT FOR
THE NORTHERN DISTRICT OF NEW YORK (NEW YORK CITY)

_____

## JOINT APPENDIX

_____

Jeffrey H. Redfern
Robert J. McNamara
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320

*Counsel for Appellant*

Alan J. Pierce
HANCOCK ESTABROOK LLP
1800 AXA Tower I
100 Madison Street
Syracuse, New York 13202
(315) 565-4546

*Counsel for Appellant*

Robert Johnson
INSTITUTE FOR JUSTICE
16781 Chagrin Boulevard, #256
Shaker Heights, Ohio 44120
(703) 682-9320

*Counsel for Appellant*

Frederick A. Brodie
NEW YORK STATE OFFICE
  OF THE ATTORNEY GENERAL
The Capitol
Albany, New York 12224
(518) 776-2317

*Counsel for Appellees*

# TABLE OF CONTENTS

Page

Docket Entries ............................................................................................. A-1

First Amended Complaint for Declaratory and Injunctive Relief
     filed June 21, 2021 ....................................................................... A-13

Defendant Letitia James' Motion to Dismiss for Lack of Subject Matter
Jurisdiction and Failure to State a Claim,
With Attachments,
     filed July 6, 2021 ......................................................................... A-36

     **Attachments:**

     Declaration of Mark G. Mitchell in Support of
     Defendant Letitia James' Motion to Dismiss
          dated July 6, 2021 .......................................................... A-38

     Memorandum of Law in Support of
     Defendant Letitia James' Motion to Dismiss
          dated July 6, 2021 .......................................................... A-40

Defendants' Motion to Dismiss for Lack of
Subject Matter Jurisdiction and
Failure to State a Claim,
With Attachments,
     filed August 6, 2021 ..................................................................... A-57

     **Attachments:**

     Declaration of Mark G. Mitchell in Support of
     Defendants' Motion to Dismiss
          dated August 6, 2021 ..................................................... A-60

     Memorandum of Law in Support of Defendants' Motion to Dismiss
          dated August 6, 2021 ..................................................... A-62

**Plaintiff's Response to Education Department Defendants' and Attorney General Letitia James' Motions to Dismiss**
     filed August 26, 2021.................................................................. A-80

**Defendants' Memorandum of Law in Reply To Plaintiff's Response to Defendants' Motions to Dismiss,**
     filed September 17, 2021 ...................................................... A-108

**Memorandum-Decision and Order granting Motions to Dismiss**
     filed November 22, 2021 ...................................................... A-117

**Judgment**
     filed November 22, 2021....................................................... A-140

**Notice of Appeal**
     filed December 15, 2021 ....................................................... A-142

Case 21-3050, Document 3-2, 12/16/2021, 3229361, Page2 of 13

**Query    Reports    Utilities    Help    What's New    Log Out**

APPEAL,CLOSED

# U.S. District Court
## Northern District of New York - Main Office (Syracuse) [NextGen CM/ECF Release 1.6 (Revision 1.6.2)] (Albany)
## CIVIL DOCKET FOR CASE #: 1:21-cv-00389-DNH-ATB

| | |
|---|---|
| Brokamp v. James | Date Filed: 04/05/2021 |
| Assigned to: Judge David N. Hurd | Date Terminated: 11/22/2021 |
| Referred to: US Magistrate Judge Andrew T. Baxter | Jury Demand: None |
| Cause: 28:1983 Civil Rights | Nature of Suit: 950 Constitutional - State Statute |
| | Jurisdiction: Federal Question |

**Plaintiff**

**Elizabeth Brokamp**                    represented by    **Alan J. Pierce**
Hancock Estabrook, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY 13202
315-565-4546
Email: apierce@hancocklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*
*Fee Status: paid_2019*

**Jeffrey H. Redfern**
Institute for Justice
901 North Glebe Road - Suite 900
Arlington, VA 22203
612-308-1084
Email: jredfern@ij.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Phv*
*Fee Status: paid*

**Robert Johnson**
Institute for Justice
16781 Chagrin Blvd. #256
Shaker Heights, OH 44120
703-682-9320
Email: rjohnson@ij.org
*ATTORNEY TO BE NOTICED*
*Bar Status: Phv*

**A-1**

*Fee Status: paid_2021*

**Robert McNamara**
Institute for Justice
901 North Glebe Road - Suite 900
Arlington, VA 22203
703-682-9320
Email: rmcnamara@ij.org
*ATTORNEY TO BE NOTICED*
*Bar Status: Phv*
*Fee Status: paid*

V.

**Defendant**

**Letitia James**                      represented by  **Mark G. Mitchell**
*in her official capacity as Attorney*                 New York State Attorney General -
*General of the State of New York*                     Albany
                                                       The Capitol
                                                       Albany, NY 12224
                                                       518-776-2583
                                                       Email: mark.mitchell@ag.ny.gov
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Bar Status: Active*
                                                       *Fee Status: waived_2019*

**Defendant**

**Betty Rosa**                         represented by  **Mark G. Mitchell**
*in her official capacity as the New York*             (See above for address)
*State Commissioner of Education*                      *ATTORNEY TO BE NOTICED*
                                                       *Bar Status: Active*
                                                       *Fee Status: waived_2019*

**Defendant**

**New York State Education**           represented by  **Mark G. Mitchell**
**Department Board of Regents**                        (See above for address)
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Bar Status: Active*
                                                       *Fee Status: waived_2019*

**Defendant**

**New York State Board of Mental**     represented by  **Mark G. Mitchell**
**Health Practitioners**                               (See above for address)
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Bar Status: Active*
                                                       *Fee Status: waived_2019*

**Defendant**

**Thomas Biglin**
*in his official capacity as a member of
the New York State Board of Mental
Health Practitioners*

represented by **Mark G. Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED
Bar Status: Active
Fee Status: waived_2019*

**Defendant**

**Rodney Means**
*in his official capacity as a member of
the New York State Board of Mental
Health Practitioners*

represented by **Mark G. Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED
Bar Status: Active
Fee Status: waived_2019*

**Defendant**

**Timothy Mooney**
*in his official capacity as a member of
the New York State Board of Mental
Health Practitioners*

represented by **Mark G. Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED
Bar Status: Active
Fee Status: waived_2019*

**Defendant**

**Helena Boersma**
*in her official capacity as a member of
the New York State Board of Mental
Health Practitioners*

represented by **Mark G. Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED
Bar Status: Active
Fee Status: waived_2019*

**Defendant**

**Sargam Jain**
*in her official capacity as a member of
the New York State Board of Mental
Health Practitioners*

represented by **Mark G. Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED
Bar Status: Active
Fee Status: waived_2019*

**Defendant**

**Rene Jones**
*in her official capacity as a member of
the New York State Board of Mental
Health Practitioners*

represented by **Mark G. Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED
Bar Status: Active
Fee Status: waived_2019*

**Defendant**

**Susan L. Boxer Kappel**
*in her official capacity as a member of
the New York State Board of Mental
Health Practitioners*

represented by **Mark G. Mitchell**
(See above for address)
*ATTORNEY TO BE NOTICED
Bar Status: Active
Fee Status: waived_2019*

**Defendant**

**Sara Lin Friedman McMullian**                    represented by  **Mark G. Mitchell**
*in her official capacity as a member of*                          (See above for address)
*the New York State Board of Mental*                               *ATTORNEY TO BE NOTICED*
*Health Practitioners*                                             *Bar Status: Active*
                                                                   *Fee Status: waived_2019*

**Defendant**

**Angela Musolino**                                represented by  **Mark G. Mitchell**
*in her official capacity as a member of*                          (See above for address)
*the New York State Board of Mental*                               *ATTORNEY TO BE NOTICED*
*Health Practitioners*                                             *Bar Status: Active*
                                                                   *Fee Status: waived_2019*

**Defendant**

**Michele Landers Meyer**                          represented by  **Mark G. Mitchell**
*in her official capacity as members of*                           (See above for address)
*the New York State Board of Mental*                               *ATTORNEY TO BE NOTICED*
*Health Practitioners*                                             *Bar Status: Active*
                                                                   *Fee Status: waived_2019*

**Defendant**

**Natalie Z. Riccio**                              represented by  **Mark G. Mitchell**
*in her official capacity as a member of*                          (See above for address)
*the New York State Board of Mental*                               *ATTORNEY TO BE NOTICED*
*Health Practitioners*                                             *Bar Status: Active*
                                                                   *Fee Status: waived_2019*

**Defendant**

**Holly Vollink-Lent**                             represented by  **Mark G. Mitchell**
*in her official capacity as a member of*                          (See above for address)
*the New York State Board of Mental*                               *ATTORNEY TO BE NOTICED*
*Health Practitioners*                                             *Bar Status: Active*
                                                                   *Fee Status: waived_2019*

**Defendant**

**Jill R. Weldum**                                 represented by  **Mark G. Mitchell**
*in her official capacity as a member of*                          (See above for address)
*the New York State Board of Mental*                               *ATTORNEY TO BE NOTICED*
*Health Practitioners*                                             *Bar Status: Active*
                                                                   *Fee Status: waived_2019*

**Defendant**

**Susan Wheeler Weeks**                            represented by  **Mark G. Mitchell**
*in her official capacity as a member of*                          (See above for address)
*the New York State Board of Mental*                               *ATTORNEY TO BE NOTICED*
*Health Practitioners*                                             *Bar Status: Active*
                                                                   *Fee Status: waived_2019*

Email All Attorneys
Email All Attorneys and Additional Recipients

A-4

Case 21-3050, Document 3-2, 12/16/2021, 3229361, Page6 of 13

| Date Filed | # | Docket Text |
|---|---|---|
| 04/05/2021 | 1 | COMPLAINT against Letitia James (Filing fee $402 receipt number CNYNDC-5483082) filed by Elizabeth Brokamp. (Attachments: # 1 Civil Cover Sheet)(mgh) (Entered: 04/06/2021) |
| 04/06/2021 | 2 | Summons Issued as to Letitia James. (mgh) (Entered: 04/06/2021) |
| 04/06/2021 | 3 | G.O. 25 FILING ORDER ISSUED: Initial Conference set for 7/6/2021 10:00 AM before US Magistrate Judge Andrew T. Baxter. Civil Case Management Plan must be filed and Mandatory Disclosures are to be exchanged by the parties on or before 6/29/2021.All conferences will be conducted by telephone unless the parties are specifically directed to appear. Counsel for the plaintiff is directed to coordinate the initial conference call. Once all parties are on the conference line, Judge Baxter's chambers can be reached at 315-234- 8600. (Pursuant to Local Rule 26.2, mandatory disclosures are to be exchanged among the parties but are NOT to be filed with the Court.) (mgh) (Entered: 04/06/2021) |
| 04/06/2021 | 4 | NOTICE of Admission Requirement as to Party Elizabeth Brokamp; Attorney Jeffrey Redfern, Esq., Email address is jredfern@ij.org; rmcnamara@ij.org. Phone number is (703) 682-9320. Admissions due by 4/20/2021. {Notice of Admission Requirement emailed to Attorney}(mgh) (Entered: 04/06/2021) |
| 04/06/2021 | 5 | NOTICE of Admission Requirement as to Party Elizabeth Brokamp; Attorney Robert McNamara, Esq., Email address is rjohnson@ij.org. Phone number is (703) 682-9320. Admissions due by 4/20/2021. {Notice of Admission requirement emailed to Attorney }(mgh) (Entered: 04/06/2021) |
| 04/06/2021 | 6 | NOTICE of Admission Requirement as to Party Elizabeth Brokamp; Attorney Robert Johnson, Esq., Email address is rjohnson@ij.org. Phone number is (703) 682-9320. Admissions due by 4/20/2021. {Notice of Admission requirement emailed to Attorney}(mgh) (Entered: 04/06/2021) |
| 04/08/2021 | 7 | AFFIDAVIT *of Service for Summons and Complaint served on Letitia James on 4/7/21* by Elizabeth Brokamp. (Pierce, Alan) (Entered: 04/08/2021) |
| 04/08/2021 | | ***Answer due date updated for Letitia James answer due 4/28/2021. (mgh) (Entered: 04/08/2021) |
| 04/20/2021 | 8 | MOTION for Limited Admission Pro Hac Vice of Robert McNamara Filing fee $100, receipt number ANYNDC-5499026. (Attachments: # 1 Declaration of Sponsor Alan Pierce, # 2 Petition for Admission to Practice of Robert McNamara, # 3 ECF Registration Form of Robert McNamara, # 4 Certificate of Good Standing for Robert McNamara) Motions referred to Andrew T. Baxter. (Pierce, Alan) (Entered: 04/20/2021) |
| 04/20/2021 | 9 | MOTION for Limited Admission Pro Hac Vice of Jeffrey Redfern Filing fee $100, receipt number ANYNDC-5499045. (Attachments: # 1 Declaration of Sponsor Alan Pierce, # 2 Petition for Admission to Practice of Jeffrey Redfern, # 3 ECF Registration Form of Jeffrey Redfern, # 4 Certificate of Good Standing for Jeffrey Redfern) Motions referred to Andrew T. Baxter. (Pierce, Alan) |

A-5

| | | |
|---|---|---|
| | | (Entered: 04/20/2021) |
| 04/20/2021 | 10 | MOTION for Limited Admission Pro Hac Vice of Robert Johnson Filing fee $100, receipt number ANYNDC-5499057. (Attachments: # 1 Declaration of Sponsor Alan Pierce, # 2 Petition for Admission to Practice of Robert Johnson, # 3 ECF Registration Form of Robert Johnson, # 4 Certificate of Good Standing for Robert Johnson) Motions referred to Andrew T. Baxter. (Pierce, Alan) (Entered: 04/20/2021) |
| 04/22/2021 | 11 | TEXT ORDER: Granting # 8 Motion for Limited Admission Pro Hac Vice for Robert McNamara. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. **This is the only notice you will receive concerning this requirement. <u>You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system.</u>** Step-by-step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney-admissions-nextgen. Counsel is reminded that, once the above is accomplished, a NOTICE OF APPEARANCE MUST FILED IN THIS ACTION or you will not receive electronic notifications in the case. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 4/22/2021. (kmc) (Entered: 04/22/2021) |
| 04/22/2021 | 12 | TEXT ORDER: Granting # 9 Motion for Limited Admission Pro Hac Vice for Jeffrey Redfern. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. **This is the only notice you will receive concerning this requirement. <u>You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system.</u>** Step-by-step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney-admissions-nextgen. Counsel is reminded that, once the above is accomplished, a NOTICE OF APPEARANCE MUST FILED IN THIS ACTION or you will not receive electronic notifications in the case. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 4/22/2021. (kmc) (Entered: 04/22/2021) |
| 04/22/2021 | 13 | TEXT ORDER: Granting # 10 Motion for Limited Admission Pro Hac Vice for Robert Johnson. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. **This is the only notice you will receive concerning this requirement. <u>You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system.</u>** Step-by-step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney-admissions-nextgen. Counsel is reminded that, once the above is accomplished, a NOTICE OF APPEARANCE MUST FILED IN THIS ACTION or you will not receive electronic notifications in the case. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 4/22/2021. (kmc) (Entered: 04/22/2021) |
| 04/23/2021 | 14 | NOTICE of Appearance by Robert McNamara on behalf of Elizabeth Brokamp |

| | | (McNamara, Robert) (Entered: 04/23/2021) |
|---|---|---|
| 04/23/2021 | 15 | NOTICE of Appearance by Jeffrey H. Redfern on behalf of Elizabeth Brokamp (Redfern, Jeffrey) (Entered: 04/23/2021) |
| 04/23/2021 | 16 | NOTICE of Appearance by Mark G. Mitchell on behalf of Letitia James (Mitchell, Mark) (Entered: 04/23/2021) |
| 04/23/2021 | 17 | Letter Motion from Mark G. Mitchell for Letitia James requesting 45 day extension of time to respond to the Complaint submitted to Judge Andrew T. Baxter . (Mitchell, Mark) (Entered: 04/23/2021) |
| 04/26/2021 | 18 | TEXT ORDER: Granting # 17 Letter Request for an extension of time. Letitia James answer due 6/7/2021. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 4/26/2021. (kmc) (Entered: 04/26/2021) |
| 04/26/2021 | 19 | NOTICE of Appearance by Robert Johnson on behalf of Elizabeth Brokamp (Johnson, Robert) (Entered: 04/26/2021) |
| 06/07/2021 | 20 | MOTION to Dismiss for Failure to State a Claim filed by Letitia James. Motion returnable before Judge David N. Hurd, MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Letitia James. Motion returnable before Judge David N. Hurd Response to Motion due by 6/28/2021. Reply to Response to Motion due by 7/6/2021 (Attachments: # 1 Declaration of Mark G. Mitchell, # 2 Memorandum of Law) (Mitchell, Mark) (Entered: 06/07/2021) |
| 06/07/2021 | 21 | CERTIFICATE OF SERVICE by Letitia James re 20 MOTION to Dismiss for Failure to State a Claim filed by Letitia James. Motion returnable before Judge David N. Hurd MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Letitia James. Motion returnable before Judge David N. Hurd (Mitchell, Mark) (Entered: 06/07/2021) |
| 06/08/2021 | 22 | TEXT ORDER: The Rule 16 conference set for 7/6/2021 and 6/29/2021 deadline for the submission of a joint Civil Case Management Plan and exchange of Mandatory Disclosures are ADJOURNED WITHOUT DATE. The hearing and related deadlines will be reset, if deemed necessary, after disposition of the 20 motion to dismiss. So Ordered U.S. Magistrate Judge Andrew T. Baxter on 6/8/2021. (kmc) (Entered: 06/08/2021) |
| 06/15/2021 | 23 | Letter Motion from Jeffrey Redfern for Elizabeth Brokamp requesting 45-day extension of time to respond to Defendant Leticia James's Pending Motion to Dismiss (ECF 20) submitted to Judge Andrew T. Baxter . (Redfern, Jeffrey) (Entered: 06/15/2021) |
| 06/21/2021 | 24 | AMENDED COMPLAINT against All Defendants filed by Elizabeth Brokamp. (Attachments: # 1 Proposed Summons, # 2 Proposed Summons, # 3 Proposed Summons, # 4 Proposed Summons, # 5 Proposed Summons, # 6 Proposed Summons, # 7 Proposed Summons, # 8 Proposed Summons, # 9 Proposed Summons, # 10 Proposed Summons, # 11 Proposed Summons, # 12 Proposed Summons, # 13 Proposed Summons, # 14 Proposed Summons, # 15 Proposed Summons, # 16 Proposed Summons, # 17 Proposed Summons)(Redfern, Jeffrey) (Entered: 06/21/2021) |
| 06/22/2021 | 25 | TEXT ORDER TERMINATING MOTION TO DISMISS AS MOOT UPON |

| | | |
|---|---|---|
| | | FILING OF AMENDED COMPLAINT. Pursuant to the order of the Hon. David N. Hurd, USDJ Plaintiff's Letter motion at Dkt No. 23 is denied and the pending at Dkt. No. 20 Motion to Dismiss is hereby deemed MOOT upon plaintiff's filing of an amended complaint at Dkt. No 24 . Parties are further directed refile an appropriate motion to dismiss directed at the amended complaint Dkt. No 24 or to contact the chambers of the Hon. Andrew T. Baxter, USMJ for re-scheduling of the Rule 16 Conference and all related discovery deadlines. So Ordered by Judge David N. Hurd on 6/22/2021. (ptm) (Entered: 06/22/2021) |
| 06/22/2021 | 26 | Summons Issued as to Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Angela Landers Meyer, Rodney Means, Timothy Mooney, Angela Musolino, New York State Board of Mental Health Practitioners, New York State Education Department Board of Regents, Natalie Z. Riccio, Betty Rosa, Holly Vollink-Lent, Jill R. Weldum, Susan Wheeler Weeks. (Attachments: # 1 Summons Issued as to NYS Education Dept., # 2 Summons Issued as to Holly Vollink-Lent, # 3 Summons Issued as to Timothy Mooney, # 4 Summons Issued as to Thomas Biglin, # 5 Summons Issued as to Susan Wheeler Weeks, # 6 Summons Issued as to Susan L. Boxer Kappel, # 7 Summons Issued as to Sargam Jain, # 8 Summons Issued as to Sara Lin Friedman McMullian, # 9 Summons Issued as to Rodney Means, # 10 Summons Issued as to NYS Education Dept. -Office of the Professions, # 11 Summons Issued as to Natalie Z. Riccio, # 12 Summons Issued as to Michele Landers Meyer, # 13 Summons Issued as to Jill R. Weldum, # 14 Summons Issued as to Helena Boersma, # 15 Summons Issued as to Betty Rosa, # 16 Summons Issued as to Angela Musolino)(mgh) (Entered: 06/22/2021) |
| 06/24/2021 | | ***Answer due date updated for Letitia James answer due 7/6/2021. (see) (Entered: 06/24/2021) |
| 06/28/2021 | 27 | TEXT ORDER: The Civil Case Management Plan must be filed and Mandatory Disclosures are to be exchanged by the parties on or before 8/23/2021. (Pursuant to Local Rule 26.2, mandatory disclosures are to be exchanged among the parties but are NOT to be filed with the Court.) A telephonic Rule 16 Conference is set for 8/30/2021 at 10:30 AM before U.S. Magistrate Judge Andrew T. Baxter. The parties are directed to dial 1-877-873-8017 and enter access code 3362194 to connect to the conference. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 6/15/2021. (kmc) (Entered: 06/28/2021) |
| 06/30/2021 | 28 | SUMMONS Returned Executed by Elizabeth Brokamp. Thomas Biglin served on 6/24/2021, answer due 7/15/2021; Helena Boersma served on 6/24/2021, answer due 7/15/2021; Susan L. Boxer Kappel served on 6/24/2021, answer due 7/15/2021; Sara Lin Friedman McMullian served on 6/24/2021, answer due 7/15/2021; Sargam Jain served on 6/24/2021, answer due 7/15/2021; Rene Jones served on 6/24/2021, answer due 7/15/2021; Rodney Means served on 6/24/2021, answer due 7/15/2021; Michele Landers Meyer served on 6/24/2021, answer due 7/15/2021; Timothy Mooney served on 6/24/2021, answer due 7/15/2021; Angela Musolino served on 6/24/2021, answer due 7/15/2021; New York State Education Department Board of Regents served on 6/24/2021, answer due 7/15/2021; Natalie Z. Riccio served on 6/24/2021, |

| | | |
|---|---|---|
| | | answer due 7/15/2021; Betty Rosa served on 6/24/2021, answer due 7/15/2021; Holly Vollink-Lent served on 6/24/2021, answer due 7/15/2021; Jill R. Weldum served on 6/24/2021, answer due 7/15/2021; Susan Wheeler Weeks served on 6/24/2021, answer due 7/15/2021. (Attachments: # 1 Summons Returned Executed - New York State Education Department - Office of the Professions, # 2 Summons Returned Executed - Angela Musolino, # 3 Summons Returned Executed - Betty Rosa, # 4 Summons Returned Executed - Helena Boersma, # 5 Summons Returned Executed - Holly Vollink-Lent, # 6 Summons Returned Executed - Jill R. Weldum, # 7 Summons Returned Executed - Michele Landers Meyers, # 8 Summons Returned Executed - Natalie Z. Riccio, # 9 Summons Returned Executed - Rene Jones, # 10 Summons Returned Executed - Rodney Means, # 11 Summons Returned Executed - Sara Lin Friedman McMullan, # 12 Summons Returned Executed - Sargam Jain, # 13 Summons Returned Executed - Susan L. Boxer Kappel, # 14 Summons Returned Executed - Susan Wheeler Weeks, # 15 Summons Returned Executed - Thomas Biglin, # 16 Summons Returned Executed - Timothy Mooney)(Redfern, Jeffrey) (Entered: 06/30/2021) |
| 07/06/2021 | 29 | MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Letitia James. Motion returnable before Judge David N. Hurd, MOTION to Dismiss for Failure to State a Claim filed by Letitia James. Motion returnable before Judge David N. Hurd Response to Motion due by 7/27/2021. Reply to Response to Motion due by 8/3/2021 (Attachments: # 1 Declaration of Mark G. Mitchell, # 2 Memorandum of Law) (Mitchell, Mark) (Entered: 07/06/2021) |
| 07/06/2021 | 30 | CERTIFICATE OF SERVICE by Letitia James re 29 MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Letitia James. Motion returnable before Judge David N. Hurd MOTION to Dismiss for Failure to State a Claim filed by Letitia James. Motion returnable before Judge David N. Hurd (Mitchell, Mark) (Entered: 07/06/2021) |
| 07/09/2021 | 31 | NOTICE of Appearance by Mark G. Mitchell on behalf of All Defendants (Mitchell, Mark) (Entered: 07/09/2021) |
| 07/12/2021 | 32 | Letter Motion from Mark G. Mitchell for Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musolino, New York State Board of Mental Health Practitioners, New York State Education Department Board of Regents, Natalie Z. Riccio, Betty Rosa, Holly Vollink-Lent, Jill R. Weldum, Susan Wheeler Weeks requesting extension of time to respond to the Amended Complaint submitted to Judge Andrew T. Baxter . (Mitchell, Mark) (Entered: 07/12/2021) |
| 07/12/2021 | 33 | TEXT ORDER: Granting 32 Letter Motion for an extension of time. Answer due date updated for Thomas Biglin answer due 8/14/2021; Helena Boersma answer due 8/14/2021; Susan L. Boxer Kappel answer due 8/14/2021; Sara Lin Friedman McMullian answer due 8/14/2021; Sargam Jain answer due 8/14/2021; Rene Jones answer due 8/14/2021; Rodney Means answer due 8/14/2021; Michele Landers Meyer answer due 8/14/2021; Timothy Mooney answer due 8/14/2021; Angela Musolino answer due 8/14/2021; New York State Board of Mental Health Practitioners answer due 8/14/2021; New York State Education Department Board of Regents answer due 8/14/2021; Natalie |

Case 21-3050, Document 3-2, 12/16/2021, 3229361, Page11 of 13

| | | |
|---|---|---|
| | | Z. Riccio answer due 8/14/2021; Betty Rosa answer due 8/14/2021; Holly Vollink-Lent answer due 8/14/2021; Jill R. Weldum answer due 8/14/2021; Susan Wheeler Weeks answer due 8/14/2021. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 7/12/2021. (kmc) (Entered: 07/12/2021) |
| 07/13/2021 | 34 | Letter Motion from Jeffrey Redfern for Elizabeth Brokamp requesting extension of time to respond to Defendant Letitia James' pending Motion to Dismiss (ECF 29) submitted to Judge Andrew T. Baxter . (Redfern, Jeffrey) (Entered: 07/13/2021) |
| 07/22/2021 | 35 | TEXT ORDER ADJOURNING MOTION - TO BE TAKEN ON SUBMIT: Pursuant to the verbal Order of the Hon. David N. Hurd, USDJ: Granting 34 Letter Motion from Jeffrey Redfern, Esq. for Elizabeth Brokamp requesting extension of time to respond to 29 MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Letitia James to be taken ON SUBMITTED PAPERS ONLY before Judge David N. Hurd. No appearances by either party are required or allowed. Written opinion shall follow. Response to the motion is now due by 5:00pm September 3, 2021. Reply, if any, to the response to motion is now due by 5:00pm on September 17, 2021. So Ordered by Judge David N. Hurd on 7/22/2021. (ptm) (Entered: 07/22/2021) |
| 08/06/2021 | 36 | MOTION to Dismiss for Failure to State a Claim filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musolino, New York State Board of Mental Health Practitioners, New York State Education Department Board of Regents, Natalie Z. Riccio, Betty Rosa, Holly Vollink-Lent, Jill R. Weldum, Susan Wheeler Weeks. Motion returnable before Judge David N. Hurd, MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musolino, New York State Board of Mental Health Practitioners, New York State Education Department Board of Regents, Natalie Z. Riccio, Betty Rosa, Holly Vollink-Lent, Jill R. Weldum, Susan Wheeler Weeks. Motion returnable before Judge David N. Hurd Response to Motion due by 8/27/2021. Reply to Response to Motion due by 9/3/2021 (Attachments: # 1 Declaration of Mark G. Mitchell, # 2 Memorandum of Law) (Mitchell, Mark) (Entered: 08/06/2021) |
| 08/06/2021 | 37 | CERTIFICATE OF SERVICE by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musolino, New York State Board of Mental Health Practitioners, New York State Education Department Board of Regents, Natalie Z. Riccio, Betty Rosa, Holly Vollink-Lent, Jill R. Weldum, Susan Wheeler Weeks re 36 MOTION to Dismiss for Failure to State a Claim filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musolino, New Yor MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musoli (Mitchell, Mark) |

Case 21-3050, Document 3-2, 12/16/2021, 3229361, Page12 of 13

| | | (Entered: 08/06/2021) |
|---|---|---|
| 08/06/2021 | 38 | TEXT ORDER: The Rule 16 conference set for 8/30/2021 and 8/23/2021 deadline for the submission of a joint Civil Case Management Plan and exchange of Mandatory Disclosures are ADJOURNED WITHOUT DATE. The hearing and related deadlines will be reset, if deemed necessary, after disposition of the 36 motion to dismiss. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 8/6/2021. (kmc) (Entered: 08/06/2021) |
| 08/26/2021 | 39 | RESPONSE to Motion re 36 MOTION to Dismiss for Failure to State a Claim filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musolino, New Yor MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musoli, 29 MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Letitia James. Motion returnable before Judge David N. Hurd MOTION to Dismiss for Failure to State a Claim filed by Letitia James. Motion returnable before Judge David N. Hurd filed by Elizabeth Brokamp. (Redfern, Jeffrey) (Entered: 08/26/2021) |
| 09/17/2021 | 40 | REPLY to Response to Motion re 36 MOTION to Dismiss for Failure to State a Claim filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musolino, New Yor MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musoli, 29 MOTION to Dismiss for Lack of Subject Matter Jurisdiction filed by Letitia James. Motion returnable before Judge David N. Hurd MOTION to Dismiss for Failure to State a Claim filed by Letitia James. Motion returnable before Judge David N. Hurd filed by Thomas Biglin, Helena Boersma, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Sargam Jain, Letitia James, Rene Jones, Rodney Means, Michele Landers Meyer, Timothy Mooney, Angela Musolino, New York State Board of Mental Health Practitioners, New York State Education Department Board of Regents, Natalie Z. Riccio, Betty Rosa, Holly Vollink-Lent, Jill R. Weldum, Susan Wheeler Weeks. (Mitchell, Mark) (Entered: 09/17/2021) |
| 11/22/2021 | 41 | MEMORANDUM-DECISION and ORDER: ORDERED that, Defendants' 36 , 29 motions to dismiss are GRANTED; and Plaintiff's Amended Complaint is DISMISSED. The Clerk is directed to enter judgment accordingly and close the file. Signed by Judge David N. Hurd on 11/22/2021. (mgh) (Entered: 11/22/2021) |
| 11/22/2021 | 42 | JUDGMENT: ORDERED that, Defendants' motions to dismiss are GRANTED; and Plaintiff's Amended Complaint is DISMISSED. Pursuant to the order of the Honorable Judge David N. Hurd, dated the 22nd day of November, 2021. (mgh) (Entered: 11/22/2021) |
| 12/15/2021 | 43 | NOTICE OF APPEAL as to 41 Order on Motion to Dismiss for Failure to State |

**A-11**

Case 21-3050, Document 3-2, 12/16/2021, 3229361, Page13 of 13

| | | a Claim,, Order on Motion to Dismiss/Lack of Subject Matter Jurisdiction,,,,, 42 Judgment by Elizabeth Brokamp. Filing fee $ 505, receipt number ANYNDC-5743658. (Redfern, Jeffrey) (Entered: 12/15/2021) |
|---|---|---|
| 12/16/2021 | 44 | ELECTRONIC NOTICE AND CERTIFICATION sent to US Court of Appeals re 43 Notice of Appeal. (mgh) (Entered: 12/16/2021) |

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH BROKAMP, | No. 1:21-cv-00389-DNH-ATB |
| *Plaintiff*, | |
| v. | |
| LETITIA JAMES, in her official capacity as Attorney General of the State of New York; BETTY ROSA, in her official capacity as the New York State Commissioner of Education; the NEW YORK STATE EDUCATION DEPARTMENT BOARD OF REGENTS; the NEW YORK STATE BOARD OF MENTAL HEALTH PRACTITIONERS; and THOMAS BIGLIN, HELENA BOERSMA, SARGAM JAIN, RENE JONES, SUSAN L. BOXER KAPPEL, SARA LIN FRIEDMAN MCMULLIAN, RODNEY MEANS, TIMOTHY MOONEY, ANGELA MUSOLINO, MICHELE LANDERS MEYER, NATALIE Z. RICCIO, HOLLY VOLLINK-LENT, JILL R. WELDUM, and SUSAN WHEELER WEEKS, in their official capacity as members of the New York State Board of Mental Health Practitioners, | |
| *Defendants*. | |

## FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.   This First Amendment lawsuit seeks to vindicate the right of Plaintiff Elizabeth Brokamp, a Virginia-licensed professional counselor with more than twenty years of experience, to speak with New York residents over internet video. Professional counselors like Elizabeth talk to their clients about their feelings, their relationships, and their lives; Elizabeth does not seek to prescribe medication or provide any service beyond talk therapy. All Elizabeth wants to do is talk.

2.   Because of the COVID-19 pandemic, Elizabeth currently provides all her counseling services over the internet using teletherapy. One of Elizabeth's clients has relocated to New York. At present, Elizabeth is allowed to talk to her New York client because an executive order issued early in the pandemic temporarily allows licensed out-of-state counselors to talk to clients in New York. That order is currently scheduled to expire on July 5, 2021. Though that order may be extended additional times before the Governor determines that the pandemic no longer merits such measures, Elizabeth has no way of knowing how long it will be extended, and the exemption could be taken away suddenly, without notice.

3.   Elizabeth would like to continue talking to her New York client after the pandemic is over, as she believes it would be in the best interest of her client's mental health. She would also like to begin talking to a prospective client (with whom she once had a counseling relationship) in New York who has reached out to her, but Elizabeth is unwilling to re-initiate a counseling relationship if it is likely that she will have to stop talking to the client after only a few months. She believes that therapy would be in that prospective client's best interest to resume therapy

2

with Elizabeth only if they could resume without the imminent threat of having to cut that relationship off.

4.   New York's licensing laws restrict Elizabeth's ability to speak with New York residents about their professional, educational, personal, or spiritual development— topics one might discuss with a life coach, mentor, self-help guru, religious leader, or close friend. These laws have only been on the books since 2002. On their face, New York's laws are substantially overbroad. In application, they are also substantially underinclusive, as New York has carved out a long list of speakers who may discuss the same topics that Elizabeth wishes to discuss, without first obtaining a license. Those who are exempted from New York's licensing law are generally those who possess far less training and expertise, so paradoxically, Elizabeth is subject to more onerous restrictions because she is more knowledgeable. If she were less qualified, she could offer services as a life-coach without obtaining a license.

5.   All that Elizabeth wants to do is talk to New Yorkers about their lives and their problems. The First Amendment fully protects these conversations, and New York's licensing laws place an impermissible burden on Elizabeth's free speech rights.

## Jurisdiction and Venue

6.   This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202; 42 U.S.C. § 1983; and *Ex Parte Young*, 209 U.S. 123 (1908).

7.   Venue lies in this Court pursuant to 28 U.S.C. § 1391.

### Parties

8.   Plaintiff Elizabeth Brokamp is a United States citizen and a resident of Virginia. Elizabeth is a Virginia-licensed professional counselor with over twenty years of experience. During the COVID-19 pandemic, Elizabeth has moved all of her services online and currently provides counseling out of her home in Fairfax Station, Virginia.

9.   Defendant Letitia James is the Attorney General of the State of New York. She is subject to an explicit statutory mandate to enforce New York's professional licensing regime through criminal prosecution. N.Y. Educ. Law § 6514(2) ("The attorney general shall prosecute such alleged offenses in the name of the state[.]"). Attorney General James is sued in her official capacity.

10.   Defendant Betty Rosa is the New York State Commissioner of Education. She is statutorily responsible for "administer[ing] the admission to and the practice of the professions," including mental health counseling. N.Y. Educ. Law § 6507. Commissioner Rosa is sued in her official capacity.

11.   Defendant New York State Education Department Board of Regents is statutorily responsible for "supervis[ing] the admission to and the practice of the professions," including the profession of mental health therapy. N.Y. Educ. Law § 6506. The Board of Regents is sued in its official capacity.

12.   Defendant New York State Board of Mental Health Practitioners is statutorily responsible for "assisting the board of regents and the department on

matters of licensing and registration." N.Y. Educ. Law § 8406. The Board of Mental Health Practitioners is sued in its official capacity.

13.  Defendants Thomas Biglin, Helena Boersma, Sargam Jain, Rene Jones, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Rodney Means, Timothy Mooney, Angela Musolino, Michele Landers Meyer, Natalie Z. Riccio, Holly Vollink-Lent, Jill R. Weldum, and Susan Wheeler Weeks are the members of the New York State Board of Mental Health Practitioners, as identified by the official website for the New York State Education Department, and they are sued in their official capacity.

## Factual Allegations

### *Elizabeth Brokamp's Professional Counseling*

14.  Plaintiff Elizabeth Brokamp is a Virginia-licensed professional counselor with over twenty years of experience.

15.  In 1994, Elizabeth earned a Master's Degree in Counseling Psychology from Columbia University. She is currently pursuing a PhD in Counseling from the University of the Cumberlands.

16.  Elizabeth also holds a number of voluntary certifications related to professional counseling, including a certification in tele-mental health from the Center for Credentialing and Education.

17.  As a Virginia-licensed professional counselor, Elizabeth must renew her license annually and complete a minimum of 20 hours of continuing education requirements. *See* 18 VAC 115-20-105.

18. Elizabeth is also subject to oversight by the Virginia Board of Counseling, which establishes standards of practice applicable to all Virginia-licensed professional counselors. *See* 18 VAC 115-20-130. The Virginia Board of Counseling is empowered to discipline counselors who violate its standards of practice. *See* 18 VAC 115-20-140

19. In 2018, Elizabeth closed her Alexandria office in order to pursue her doctoral degree at the University of the Cumberlands. As part of her doctorate training, Elizabeth provided intake assessment and individual counseling for college students at the University of Mary Washington. In addition, starting in 2019, Elizabeth has served as a supervisor for individuals who have completed their Master's degrees and are seeking licensure.

20. In 2020, Elizabeth opened Nova Terra Therapy as an online practice. Elizabeth currently provides counseling exclusively through the internet.

21. The number of clients that Elizabeth serves varies week-to-week, but, in a typical week, Elizabeth currently provides teletherapy to between ten and twenty clients.

22. Elizabeth advertises her teletherapy services online, including through websites that provide counseling referral services.

23. Even when the pandemic is over, Elizabeth intends to continue providing online teletherapy for the indefinite future. Likewise, even when the pandemic is over, Elizabeth intends to continue advertising her teletherapy services over the internet, including through websites that provide counseling referral services.

24.  Elizabeth would like to use these websites to advertise her availability to potential clients located in New York.

25.  Elizabeth intends to continue providing teletherapy because she believes that it provides significant benefits for clients, as it allows clients to seek out help without having to make a trip to a counselor's office. Teletherapy can be beneficial for new mothers, as the demands of a newborn child can make it particularly difficult to schedule in-person counseling. Teletherapy benefits clients who need to be seen imminently, and who may not be able to wait for an in-person visit. Teletherapy allows clients to access therapists in different geographic regions, which allows for more opportunity to find a therapist that meets a client's specific needs. Teletherapy also benefits clients in areas that are underserved, where there may be few options and limited availability, or where prices may be prohibitive.

26.  Elizabeth advises her clients on a variety of topics, including anxiety, relationships, and mindfulness. She also has a particular specialty assisting women who are facing issues relating to infertility and postpartum depression.

27.  Clients seek out Elizabeth for a variety of reasons, including need for services from a counselor with Elizabeth's particular areas of specialization and referrals from existing clients who have been satisfied with Elizabeth's services.

28.  When Elizabeth provides counseling services, she does not prescribe medication or conduct any medical procedures.

29.  Elizabeth's counseling services consist entirely of conversations between her and her clients.

30. Elizabeth speaks with her clients about a variety of topics, including, but not limited to, their emotions, their relationships, and their lives. Through these conversations, Elizabeth seeks to improve her clients' well-being.

31. For clients who pay for her services, Elizabeth accepts both insurance and cash. She also charges on a sliding scale for those who cannot otherwise afford the full price of her services.

### *Elizabeth's New York Practice*

32. New York's licensing law strictly limits the practice of "mental health counseling" by out of state professional counselors. N.Y. Educ. Law § 8402(2). Only New York-licensed professional counselors may provide mental health counseling, including via teletherapy, to people located in New York.

33. Elizabeth's teletherapy conversations with her clients constitute "mental health counseling" under New York law because they include the "assessment" and "amelioration" of "problem[s] or disorder[s] or behavior, character, development, emotion, personality or relationships by the use of verbal … methods." N.Y. Educ. Law § 8402(1)(a).

34. Elizabeth's teletherapy conversations with her clients are just that: conversations, consisting of nothing other than speech.

35. Elizabeth is not licensed as a professional counselor in New York, and she has no intention of applying to become licensed.

36. Elizabeth is currently located in Virginia and providing teletharapy counseling to one client who relocated to New York during the pandemic. She is

currently allowed to do so, but only because New York has temporarily allowed out-of-state, licensed counselors to serve New York clients during the pandemic. *See* EO 202.15 That exemption is scheduled to expire on July 5, 2021, though it will presumably be extended during the state of emergency.

37.  Elizabeth strongly desires to continue counseling her New York client after the pandemic is over. She believes it is her patient's best interest to maintain their existing relationship, rather than having to find a new counselor and start over after the pandemic.

38.  New York's regulatory authority, the State Board for Mental Health Practitioners, has confirmed in an email dated March 9, 2020, that she will be unable provide teletherapy to New York residents after the Governor's order expires.

39.  Elizabeth has also been contacted by another New York resident and former client who would like to take advantage of her counseling services. She has turned that individual away because she does not believe that it would be ethical or in the potential client's best interest to initiate a relationship if she would have to end it in only a few months.

40.  Counseling is most effective when counselors and their clients can have a sustained relationship over an extended period of time.

41.  If Elizabeth were allowed to treat New York clients without a license after the pandemic, she would reach out to the individual who contacted her and offer her teletherapy counseling services.

42. If Elizabeth were allowed to treat New York clients without a license after the pandemic, she would also advertise her teletherapy counseling services to New York residents, using web-based referral platforms.

43. When EO 220.15 expires, Elizabeth will not be allowed to offer teletherapy counseling individuals located in New York, though she could do so if they came to her office in Virginia.

### *New York's Overbroad Definition of Psychotherapy*

44. New York prohibits the unlicensed practice of "mental health counseling," which it defines as "(a) the evaluation, assessment, amelioration, treatment, modification, or adjustment to a disability, problem, or disorder of behavior, character, development, emotion, personality or relationships by the use of verbal or behavioral methods with individuals, couples, families or groups in private practice, group, or organized settings; and (b) the use of assessment instruments and mental health counseling and psychotherapy to identify, evaluate and treat dysfunctions and disorders for purposes of providing appropriate mental health counseling services." N.Y. Educ. Law § 8402(1).

45. Requirements for New York licensure include a Master's degree or higher, covering ten specified topics and including a one-year internship. N.Y. Educ. Law § 8402(3). Applicants must also have a minimum of 3000 hours of "supervised experience relevant to the practice of mental health counseling," pass an examination, be of "good moral character," and pay a $175 fee. *Id.*

46.  Separate licenses with similar requirements are required for "marriage and family therapists," N.Y. Educ. Law § 8403, "creative arts therapists," N.Y. Educ. Law § 8404, and "psychoanalysists." The latter is defined as talk therapy focused on the "interpretation of dynamic unconscious mental processes that contribute to the formation of personality and behavior." N.Y. Educ. Law § 8405.

47.  A New York license does not authorize mental health counselors to prescribe drugs or use other invasive medical procedures. N.Y. Educ. Law § 8407.

48.  New York's licensing laws also contain numerous exemptions, which allow various categories of people to provide services falling within the definition of mental health counseling without obtaining a mental health counselor license. N.Y. Educ. Law § 8410.

49.  For instance: "attorneys, rape crisis counselors, certified alcoholism counselors and certified substance abuse counselors" may "provid[e] mental health services within their respective established authorities." The statute does not define the permissible bounds of such practice. N.Y. Educ. Law § 8410(2).

50.  "[M]ember[s] of the clergy or Christian Science practitioner[s]" may provide "pastoral counseling services," but only "within the context of [their] ministerial charge or obligation." N.Y. Educ. Law § 8410(4). Spiritual counseling by non-clergy is apparently not exempt from the mental health counseling law.

51.  An even broader exception allows "individuals, churches, schools, teachers, organizations, or not-for-profit businesses" to "provid[e] instruction, advice, support, encouragement, or information to individuals, families, and relational groups." N.Y.

Educ. Law § 8410(5). The distinction between such permitted conversations and "mental health counseling" is likewise not explained.

52.  New York does not possess any evidence that less restrictive alternatives, such as titling acts that merely restrict who may call themselves a "licensed mental health counselor," would be ineffective at protecting the mental health of New York residents.

### *New York's Underinclusive Enforcement Practices*

53.  In practice, New York does not enforce its mental health counseling licensing laws against all the various individuals swept up by the overbroad definition.

54.  New York has not adopted any written official policy that articulates when the law will or will not be enforced, and individuals have no way to know for sure whether their speech will or will not be prohibited.

55.  At the same time, New York's general practice is to enforce its mental health counseling licensing laws against individuals with significant training and expertise relevant to the provision of counseling.

56.  In practice, individuals who do not have significant training and expertise relevant to the provision of counseling can provide services falling within the definition of licensed mental health counseling so long as they refrain from calling themselves "licensed mental health counselors."

57.  For instance, unlicensed and untrained individuals frequently call themselves "life coaches" and offer services that fall within the definition of mental health counseling under the label "life coaching." According to the Borough of

Manhattan Community College, life coaching consists of: "[i]dentify[ing] and create[ing] a plan for what the client wants," "[m]odify[ing] and build[ing] strategies to achieve a client's goals," "[e]ncourag[ing] self-discovery, self-awareness and growth," and "[p]romot[ing] accountability and positive change."

58.  Similarly, although self-help gurus, mentors, spiritual and religious guides (who do not meet the clergy exemption), Alcoholics Anonymous, Weight Watchers, and even friends and family members provide advice that falls within the scope of New York's mental health counseling laws, New York does not require those individuals to obtain a mental health counseling license.

59.  The Board, however, has confirmed that Elizabeth cannot provide her services in New York, once EO 202.15 expires, without obtaining a New York license.

60.  The Board's email made clear that, as applied to Elizabeth, New York's licensing law is not just a titling restriction. According to the Board, "Once the governor's executive order expires you will have to have a NY license in order to practice in New York either physically or by teletherapy within NY or from outside of NY."

61.  In practice, therefore, Elizabeth is subject to greater burdens on her speech because she possesses greater qualifications to talk. Elizabeth is subject to New York's mental health counseling laws because of her education and experience, but New York does not enforce that requirement against other individuals who speak about the same topics.

62. New York does not have any evidence that counselors like Elizabeth, who are licensed in other jurisdictions but not in New York, are a threat to the mental health of New York residents.

63. New York does not have any evidence that unlicensed life coaches, self-help gurus, non-clergy religious guides, Alcoholics Anonymous, Weight Watchers, or friends and family who provide advice and guidance that falls under the definition of "mental health counseling" are a threat to the mental health of New York residents.

64. New York does not have any evidence that individuals who possess specialized training, like Elizabeth, require more regulation than those who possess less training.

**Injury**

65. Elizabeth is injured by New York's licensing requirements for mental health counselors because, without a license from New York, she is significantly limited in her ability to share her advice and counseling expertise with New York residents.

66. Elizabeth is facing the immediately impending injury of being compelled to stop talking to her New York client once the pandemic is over. The Board has confirmed that this injury will occur once EO 202.15 expires. It is reasonable to expect that this client would continue talking to Elizabeth if New York allowed it.

67. Under EO 202.15, Elizabeth is injured because she cannot ethically take on new clients if she will be required to terminate the relationship in only a few months. She has been forced to turn away a potential client who lives in New York.

68.  Under EO 202.15, Elizabeth is injured because she cannot use her website or referral websites to advertise to New York residents, when it is certain that she would be unable to continue talking to them after just a few months of counseling.

69.  This has resulted in a loss of income to Elizabeth, and, just as important, it has meant that Elizabeth has not been able to help individuals in New York.

70.  If she were allowed to do so, Elizabeth would talk to New York residents about their lives, relationships, and problems, using video conferencing software, for the foreseeable future.

71.  New York's licensing regime is triggered only if Elizabeth speaks to New York residents without a license about certain subjects.

72.  New York's licensing requirements impose special burdens on Elizabeth because of the content of her speech.

73.  In order to speak to New York residents about bettering their lives, Elizabeth would be forced to comply with burdensome licensing requirements.

74.  In order to obtain a New York mental health counseling license, Elizabeth would have to devote a significant amount of time to comply with the application procedures. That time could be spent talking to New Yorkers about their problems. Additionally, she would need to pay a $175 fee and recurring $170 fees.

75.  These requirements are burdens placed on Elizabeth solely because of the content of her speech.

76.  These requirements restrict Elizabeth from offering teletherapy services to New York residents without first obtaining a license.

77.  If Elizabeth talks to New Yorkers about their problems without a New York license, she faces a threat of felony prosecution. N.Y. Educ. Law § 6512(1)

## Constitutional Violations

## Count I: As-Applied First Amendment Violation

78.  All preceding allegations are incorporated here as if set forth in full.

79.  New York's licensing restriction for mental health counselors violates the First Amendment as applied to Elizabeth's provision of teletherapy to New York residents.

80.  The only thing Elizabeth wants to do in New York is talk to clients over the internet. Elizabeth's teletherapy services consist of ideas, opinions, and guidance that she communicates based on her extensive education in counseling, as well as her professional experience.

81.  When EO 202.15 expires, Elizabeth will be prohibited from having these conversations no matter what truthful disclosures she makes regarding her training and licensure.

82.  Elizabeth's individualized advice is a form of speech fully protected by the First Amendment; she does not prescribe medicine or conduct medical procedures.

83.  By prohibiting Elizabeth from giving New York residents individualized advice through teletherapy, New York prevents her from talking depending on what she says.

84. Elizabeth can talk to clients about a range of topics, but if she talks about topics that fall within the definition of "mental health counseling," she is required to have a New York license.

85. Elizabeth can give clients fashion advice, but she cannot provide advice that addresses problems with her clients' relationships or emotions.

86. Elizabeth can give clients interior decorating advice, but she cannot provide advice about managing stress caused by infertility or a newborn child.

87. Although Elizabeth is subject to New York's licensing laws because of her qualifications, New York does not enforce those laws against individuals with fewer qualifications. New York cannot articulate any interest that would justify such an approach.

88. New York's temporary waiver, which allows for unlicensed mental health counseling by some counselors, further demonstrates the arbitrary and unnecessary nature of New York's licensing laws.

89. New York has no interest, compelling or otherwise, in preventing Elizabeth from speaking with clients over the internet.

90. Elizabeth has no adequate legal, administrative, or other remedy by which to prevent or minimize the existing and impending irreparable harm to her First Amendment rights.

91. Unless New York is enjoined from enforcing N.Y. Educ. Law § 8402 against her, Elizabeth will suffer ongoing and future impending irreparable harm to her First Amendment rights.

## Count II: Facial First Amendment Violation

92.  The allegations of paragraphs 1 through 77 are incorporated here as if set forth in full.

93.  On its face, New York's mental health counseling licensing law is a content-based regulation of speech, as it applies only to speech that meets the definition of "mental health counseling."

94.  New York's mental health counseling licensing law is substantially overbroad, as it sweeps in significant amounts of speech that New York has no conceivable interest in regulating.

95.  Under N.Y. Educ. Law § 8402, individuals who use words to help people with emotional, behavioral, or relationship problems fall within New York's definition of "mental health counseling."

96.  On its face, New York's licensing requirement would apply to life coaches, self-help gurus, mentors, religious leaders, or even close friends, because each routinely offers advice that falls within the legal definition of "mental health counseling."

97.  To the extent that New York considers such speakers to be exempt from its licensing laws because they are "individuals" who offer "instruction, advice, support, encouragement, or information to individuals," N.Y. Educ. Law § 8410(5), it is unclear how New York law draws distinctions between "mental health counseling" and "instruction, advice, support, encouragement, or information."

98.  In practice, the only difference between "mental health counselors" and individuals who offer "advice" is that the former possess more qualifications to give advice.

99.  New York's licensing laws are also significantly underinclusive in practice, as New York does not apply its laws to speakers who lack the training and qualifications associated with "mental health counselors."

100.    For instance, New York does not enforce its licensing requirement against life coaches, mentors, and self-help gurus, each of whom routinely offers advice that falls within the definition of "mental health counseling."

101.    New York cannot justify enforcing licensing requirements against people who are the most qualified to give advice, while exempting those without any qualifications.

102.    By waiving its licensing requirement for some speakers, New York further demonstrates the arbitrary and underinclusive nature of its licensing law.

103.    Elizabeth has no adequate legal, administrative, or other remedy by which to prevent or minimize the present and future irreparable harm to her First Amendment rights.

104.    Unless New York is enjoined from enforcing N.Y. Educ. Law § 8402, Elizabeth will suffer continuing and imminent future irreparable harm.

**Count III: First & Fourteenth Amendment Vagueness**

105.    The allegations of paragraphs 1 through 77 are incorporated here as if set forth in full.

106.     New York's licensing requirement enacts an impermissibly vague and standardless restriction on speech.

107.     While New York prohibits unlicensed individuals from using "verbal … methods" to "ameliorate … problem[s] … of behavior, character, development, emotion, personality or relationships," N.Y. Educ. Law § 8402(1)(a), New York permits unlicensed individuals to offer "instruction, advice, support, encouragement, or information." There is no discernible distinction between these types of speech.

108.     In practice, it appears that New York deems people without extensive training, such as life coaches and self-help gurus, to be providers of "advice" that is exempt from New York's licensing laws. This distinction—between those with extensive training and those without—appears nowhere on the face of the statute, and if it did, it would be an irrational speaker-based distinction, contrary to the First Amendment.

109.     New York likewise draws vague distinctions between types of licensed speech. For instance, Elizabeth is required to have one license to practice "mental health counseling," which includes helping people with relationship problems. But she is required to have a different license to conduct "marriage and family therapy," which is defined as "the use of mental health counseling…to treat mental, emotional and behavioral disorders and ailments within the context of marital…systems." N.Y. Educ. Law § 8403(c). She is required to have a different license if she talks to people about their unconscious minds. N.Y. Educ. Law §

8405(1)(a). Thus, even if Elizabeth were to obtain a license under § 8402, she would have to police her own speech to ensure that her permissible "relationship" advice does not become prohibited "marital" advice. She would have to police her speech to ensure that when she talks to people about their problems, she does not talk about their unconscious minds. The vagueness of these categories of licensed speech places an impermissible burden on Elizabeth's First Amendment rights.

110.     New York's failure to articulate any standard to guide its statutory definitions introduces impermissible discretion into the licensing process, as New York officials have broad and standardless discretion to decide whether speech should be subject to the licensing requirement, and, if so, which license is required.

111.     Elizabeth has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing and future impending irreparable harm to her First Amendment rights.

112.     Unless New York is enjoined from enforcing N.Y. Educ. Law § 8402, Elizabeth will suffer continuing and future impending irreparable harm.

## Request for Relief

In light of the foregoing, Plaintiff Elizabeth Brokamp respectfully requests the following relief:

A. A declaratory judgment by the Court that, both as applied to Plaintiff and on its face, New York's licensing law for mental health counselors, N.Y. Educ. Law §§ 8402-8405, violates the First and Fourteenth Amendments to the United States Constitution;

B. A permanent injunction prohibiting Defendants and their agents from
   applying New York's licensing requirements for mental health counselors to
   prevent Plaintiff from providing teletherapy services to New York residents;
   and

C. Any other legal and equitable remedies to which Plaintiff may show herself
   justly entitled.

DATED: June 21, 2021

Respectfully Submitted,

/s/ Jeffrey Redfern
Jeffrey Redfern (DC Bar No. 1018046)*
Robert McNamara (VA Bar No. 73208)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
P. (703) 682-9320
F. (703) 682-9321
E. jredfern@ij.org; rmcnamara@ij.org

Robert Johnson (D.C. Bar No. 1013390)*
INSTITUTE FOR JUSTICE
16781 Chagrin Blvd. #256
Shaker Heights, OH 44120
P. (703) 682-9320
F. (703) 682-9321
E. rjohnson@ij.org

*Lead Counsel for Plaintiff*

***Admitted Pro Hac Vice***

Alan Pierce, NY Bar No. 102366
HANCOCK ESTABROOK, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY  13202

Office: (315) 565-4546
Cell: (315) 427-0299
Email: apierce@hancocklaw.com

*Local Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ELIZABETH BROKAMP,

                                           *Plaintiff*,

                     -against-

LETITIA JAMES, in her official capacity as Attorney
General of the State of New York; BETTY ROSA, in her
official capacity as the New York State Commissioner of
Education; the NEW YORK STATE EDUCATION
DEPARTMENT BOARD OF REGENTS; the NEW
YORK STATE BOARD OF MENTAL HEALTH
PRACTITIONERS; and THOMAS BIGLIN, HELENA
BOERSMA, SARGAM JAIN, RENE JONES, SUSAN L.
BOXER KAPPEL, SARA LIN FRIEDMAN
MCMULLIAN, RODNEY MEANS, TIMOTHY
MOONEY, ANGELA MUSOLINO, MICHELE
LANDERS MEYER, NATALIE Z. RICCIO, HOLLY
VOLLINK-LENT, JILL R. WELDUM, and SUSAN
WHEELER WEEKS, in their official capacity as members
of the New York State Board of Mental Health
Practitioners,

                                      *Defendants*.

**NOTICE OF MOTION**

1:21-CV-00389

DNH/ATB

---

       PLEASE TAKE NOTICE that upon the annexed Declaration of Mark G. Mitchell and the
accompanying Memorandum of Law, and upon all prior proceedings, Defendant Letitia James, in
her official capacity as Attorney General of the State of New York, on a date and time to be
scheduled upon filing by the Clerk of Court, or as soon thereafter as counsel can be heard, will
make a motion at the United States District Court, Northern District of New York, Alexander
Pirnie Federal Building and U.S. Courthouse, Utica, New York, pursuant to Rules 12(b)(1) and

1

**A-36**

12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all claims against her in

the Amended Complaint, with prejudice, together with such other or further relief as may be just.

Dated: Albany, New York
      July 6, 2021

                                LETITIA JAMES
                                Attorney General
                                State of New York
                                Attorney for Defendant Letitia James
                                The Capitol
                                Albany, New York  12224

                                By: *s/ Mark G. Mitchell*
                                Mark G. Mitchell
                                Assistant Attorney General, of Counsel
                                Bar Roll No. 516818
                                Telephone: (518) 776-2583
                                Fax: (518) 915-7738 (Not for service of papers)
                                Email: mark.mitchell@ag.ny.gov

To:    Alan J. Pierce
        Hancock, Estabrook Law Firm
        100 Madison Street, Suite 1500
        Syracuse, NY  13202

        Jeffrey H. Redfern
        Institute for Justice
        901 North Glebe Road - Suite 900
        Arlington, VA  22203

        Robert Johnson
        Institute for Justice
        16781 Chagrin Blvd. #256
        Shaker Heights, OH  44120

        Robert McNamara
        Institute for Justice
        901 North Glebe Road - Suite 900
        Arlington, VA  22203

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ELIZABETH BROKAMP,

|  |  |
|---|---|
| *Plaintiff,* | **ATTORNEY DECLARATION** |
| -against- | 1:21-CV-00389 |
| LETITIA JAMES, in her official capacity as Attorney General of the State of New York, *et al.*, | DNH/ATB |
| *Defendants.* | |

---

MARK G. MITCHELL, on the date noted below and pursuant to § 1746 of title 28 of the United States Code, declares the following to be true and correct under penalty of perjury under the laws of the United States of America:

1.    I am an Assistant Attorney General in the office of LETITIA JAMES, Attorney General of the State of New York, attorney for Defendant Letitia James, sued in her official capacity as the Attorney General of the State of New York, in the above-captioned action.  I am an attorney duly admitted to practice before this Court and am fully familiar with the proceedings had herein.

2.    I make this Declaration in support of the Attorney General's motion pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure for an order dismissing all claims against her in the Amended Complaint with prejudice.

1

**A-38**

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Law, the Attorney General requests an order granting her motion to dismiss all claims against her with prejudice.

Dated:  July 6, 2021
       Albany, New York

                                        *s/ Mark G. Mitchell*
                                        Mark G. Mitchell
                                        Assistant Attorney General, of Counsel
                                        Bar Roll No. 516818
                                        Telephone:  518-776-2583
                                        Fax:  518-915-7738
                                        Mark.Mitchell@ag.ny.gov

2

**A-39**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ELIZABETH BROKAMP,

*Plaintiff*,

-against-

LETITIA JAMES, in her official
capacity as Attorney General of the
State of New York, *et al*.,

*Defendants*.

1:21-CV-00389

DNH/ATB

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEENDANT LETITIA JAMES' MOTION TO DISMISS

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendant Letitia James
The Capitol
Albany, New York  12224

Mark G. Mitchell
Assistant Attorney General, of Counsel
Bar Roll No. 516818
Telephone:  (518) 776-2583
Fax:  (518) 915-7738 (Not for service of papers)

Date: July 6, 2021

**Table of Contents**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ...................................... 1

ARGUMENT ................................................................................ 3

    Standard ............................................................................ 3

    POINT I - THE NEW YORK STATE ATTORNEY GENERAL IS NOT A
        PROPER PARTY ................................................................ 4

    POINT II - PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE
        TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............... 6

        A.  Plaintiff lacks standing...................................................... 7

        B.  Plaintiff's as-applied First Amendment claim should be dismissed................ 7

        C.  Plaintiff's facial First Amendment claim should be dismissed ..................... 10

        D.  Plaintiff's vagueness claim should be dismissed ........................................... 12

    POINT III - PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT
        LEAVE TO AMEND ........................................................... 14

CONCLUSION ............................................................................. 15

## PRELIMINARY STATEMENT

In the present action, Plaintiff Elizabeth Brokamp, a Virginia-licensed professional counselor, claims to have a First Amendment right to provide mental health counseling in New York without a New York license.  In essence, Plaintiff asserts that because mental health counseling involves talking, the First Amendment bars New York State from regulating mental health counseling.[1]

Defendant Letitia James, sued in her official capacity as the Attorney General of the State of New York, moves pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure for an order dismissing all claims against her with prejudice.  First, the Attorney General is not a proper party in this action.  Second, Plaintiff lacks standing.  Third, Plaintiff's as-applied First Amendment claim, facial First Amendment claim, and vagueness claim fail to state a claim upon which relief can be granted.  Finally, Plaintiff's claims against the Attorney General should be dismissed with prejudice and without leave to amend.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In April 2021, Plaintiff commenced this action against (1) Defendant Letitia James, in her official capacity as Attorney General of the State of New York, and (2) Defendant New York State Board of Mental Health Practitioners.  Compl., ECF No. 1 at p. 1.  Plaintiff asserts that she is a Virginia-licensed professional counselor.  ECF No. 1 ¶ 1; Am. Compl., ECF No. 24 ¶ 1.  Plaintiff charges her clients for her services.  ECF No. 1 ¶ 27; ECF No. 24 ¶ 31.  Plaintiff states that she "is not licensed as a professional counselor in New York, and she has no intention of applying to become licensed."  ECF No. 1 ¶ 31; ECF No. 24 ¶ 35.  Plaintiff asserts that she currently provides

---

[1] Plaintiff filed a similar lawsuit against the District of Columbia seeking to invalidate its licensing law for professional counselors.  *See Brokamp v. District of Columbia*, No. 1:20-CV-3574 (D.D.C.).

1

counseling services to one client located in New York, pursuant to a COVID-19 related executive order that temporarily allows licensed out of state counselors to practice in New York.  ECF No. 1 ¶¶ 2, 32; ECF No. 24 ¶¶ 2, 36 (referencing EO 202.15).  Plaintiff states that, when the executive order expires, she would like to continue treating her New York client, and also solicit other New York clients, without the inconvenience of obtaining a New York license.  ECF No. 1 ¶ 3; ECF No. 24 ¶ 3.

Plaintiff demands the following relief: (1) a declaratory judgment providing that "as applied to Plaintiff and on its face, New York's licensing law for mental health counselors, N.Y. Educ. Law §§ 8402-8405, violates the First and Fourteenth Amendments to the United States Constitution;" and (2) a "permanent injunction prohibiting Defendants and their agents from applying New York's licensing requirements for mental health counselors to prevent Plaintiff from providing teletherapy services to New York residents."  ECF No. 1 at p. 20; ECF No. 24 at pp. 21-22.

On June 7, 2021, the Attorney General filed a motion pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure for an order dismissing all claims against her with prejudice.  Defendant's Motion to Dismiss the Complaint, ECF No. 20.[2]  Instead of opposing the Attorney General's motion to dismiss, Plaintiff filed an Amended Complaint, which purports to assert claims against numerous additional defendants.  ECF No. 24.  By its Text Order entered on June 22, 2021, the Court terminated the Attorney General's motion to dismiss as moot upon the

---

[2]  At that time, the CM/ECF civil docket for this action indicated that Plaintiff had not filed proof of service as to Defendant New York State Board of Mental Health Practitioners, nor had that defendant appeared in this action.  Affidavit of Service, ECF No. 7 (affidavit of service on the Attorney General only).

2

**A-43**

Plaintiff's filing of the Amended Complaint.  Text Order Terminating Motion to Dismiss, ECF No. 25.

For the reasons set forth below, its is respectfully submitted that the Court should grant the Attorney General's motion to dismiss all claims against her in the Amended Complaint with prejudice.

## ARGUMENT

### Standard

Under Rule 12(b)(6), to survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotation marks and some alterations omitted).

"In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), federal courts need not accept as true contested jurisdictional allegations." *Sloan v. Truong*, 573 F. Supp. 2d 823, 827 (S.D.N.Y. 2008) (internal quotation marks omitted).  "The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity ….  It is well-settled that states and their officials acting in their official capacities are not 'persons' under

3

A-44

section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute."
*Brown v. New York*, 975 F. Supp. 2d 209, 221 (N.D.N.Y. 2013).

For the reasons set forth below, Plaintiff's claims against the Attorney General should be dismissed with prejudice.

## POINT I

### THE NEW YORK STATE ATTORNEY GENERAL IS NOT A PROPER PARTY

Plaintiff names the New York State Attorney General, in her official capacity, as a Defendant. ECF No. 24 ¶ 9. However, under well-established law, the Attorney General is not a proper party in an action challenging a state statute under which she has no specific enforcement powers. *See Mendez v. Heller*, 530 F. 2d 457, 460 (2d Cir. 1976) ("The Attorney General has no connection with the enforcement of [the state statute in question], and therefore cannot be a party to this suit.").

This principle is grounded in the Eleventh Amendment to the United States Constitution. "Sovereign immunity bars suit against a state official sued in his [or her] official capacity, unless Congress has abrogated that immunity or the state has consented to suit. Congress has not abrogated sovereign immunity for § 1983 claims, nor has New York waived immunity." *Steinberg v. Elkman*, 666 Fed. App'x 26, 27 (2d Cir. 2016) (internal citations omitted); *see generally Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). A state official sued in his or her official capacity, as the Attorney General is here sued, is the state for purposes of Eleventh Amendment immunity. *See Burnette v. Carothers*, 192 F. 3d 52, 57 (2d Cir. 1999), *cert. denied*, 531 U.S. 1052 (2000).

There is one notable exception to Eleventh Amendment immunity, but it is not applicable here. Under *Ex parte Young*, federal courts may entertain suits against state officials in their

4

**A-45**

official capacity to enforce federal law where the suit seeks prospective injunctive and declaratory relief only.  *See* 209 U.S. 123 (1908); *see also State Employees Bargaining Agent Coalition v. Rowland*, 494 F. 3d 71, 95 (2d Cir. 2007).  The *Ex parte Young* exception is inapplicable in this action involving a state statute.  In any event, to fall within the *Ex parte Young* exception, a named state official "must have some connection with the enforcement of the act, or else [the plaintiff] is merely making him a party as a representative of the state, and thereby attempting to make the state a party."  *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010) (internal quotation marks omitted), *aff'd on other grounds*, 448 Fed. App'x 79 (2d Cir. 2011).

The fact that unauthorized practice and unauthorized use of a professional title are crimes that can be prosecuted by the Attorney General (*see* N.Y. Education Law §§ 6512, 6513) does not render the Attorney General a proper party in the present action, which challenges particular licensing requirements for mental health counselors under N.Y. Education Law § 8402.  Courts have made clear that the Attorney General's general responsibility for the enforcement of New York laws is not a sufficient connection to permit suits against her.  That is, the Attorney General may not be sued in a challenge to a statute merely because she may enforce that statute under her general enforcement powers.  Indeed, "the vast majority of courts to consider the issue have held … that a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute."  *Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y. 1999), *aff'd*, 201 F. 3d 430 (2d Cir. 1999), *cert. denied*, 531 U.S. 849 (2000); *see also Jones v. Schneiderman*, 974 F. Supp. 2d 322, 352-353 (S.D.N.Y. 2013).  Likewise, the Attorney General's duty to defend the constitutionality of statutes does not create an *Ex parte Young* exception.  *See Mendez*, 530 F. 2d at 460; *Ulrich v. Mane*, 383 F. Supp. 2d 405, 410 (E.D.N.Y. 2005) ("While the Attorney General is charged with defending the constitutionality of state law,

this fact alone does not provide a basis for bringing an action against him."). Accordingly, all claims against the Attorney General should be dismissed with prejudice. *See Chrysafis v. James*, No. 21-CV-998, 2021 WL 1405884, at *21 (E.D.N.Y. Apr. 14, 2021) (determining that the Attorney General is not a proper party in action challenging the constitutionality of the New York COVID-19 Emergency Eviction and Foreclosure Prevention Act of 2020 and dismissing the action for lack of subject matter jurisdiction); *Burke v. Verizon Communications, Inc.*, No. 18-CV-4496, 2020 WL 4741043, at *3-4 (S.D.N.Y. Aug. 17, 2020) (recommending dismissal of action against Attorney General involving constitutional challenge to labor statute), *adopted*, 2020 WL 6538748 (S.D.N.Y. Nov. 6, 2020); *Sabin v. Nelson*, No. 7:12-CV-1373, 2014 WL 2945770, at *2 (N.D.N.Y. June 30, 2014) (dismissing constitutional challenge to N.Y. Human Rights Law); *HealthNow New York*, 739 F. Supp. 2d at 295 (dismissing claims because "the Attorney General lacks the required enforcement 'connection'"); *Ulrich*, 383 F. Supp. 2d at 410 ("[T]he Attorney General has no connection with the enforcement of [the statute at issue], and therefore cannot be a party to this suit." (citing *Ex parte Young*, 209 U.S. 123)); *Johnson v. Rockefeller*, 58 F.R.D. 42, 46 (S.D.N.Y. 1972) (dismissing claims against Attorney General, who was not "obligated to enforce the statute here attacked."); *see also Carvel v. Cuomo*, 357 Fed. App'x 382, 383-384 (2d Cir. 2009) (holding that the plaintiff's claims against the Attorney General were properly dismissed for lack of jurisdiction and for failure to state a claim); *Joseph v. Cuomo*, No. 20-CV-3957, 2021 WL 200984, at *10 (E.D.N.Y. Jan. 20, 2021) (dismissing claims against the Attorney General).

## POINT II

### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In addition to lack of subject matter jurisdiction, Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

6

### A.    Plaintiff lacks standing

"As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Jackson-Bey v. Hanslmaier*, 115 F. 3d 1091, 1096 (2d Cir. 1997).  Here, Plaintiff concedes that she has no intention of applying to become licensed in New York.  ECF No. 24 ¶ 35.  Accordingly, Plaintiff's claims must be dismissed for lack of standing.  *See United States v. Decastro*, 682 F. 3d 160, 164 (2d Cir. 2012) (holding that plaintiff who failed to apply for a New York license lacked standing to challenge the state's licensing laws), *cert. denied*, 568 U.S. 1092 (2013); *see also Libertarian Party of Erie Cty. v. Cuomo*, 300 F. Supp. 3d 424, 433 (W.D.N.Y. 2018), *aff'd in part, appeal dismissed in part*, 970 F. 3d 106 (2d Cir. 2020).

The threshold requirement for standing that Plaintiff apply for a New York license may be excused only if she "makes a substantial showing that application for the benefit (or, in this case, registration) would have been futile." *Jackson-Bey*, 115 F. 3d at 1096.  Here, Plaintiff does not even allege, much less make a substantial showing, that her application for a New York license would be futile.  Instead, Plaintiff simply prefers not to apply because she would like to operate an unlicensed counseling business.  Accordingly, Plaintiff's claims must be dismissed for lack of standing.  *See id*. ("an unsupported claim of futility is not enough to excuse a plaintiff's failure to apply").

### B.    Plaintiff's as-applied First Amendment claim should be dismissed

In Count I of the Amended Complaint, Plaintiff claims that N.Y. Education Law § 8402, concerning mental health counseling, violates Plaintiff's rights under the First Amendment.  ECF No. 24 at pp. 16-17.  Plaintiff apparently contends that because the practice of mental health counseling includes talking to clients, the First Amendment bars New York State from enforcing

7

**A-48**

licensing requirements for mental health counselors.  Count I should be dismissed for failure to state a claim.

A First Amendment "'as-applied challenge' … requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC v. County of Suffolk*, 463 F. 3d 167, 174 (2d Cir. 2006).  New York courts have held that statutes enacted by the State Legislature "enjoy a strong presumption of constitutionality," and "parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt."  *LaValle v. Hayden*, 98 N.Y.2d 155, 161 (2002).  In addition, "substantial deference is due the Legislature."  *Catholic Charities of Diocese of Albany v. Serio*, 7 N.Y.3d 510, 525 (2006), *cert. denied*, 552 U.S. 816 (2007).  This Court should apply the same presumption.  *See Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969) (referring to "general presumption of constitutionality afforded state statutes").  The Court is "not a roving commission charged with invalidating laws by straining to find unconstitutional applications."  *Commission on Independent Colleges and Universities v. New York Temp. State Comm'n on Regul. of Lobbying*, 534 F. Supp. 489, 497 (N.D.N.Y. 1982).

"'States have a compelling interest in the practice of professions within their boundaries, and … as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.'"  *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975)).  "[T]he State bears a special responsibility for maintaining standards among members of the licensed professions."  *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978).  "It is elemental that a state has broad power to

8

**A-49**

establish and enforce standards of conduct within its borders relative to the health of everyone there.  It is a vital part of a state's police power.  The state's discretion in that field extends naturally to the regulation of all professions concerned with health."  *Barsky v. Board of Regents of Univ.*, 347 U.S. 442, 449 (1954).  "[T]here is no right to practice medicine which is not subordinate to the police power of the states."  *Lambert v. Yellowley*, 272 U.S. 581, 596 (1926).

"In 2002, the Legislature enacted Education Law article 163 recognizing the previously unregulated mental health professions of psychoanalyst, mental health counselor, marriage and family therapist, and creative arts therapist (*see* Education Law §§ 8401-8411)."  *Matter of New York State Psychiatric Ass'n, Inc. v. Mills*, 29 A.D.3d 1058, 1058-1059 (3d Dep't 2006) (affirming dismissal of challenge to regulations that set forth licensure requirements for psychoanalysts), *lv denied*, 7 N.Y.3d 708 (2006).  In enacting article 163, the Legislature explained:

> The practices of mental health counseling, marriage and family therapy, creative arts therapy, and psychoanalysis within the state of New York affects the public safety and welfare of its citizens.  The legislature finds it is in the public interest to regulate and control these practices in order to protect the public from unprofessional, improper, unauthorized and unqualified practice of counseling and psychotherapy…

L. 2002, Ch. 676, § 7 (cited in *Matter of New York State Psychiatric Ass'n, Inc.*, 29 A.D.3d at 1060).  The "legislation was carefully crafted in cooperation with members of the mental health profession who had expressed a great deal of concern for mental health consumers who [had been] left unprotected from unqualified and incompetent practitioners."  Senate Mem. in Support, New York Bill Jacket, 2002 S.B. 7727, Ch. 676.

Here, Plaintiff fails to plead a plausible First Amendment claim.  *See generally National Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F. 3d 1043, 1053-1056 (9th Cir. 2000) (rejecting First Amendment challenge to California's mental health licensing system), *cert. denied*, 532 U.S. 972 (2001).  The challenged statute, Education Law § 8402, defines

9

the practice of mental health counseling and sets forth requirements for a professional license.[3] The statute does not dictate that mental health counselors convey a particular message.  *See National Ass'n for Advancement of Psychoanalysis*, 228 F. 3d at 1056 ("California does not dictate the content of what is said in therapy; the state merely determines who is qualified as a mental health professional.").  The fact that mental health counselors use speech to treat their clients does not entitle them to special First Amendment protection.  Contrary to Plaintiff's view, "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity."  *Ohralik*, 436 U.S. at 456 (noting examples of communications that are regulated without offending the First Amendment).  "Given the health and safety implications, [New York's] interest in regulating mental health is even more compelling than a state's interest in regulating in-person solicitation by attorneys."  *National Ass'n for Advancement of Psychoanalysis*, 228 F. 3d at 1054.

In sum, Count I should be dismissed.

**C.      Plaintiff's facial First Amendment claim should be dismissed**

In Count II of the Complaint, which is identified as a facial First Amendment claim, Plaintiff asserts in confusing fashion that Education Law § 8402 is "substantially overbroad," but also "significantly underinclusive".  ECF No. 24 at pp. 18-19.  Count II should be dismissed for failure to state a claim.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which

---

[3] In addition, the statute provides that "[o]nly a person licensed or exempt under this article shall practice mental health counseling or use the title 'mental health counselor.'  Only a person licensed under this article shall use the title 'licensed mental health counselor' or any other designation tending to imply that the person is licensed to practice mental health counseling."  N.Y. Education Law § 8402(2).

the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "A 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Field Day, LLC*, 463 F. 3d at 174 (2d Cir. 2006). "In order to prevail on an overbreadth challenge, the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Farrell v. Burke*, 449 F. 3d 470, 499 (2d Cir. 2006) (internal quotation marks omitted).

Plaintiff claims that Education Law § 8402 is overbroad, reasoning that "individuals who use words to help people with emotional, behavioral, or relationship problems fall within New York's definition of 'mental health counseling.'" ECF No. 24 ¶ 95. Plaintiff ignores the text of the statute. Education Law § 8402(1) provides that

> The practice of the profession of mental health counseling is defined as:
>
> (a) the evaluation, assessment, amelioration, treatment, modification, or adjustment to a disability, problem, or disorder of behavior, character, development, emotion, personality or relationships by the use of verbal or behavioral methods with individuals, couples, families or groups in private practice, group, or organized settings; and
>
> (b) the use of assessment instruments and mental health counseling and psychotherapy to identify, evaluate and treat dysfunctions and disorders for purposes of providing appropriate mental health counseling services.

Further, Education Law § 8410 sets forth in great detail various exemptions to Education Law article 163. Education Law § 8411 contains special provisions concerning licensing. Plaintiff also ignores the existence of Education Department regulations concerning mental health counseling. *See e.g.* 8 N.Y.C.R.R. Pt. 79, Subpt. 79-9.

Plaintiff also complains that New York State does not impose licensing requirements on "life coaches, mentors, and self-help gurus." ECF No. 24 at p. 19. However, "the First Amendment imposes no freestanding underinclusiveness limitation." *Williams-Yulee v. Florida*

11

**A-52**

*Bar*, 575 U.S. 433, 449 (2015) (internal quotation marks omitted).  In any event, "[a] State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns."  *Id*.; *see also Person v. Association of Bar of City of New York*, 554 F. 2d 534, 539 (2d Cir. 1977) ("New York may tackle a problem one step at a time."), *cert. denied*, 434 U.S. 924.  Accordingly, Plaintiff's opinion that New York should expand its licensing requirements fails to support a claim.

In sum, Count II fails to state a claim and should be dismissed.

**D.     Plaintiff's vagueness claim should be dismissed**

In Count III, Plaintiff claims that Education Law § 8402 is impermissibly vague.  She asserts in conclusory fashion that the statutory definition of mental health counseling is confusing, and that "New York … draws vague distinctions between types of licensed speech."  ECF No. 24 at pp. 20-21.  Plaintiff fails to state a claim.

"The 'void for vagueness' doctrine is chiefly applied to criminal legislation."  *Arriaga v. Mukasey*, 521 F. 3d 219, 222-223 (2d Cir. 2008).  "Laws with civil consequences receive less exacting vagueness scrutiny."  *Id*. at 223.  "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."  *United States v. Williams*, 553 U.S. 285, 304 (2008).  "A civil statute is generally deemed unconstitutionally vague only if it commands compliance in terms so vague and indefinite as really to be no rule or standard at all."  *Advance Pharm., Inc. v. United States*, 391 F. 3d 377, 396 (2d Cir. 2004) (internal quotation marks omitted).  In the criminal context, "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Williams*, 553 U.S. at 304.  Due process requires only that a statute provide

12

**A-53**

"minimal guidelines" as to the conduct it proscribes when understood through common sense and ordinary practice; the Constitution does not demand "meticulous specificity … at the cost of flexibility and reasonable breadth." *United States v. Rosen*, 716 F. 3d 691, 699 (2d Cir. 2013). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Here, none of the challenged terms in Education Law § 8402 is impermissibly vague. Instead, they have "a core meaning that can reasonably be understood" and applied and are thus not vague. *See Brache v. Westchester County*, 658 F. 2d 47, 51 (2d Cir. 1981), *cert. denied*, 455 U.S. 1005 (1982); *see also VIP of Berlin, LLC v. Town of Berlin*, 593 F. 3d 179, 187 (2d Cir. 2010). Indeed, <u>Plaintiff concedes that her practice fits the definition of mental health counseling under Education Law § 8402</u>. ECF No. 24 ¶ 33.

Plaintiff also argues that Education Law § 8402 is vague because mental health counseling shares similarities to other licensed professions such as marriage and family therapy, creative arts therapy, and psychoanalysis. ECF No. 24 at pp. 11, 20-21. However, those professions are addressed in separate sections of Article 163 with their own definitions, and Plaintiff does not challenge the specific terms in those sections. *See* Education Law §§ 8403, 8404, 8405. In any event, the possibility of "close cases" does not render the statute unconstitutionally vague. *Williams*, 553 U.S. at 306.

To the extent that Plaintiff brings a facial vagueness challenge, she faces a particularly high burden. To succeed, she must establish that the statute is so vague that it "can never be validly applied," *Vermont Right to Life Committee, Inc. v. Sorrell*, 758 F. 3d 118, 128 (2d Cir. 2014)— i.e., that it "is impermissibly vague in all of its applications," *Richmond Boro Gun Club, Inc. v. City of New York*, 97 F. 3d 681, 684 (2d Cir. 1996) (internal quotation marks omitted). Plaintiff

does not come close to satisfying this high bar.  Contrary to Plaintiff's view, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications."  *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotation marks omitted).

In sum, Count III should be dismissed for failure to state a claim.

## POINT III

### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Where, as here, the problems with the plaintiff's causes of action are substantive, repleading would be futile and should be denied.  *See Cuoco v. Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000).  Inasmuch as Plaintiff's claims suffer from fatal substantive defects, repleading would be futile and Plaintiff's claims against the Attorney General should be dismissed with prejudice. *See Burke*, 2020 WL 4741043, at *6 (dismissing the plaintiff's claims against the Attorney General and determining that the plaintiff's request to amend should be denied as futile); *Ajamian v. New York*, No. 13-CV-1316, 2014 WL 3928448, at *7 (N.D.N.Y. Aug. 11, 2014) (dismissing plaintiff's claims with prejudice and declining to exercise supplemental jurisdiction over his state law claims).

14

A-55

**CONCLUSION**

For the reasons set forth above, the Court should grant the Attorney General's motion and

dismiss all claims against her with prejudice.


Dated:  Albany, New York
       July 6, 2021

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York
                                        Attorney for Defendant Letitia James
                                        The Capitol
                                        Albany, New York  12224

                                        By: *s/ Mark G. Mitchell*
                                        Mark G. Mitchell
                                        Assistant Attorney General, of Counsel
                                        Bar Roll No. 516818
                                        Telephone:  (518) 776-2583
                                        Fax:  (518) 915-7738 (Not for service of papers)
                                        Email: mark.mitchell@ag.ny.gov

15

**A-56**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————

ELIZABETH BROKAMP,

                                        *Plaintiff*,

                    -against-

LETITIA JAMES, in her official capacity as Attorney
General of the State of New York; BETTY ROSA, in her
official capacity as the New York State Commissioner of
Education; the NEW YORK STATE EDUCATION
DEPARTMENT BOARD OF REGENTS; the NEW
YORK STATE BOARD OF MENTAL HEALTH
PRACTITIONERS; and THOMAS BIGLIN, HELENA
BOERSMA, SARGAM JAIN, RENE JONES, SUSAN L.
BOXER KAPPEL, SARA LIN FRIEDMAN
MCMULLIAN, RODNEY MEANS, TIMOTHY
MOONEY, ANGELA MUSOLINO, MICHELE
LANDERS MEYER, NATALIE Z. RICCIO, HOLLY
VOLLINK-LENT, JILL R. WELDUM, and SUSAN
WHEELER WEEKS, in their official capacity as members
of the New York State Board of Mental Health
Practitioners,

                                        *Defendants*.

———————————————————————

**NOTICE OF MOTION**

1:21-CV-00389

DNH/ATB

        PLEASE TAKE NOTICE that upon the annexed Declaration of Mark G. Mitchell and the

accompanying Memorandum of Law, and upon all prior proceedings, Defendants New York State

Commissioner of Education Betty A. Rosa, the New York State Education Department Board of

Regents, the New York State Board of Mental Health Practitioners, Thomas Biglin, Helena

Boersma, Sargam Jain, Rene Jones, Susan L. Boxer Kappel, Sara Lin Friedman McMullian,

Rodney Means, Timothy Mooney, Angela Musolino, Michele Landers Meyer, Natalie Z. Riccio,

1

Holly Vollink-Lent, Jill R. Weldum, and Susan Wheeler Weeks, on a date and time to be scheduled

upon filing by the Clerk of Court, or as soon thereafter as counsel can be heard, will make a motion

at the United States District Court, Northern District of New York, Alexander Pirnie Federal

Building and U.S. Courthouse, Utica, New York, pursuant to Rules 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure, for an order dismissing all claims against them in the Amended

Complaint, with prejudice, together with such other or further relief as may be just.


Dated: Albany, New York
       August 6, 2021

                                        LETITIA JAMES
                                        Attorney General
                                        State of New York
                                        Attorney for Defendants
                                        The Capitol
                                        Albany, New York  12224

                                        By: *s/ Mark G. Mitchell*
                                        Mark G. Mitchell
                                        Assistant Attorney General, of Counsel
                                        Bar Roll No. 516818
                                        Telephone: (518) 776-2583
                                        Fax: (518) 915-7738 (Not for service of papers)
                                        Email: mark.mitchell@ag.ny.gov


To:    Alan J. Pierce
       Hancock, Estabrook Law Firm
       100 Madison Street, Suite 1500
       Syracuse, NY  13202

       Jeffrey H. Redfern
       Institute for Justice
       901 North Glebe Road - Suite 900
       Arlington, VA  22203

       Robert Johnson
       Institute for Justice

16781 Chagrin Blvd. #256
Shaker Heights, OH  44120

Robert McNamara
Institute for Justice
901 North Glebe Road - Suite 900
Arlington, VA  22203

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

ELIZABETH BROKAMP,

|                                                     |                                    |
| --------------------------------------------------- | ---------------------------------- |
|                                       *Plaintiff*,  | **ATTORNEY DECLARATION**           |
|                          -against-                  |                                    |
|                                                     | 1:21-CV-00389                      |
| LETITIA JAMES, in her official                      |                                    |
| capacity as Attorney General of the                 | DNH/ATB                            |
| State of New York, *et al.*,                        |                                    |
|                                     *Defendants*.   |                                    |

---

MARK G. MITCHELL, on the date noted below and pursuant to § 1746 of title 28 of the United States Code, declares the following to be true and correct under penalty of perjury under the laws of the United States of America:

1.      I am an Assistant Attorney General in the office of LETITIA JAMES, Attorney General of the State of New York, attorney for Defendants in the above-captioned action.  I am an attorney duly admitted to practice before this Court and am fully familiar with the proceedings had herein.

2.      I make this Declaration in support of the motion of Defendants New York State Commissioner of Education Betty A. Rosa, the New York State Education Department Board of Regents, the New York State Board of Mental Health Practitioners, Thomas Biglin, Helena Boersma, Sargam Jain, Rene Jones, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Rodney Means, Timothy Mooney, Angela Musolino, Michele Landers Meyer, Natalie Z. Riccio,

1

**A-60**

Holly Vollink-Lent, Jill R. Weldum, and Susan Wheeler Weeks, pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, for an order dismissing all claims against them in the Amended Complaint with prejudice.

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Law, the motion to dismiss should be granted.

Dated:  August 6, 2021
        Albany, New York

*s/ Mark G. Mitchell*

Mark G. Mitchell
Assistant Attorney General, of Counsel
Bar Roll No. 516818
Telephone:  518-776-2583
Fax:  518-915-7738
Mark.Mitchell@ag.ny.gov

2

**A-61**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ELIZABETH BROKAMP,

                                        *Plaintiff*,

                -against-                                    1:21-CV-00389

LETITIA JAMES, in her official                              DNH/ATB
capacity as Attorney General of the
State of New York, *et al*.,

                                        *Defendants*.

_____


## MEMORANDUM OF LAW IN SUPPORT OF
## DEENDANTS' MOTION TO DISMISS


                        LETITIA JAMES
                        Attorney General
                        State of New York
                        Attorney for Defendants
                        The Capitol
                        Albany, New York  12224

Mark G. Mitchell
Assistant Attorney General, of Counsel
Bar Roll No. 516818
Telephone:  (518) 776-2583
Fax:  (518) 915-7738 (Not for service of papers)          Date: August 6, 2021

**Table of Contents**

PRELIMINARY STATEMENT ............................................................... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY...................................... 1

ARGUMENT ............................................................................. 4

    Standard ......................................................................... 4

POINT I - PLAINTIFF'S CLAIMS AGAINST THE NEW YORK STATE
    EDUCATION DEPARTMENT BOARD OF REGENTS, THE NEW
    YORK STATE BOARD OF MENTAL HEALTH PRACTITIONERS,
    AND STATE OFFICIALS MUST BE DISMISSED FOR LACK OF
    SUBJECT MATTER JURISDICTION .................................................. 5

POINT II - PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE
    TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED .............. 6

    A.  Plaintiff lacks standing......................................................... 6

    B.  Plaintiff's as-applied First Amendment claims should be dismissed .............. 7

    C.  Plaintiff's facial First Amendment claims should be dismissed.................... 11

    D.  Plaintiff's vagueness claims should be dismissed ......................................... 13

POINT III - PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT
    LEAVE TO AMEND ....................................................................... 15

CONCLUSION................................................................................. 16

## PRELIMINARY STATEMENT

In the present action, Plaintiff Elizabeth Brokamp, a Virginia-licensed professional counselor, claims to have a First Amendment right to provide mental health counseling in New York without a New York license.   In essence, Plaintiff asserts that because mental health counseling involves talking, the First Amendment bars New York State from regulating mental health counseling.[1]

Defendants New York State Commissioner of Education Betty A. Rosa, the New York State Education Department Board of Regents, the New York State Board of Mental Health Practitioners, Thomas Biglin, Helena Boersma, Sargam Jain, Rene Jones, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Rodney Means, Timothy Mooney, Angela Musolino, Michele Landers Meyer, Natalie Z. Riccio, Holly Vollink-Lent, Jill R. Weldum, and Susan Wheeler Weeks move, pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure, for an order dismissing the Amended Complaint with prejudice.   First, all claims against the New York State Education Department Board of Regents, the New York State Board of Mental Health Practitioners, and state officials should be dismissed for lack of subject matter jurisdiction. Second, Plaintiff lacks standing.   Third, Plaintiff's as-applied First Amendment claims, facial First Amendment claims, and vagueness claims fail to state a claim upon which relief can be granted. Finally, Plaintiff's claims should be dismissed with prejudice and without leave to amend further.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

In April 2021, Plaintiff commenced this action against (1) Defendant Letitia James, in her official capacity as Attorney General of the State of New York, and (2) Defendant New York State

---

[1] Plaintiff filed a similar lawsuit against the District of Columbia seeking to invalidate its licensing law for professional counselors.   *See Brokamp v. District of Columbia*, No. 1:20-CV-3574 (D.D.C.).   The CM/ECF docket for that action indicates that the defendant filed a motion to dismiss which is pending decision.

1

Board of Mental Health Practitioners.  Compl., ECF No. 1 at p. 1.  Plaintiff asserts that she is a Virginia-licensed professional counselor.  ECF No. 1 ¶ 1; Am. Compl., ECF No. 24 ¶ 1.  Plaintiff charges her clients for her services.  ECF No. 1 ¶ 27; ECF No. 24 ¶ 31.  Plaintiff states that she "is not licensed as a professional counselor in New York, and she has no intention of applying to become licensed."  ECF No. 1 ¶ 31; ECF No. 24 ¶ 35.  Plaintiff asserts that she currently provides counseling services to one client located in New York, pursuant to a COVID-19 related executive order, that temporarily allowed licensed out of state counselors to practice in New York.  ECF No. 1 ¶¶ 2, 32; ECF No. 24 ¶¶ 2, 36 (referencing EO 202.15).  Although this executive order has expired, effective June 25, 2021 (see, https://www.governor.ny.gov/news/no-210-expiration-executive-orders-202-and-205), Plaintiff states that she is entitled to continue treating her New York client, and to solicit other New York clients, without the inconvenience of obtaining a New York license.  ECF No. 1 ¶ 3; ECF No. 24 ¶ 3.

Plaintiff demands the following relief: (1) a declaratory judgment providing that "as applied to Plaintiff and on its face, New York's licensing law for mental health counselors, N.Y. Educ. Law §§ 8402-8405, violates the First and Fourteenth Amendments to the United States Constitution;" and (2) a "permanent injunction prohibiting Defendants and their agents from applying New York's licensing requirements for mental health counselors to prevent Plaintiff from providing teletherapy services to New York residents."  ECF No. 1 at p. 20; ECF No. 24 at pp. 21-22.

On June 7, 2021, the Attorney General filed a motion pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure for an order dismissing all claims against her with

2

prejudice.  Defendant's Motion to Dismiss the Complaint, ECF No. 20.[2]  Instead of opposing the

Attorney General's motion to dismiss, Plaintiff filed an Amended Complaint, which purports to

assert claims against numerous additional defendants.  ECF No. 24.  By its Text Order entered on

June 22, 2021, the Court terminated the Attorney General's motion to dismiss as moot upon the

Plaintiff's filing of the Amended Complaint.  Text Order Terminating Motion to Dismiss, ECF

No. 25.  On July 6, 2021, the Attorney General filed a motion pursuant to Rules 12(b)(6) and

12(b)(1) of the Federal Rules of Civil Procedure for an order dismissing all claims against her in

the Amended Complaint with prejudice.  ECF No. 29.[3]  In addition, the Court granted the

remaining defendants' request for extensions of time to respond to the Amended Complaint.  ECF

No. 33.

For the reasons set forth below, it is respectfully submitted that the Court should grant the

motion of Defendants New York State Commissioner of Education Betty A. Rosa, the New York

State Education Department Board of Regents,[4] the New York State Board of Mental Health

Practitioners, Thomas Biglin, Helena Boersma, Sargam Jain, Rene Jones, Susan L. Boxer Kappel,

---

[2]  At that time, the CM/ECF civil docket for this action indicated that Plaintiff had not filed proof of service as to Defendant New York State Board of Mental Health Practitioners, nor had that defendant appeared in this action.  Affidavit of Service, ECF No. 7 (affidavit of service on the Attorney General only).

[3]  The Court granted Plaintiff's request for an extension of time to respond to the Attorney General's motion to dismiss.  ECF No. 35.

[4]  It is unclear whether plaintiff intended to name the Education Department or Board of Regents, or both, though it does not bear on the outcome of this motion.  The New York State Board of Regents is the governing body of the University of the State of New York and is, among other things, responsible for exercising legislative functions over the state educational system, which includes the regulation of the practice of over fifty professions.  *See* Education Law Title VII; Education Law § 6506.  The State Education Department, under the Board of Regents' direction, administers professional regulation through its Office of the Professions, assisted by the State Boards for the Professions.  *See* Education Law §§ 6507, 6508.

3

**A-66**

Sara Lin Friedman McMullian, Rodney Means, Timothy Mooney, Angela Musolino, Michele Landers Meyer, Natalie Z. Riccio, Holly Vollink-Lent, Jill R. Weldum, and Susan Wheeler Weeks to dismiss all claims against them in the Amended Complaint with prejudice.

## ARGUMENT

### Standard

Under Rule 12(b)(6), to survive a motion to dismiss, a complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal quotation marks and some alterations omitted).

"In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), federal courts need not accept as true contested jurisdictional allegations." *Sloan v. Truong*, 573 F. Supp. 2d 823, 827 (S.D.N.Y. 2008) (internal quotation marks omitted). "The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity …. It is well-settled that states and their officials acting in their official capacities are not 'persons' under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute." *Brown v. New York*, 975 F. Supp. 2d 209, 221 (N.D.N.Y. 2013).

For the reasons set forth below, Plaintiff's claims should be dismissed with prejudice.

4

## POINT I

**PLAINTIFF'S CLAIMS AGAINST THE NEW YORK STATE EDUCATION DEPARTMENT BOARD OF REGENTS, THE NEW YORK STATE BOARD OF MENTAL HEALTH PRACTITIONERS, AND STATE OFFICIALS MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff purports to assert claims against the New York State Education Department Board of Regents and the New York State Board of Mental Health Practitioners.  ECF No. 24 ¶¶ 11, 12. Those claims must be dismissed because "sovereign immunity bars federal courts from entertaining lawsuits against [state agencies] 'regardless of the nature of the relief sought.'"  *Brown v. New York*, 975 F. Supp. 2d 209, 221 (N.D.N.Y. 2013) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).  "Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies."  *Roberts v. New York*, 911 F. Supp. 2d 149, 159-160 (N.D.N.Y. 2012).  "It is well-established that New York has not consented to § 1983 suits in federal court, and that § 1983 was not intended to override a state's sovereign immunity …."  *Mamot v. Board of Regents*, 367 Fed. App'x 191, 192 (2d Cir. 2010) (internal citations omitted).

Thus, all claims against the New York State Education Department Board of Regents and the New York State Board of Mental Health Practitioners should be dismissed for lack of subject matter jurisdiction and they should be terminated as defendants in this action.  *See Mamot*, 367 Fed. App'x at 192-193 (determining that the Board of Regents, the New York State Education Department, and the University of the State of New York were entitled to Eleventh Amendment immunity and thus the court lacked subject matter jurisdiction over the plaintiff's claims); *United States v. City of Yonkers*, 96 F. 3d 600, 619 (2d Cir. 1996) (the New York State Education Department and Board of Regents were immune to suit under the Eleventh Amendment), *cert. denied*, 521 U.S. 1104 (1997); *Tsirelman v. Daines*, 19 F. Supp. 3d 438, 449 (E.D.N.Y. 2014)

(dismissing claims against the New York State Department of Health and the State Board for Professional Medical Conduct based on Eleventh Amendment immunity), *aff'd*, 794 F.3d 310 (2d Cir. 2015), *cert. denied*, 577 U.S. 1064 (2016); *Anonymous v. Kaye*, 987 F. Supp. 131, 135 (N.D.N.Y. 1997) (the plaintiff's claims against the New York State Board of Law Examiners were barred by the Eleventh Amendment).

Likewise, "State immunity extends to state agencies and to state officers who act on behalf of the state.  Thus, when the state is the real party in interest, the Eleventh Amendment generally bars federal court jurisdiction over an action against a state official acting in his or her official capacity." *Burnette v. Carothers*, 192 F. 3d 52, 57 (2d Cir. 1999) (internal citation omitted), *cert. denied*, 531 U.S. 1052 (2000).  Under *Ex parte Young*, federal courts may entertain suits against state officials in their official capacity to enforce federal law where the suit seeks prospective injunctive and declaratory relief only.  *See* 209 U.S. 123 (1908); *see also State Employees Bargaining Agent Coalition v. Rowland*, 494 F. 3d 71, 95 (2d Cir. 2007).  The *Ex parte Young* exception is inapplicable in this action involving a state statute.  Further, for the reasons set forth below in Point II, Plaintiff fails to plead a plausible constitutional claim.  Accordingly, Plaintiff's claims should be dismissed.

## POINT II

### PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

In addition to lack of subject matter jurisdiction, Plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

### A.    Plaintiff lacks standing

"As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Jackson-Bey v. Hanslmaier*, 115 F. 3d

6

1091, 1096 (2d Cir. 1997).  Here, Plaintiff concedes that she has no intention of applying to become licensed in New York.  ECF No. 24 ¶ 35.  Accordingly, Plaintiff's claims must be dismissed for lack of standing.  *See United States v. Decastro*, 682 F. 3d 160, 164 (2d Cir. 2012) (holding that plaintiff who failed to apply for a New York license lacked standing to challenge the state's licensing laws), *cert. denied*, 568 U.S. 1092 (2013); *see also Libertarian Party of Erie Cty. v. Cuomo*, 300 F. Supp. 3d 424, 433 (W.D.N.Y. 2018), *aff'd in part, appeal dismissed in part*, 970 F. 3d 106 (2d Cir. 2020).

The threshold requirement for standing that Plaintiff apply for a New York license may be excused only if she "makes a substantial showing that application for the benefit (or, in this case, registration) would have been futile." *Jackson-Bey*, 115 F. 3d at 1096.  Here, Plaintiff does not even allege, much less make a substantial showing, that her application for a New York license would be futile.  Instead, Plaintiff simply prefers not to apply because she would like to operate an unlicensed counseling business.  Accordingly, Plaintiff's claims must be dismissed for lack of standing.  *See id*. ("an unsupported claim of futility is not enough to excuse a plaintiff's failure to apply").

## B.    Plaintiff's as-applied First Amendment claims should be dismissed

In Count I of the Amended Complaint, Plaintiff claims that N.Y. Education Law § 8402, concerning the definition of the practice of mental health counseling, violates Plaintiff's rights under the First Amendment.  ECF No. 24 at pp. 16-17.  Plaintiff apparently contends that because the practice of mental health counseling includes talking to clients, Education Law § 8402 places an "impermissible burden" on Plaintiff's free speech rights, and, therefore, the First Amendment bars New York State from enforcing licensing requirements for mental health counselors.  Count I should be dismissed for failure to state a claim.

7

**A-70**

A First Amendment "'as-applied challenge' … requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC v. County of Suffolk*, 463 F. 3d 167, 174 (2d Cir. 2006). New York courts have held that statutes enacted by the State Legislature "enjoy a strong presumption of constitutionality," and "parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt." *LaValle v. Hayden*, 98 N.Y.2d 155, 161 (2002). In addition, "substantial deference is due the Legislature." *Catholic Charities of Diocese of Albany v. Serio*, 7 N.Y.3d 510, 525 (2006), *cert. denied*, 552 U.S. 816 (2007). This Court should apply the same presumption. *See Kramer v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 627 (1969) (referring to "general presumption of constitutionality afforded state statutes"). The Court is "not a roving commission charged with invalidating laws by straining to find unconstitutional applications." *Commission on Independent Colleges and Universities v. New York Temp. State Comm'n on Regul. of Lobbying*, 534 F. Supp. 489, 497 (N.D.N.Y. 1982).

"'States have a compelling interest in the practice of professions within their boundaries, and … as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.'" *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975)). "[T]he State bears a special responsibility for maintaining standards among members of the licensed professions." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978). "It is elemental that a state has broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there. It is a vital part of a state's police power. The state's discretion in that field extends naturally

to the regulation of all professions concerned with health." *Barsky v. Board of Regents of Univ.*, 347 U.S. 442, 449 (1954).  "[T]here is no right to practice medicine which is not subordinate to the police power of the states." *Lambert v. Yellowley*, 272 U.S. 581, 596 (1926).

"In 2002, the [New York] Legislature enacted Education Law article 163 recognizing the previously unregulated mental health professions of psychoanalyst, mental health counselor, marriage and family therapist, and creative arts therapist (*see* Education Law §§ 8401-8411)." *Matter of New York State Psychiatric Ass'n, Inc. v. Mills*, 29 A.D.3d 1058, 1058-1059 (3d Dep't 2006) (affirming dismissal of challenge to regulations that set forth licensure requirements for psychoanalysts), *lv denied*, 7 N.Y.3d 708 (2006).   In enacting Article 163, the Legislature explained:

> The practices of mental health counseling, marriage and family therapy, creative arts therapy, and psychoanalysis within the state of New York affects the public safety and welfare of its citizens.  The legislature finds it is in the public interest to regulate and control these practices in order to protect the public from unprofessional, improper, unauthorized and unqualified practice of counseling and psychotherapy …

L. 2002, Ch. 676, § 7 (cited in *Matter of New York State Psychiatric Ass'n, Inc.*, 29 A.D.3d at 1060).  The "legislation was carefully crafted in cooperation with members of the mental health profession who had expressed a great deal of concern for mental health consumers who [had been] left unprotected from unqualified and incompetent practitioners."  Senate Mem. in Support, New York Bill Jacket, 2002 S.B. 7727, Ch. 676.

Here, Plaintiff fails to plead a plausible First Amendment claim.  *See generally National Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F. 3d 1043, 1053-1056 (9th Cir. 2000) (rejecting First Amendment challenge to California's mental health licensing system), *cert. denied*, 532 U.S. 972 (2001).  The challenged statute, Education Law § 8402, defines

the practice of mental health counseling and sets forth requirements for a professional license.[5] The statute does not dictate that mental health counselors convey a particular message. *See National Ass'n for Advancement of Psychoanalysis*, 228 F. 3d at 1056 ("California does not dictate the content of what is said in therapy; the state merely determines who is qualified as a mental health professional."). The fact that mental health counselors use speech to treat their clients does not entitle them to special First Amendment protection. Contrary to Plaintiff's view, "the State does not lose its power to regulate commercial activity deemed harmful to the public whenever speech is a component of that activity." *Ohralik*, 436 U.S. at 456 (noting examples of communications that are regulated without offending the First Amendment). "Given the health and safety implications, [New York's] interest in regulating mental health is even more compelling than a state's interest in regulating in-person solicitation by attorneys." *National Ass'n for Advancement of Psychoanalysis*, 228 F. 3d at 1054.

New York is hardly an outlier in imposing licensing requirements on mental health counselors. According to the American Counseling Association, "[p]rofessional counselors are required by law in every state, the District of Columbia, and Puerto Rico to be licensed in order to legally practice as a professional counselor."[6] Indeed, Plaintiff asserts that because she is licensed as a professional counselor in the state of Virginia, and is subject to oversight by the Virginia

---

[5] In addition, the statute provides that "[o]nly a person licensed or exempt under this article shall practice mental health counseling or use the title 'mental health counselor.' Only a person licensed under this article shall use the title 'licensed mental health counselor' or any other designation tending to imply that the person is licensed to practice mental health counseling." N.Y. Education Law § 8402(2).

[6] "State Licensing of Professional Counselors", accessible at: https://www.counseling.org/knowledge-center/licensure-requirements/overview-of-state-licensing-of-professional-counselors

10

A-73

Board of Counseling, she should be deemed qualified to practice mental health counseling in New York. ECF No. 24 ¶¶ 1, 14, 17, 18, 62. Plaintiff contends that this Court should effectively remove the ability of New York State to exercise its established authority to regulate the practice of mental health counseling because another state has deemed her fit to practice, and because "speech" is allegedly a component of the practice of mental health counseling. In short, Plaintiff asks this Court to accept the nonsensical proposition that Virginia is permitted to impose licensing requirements on mental health counselors, but New York is not.

In sum, Count I should be dismissed.

### C.    Plaintiff's facial First Amendment claims should be dismissed

In Count II of the Amended Complaint, which is identified as a facial First Amendment claim, Plaintiff asserts in self-contradictory fashion that Education Law § 8402 is "substantially overbroad," but also "significantly underinclusive". ECF No. 24 at pp. 18-19. Count II should be dismissed for failure to state a claim.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "A 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Field Day, LLC*, 463 F. 3d at 174 (2d Cir. 2006). "In order to prevail on an overbreadth challenge, the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Farrell v. Burke*, 449 F. 3d 470, 499 (2d Cir. 2006) (internal quotation marks omitted).

Plaintiff claims that Education Law § 8402 is overbroad, reasoning that "individuals who use words to help people with emotional, behavioral, or relationship problems fall within New

11

**A-74**

York's definition of 'mental health counseling.'"  ECF No. 24 ¶ 95.  Plaintiff ignores the text of

the statute.  Education Law § 8402(1) provides that

> The practice of the profession of mental health counseling is defined as:
>
> (a) the evaluation, assessment, amelioration, treatment, modification, or adjustment to a disability, problem, or disorder of behavior, character, development, emotion, personality or relationships by the use of verbal or behavioral methods with individuals, couples, families or groups in private practice, group, or organized settings; and
>
> (b) the use of assessment instruments and mental health counseling and psychotherapy to identify, evaluate and treat dysfunctions and disorders for purposes of providing appropriate mental health counseling services.

Further, Education Law § 8410 sets forth in great detail various exemptions to Education Law

Article 163.  Education Law § 8411 contains special provisions concerning licensing.  Plaintiff

also ignores the existence of New York State Education Department regulations concerning mental

health counseling, which add further specificity and context to Education Law Article 163.  *See*

*e.g.* 8 N.Y.C.R.R. Pt. 79, Subpt. 79-9.

Notably, Virginia has adopted a similar statute concerning mental health counseling.

Virginia's statute on professional counseling provides that

> "Counseling" means the application of principles, standards, and methods of the counseling profession in (i) conducting assessments and diagnoses for the purpose of establishing treatment goals and objectives and (ii) planning, implementing, and evaluating treatment plans using treatment interventions to facilitate human development and to identify and remediate mental, emotional, or behavioral disorders and associated distresses that interfere with mental health.

Va. Code Ann. § 54.1-3500 (West).  Virginia defines the "Practice of counseling" as "rendering

or offering to render to individuals, groups, organizations, or the general public any service

involving the application of principles, standards, and methods of the counseling profession, which

shall include appraisal, counseling, and referral activities."  *Id*.

12

A-75

Plaintiff also complains that New York State does not impose licensing requirements on "life coaches, mentors, and self-help gurus." ECF No. 24 at p. 19. However, "the First Amendment imposes no freestanding underinclusiveness limitation." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015) (internal quotation marks omitted). In any event, "[a] State need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns." *Id.*; *see also Person v. Association of Bar of City of New York*, 554 F. 2d 534, 539 (2d Cir. 1977) ("New York may tackle a problem one step at a time."), *cert. denied*, 434 U.S. 924. Accordingly, Plaintiff's opinion that New York should expand its licensing requirements fails to support a claim. However, Plaintiff fails to recognize that "life coaches, mentors, and self-help gurus" who are found to be practicing mental health counseling without a license are subject to prosecution for unauthorized practice of a profession pursuant to Education Law § 6512.

In sum, Count II fails to state a claim and should be dismissed.

### D.     Plaintiff's vagueness claims should be dismissed

In Count III, Plaintiff claims that Education Law § 8402 is impermissibly vague. She asserts in conclusory fashion that the statutory definition of mental health counseling is confusing, and that "New York … draws vague distinctions between types of licensed speech." ECF No. 24 at pp. 20-21. Plaintiff fails to state a claim.

"The 'void for vagueness' doctrine is chiefly applied to criminal legislation." *Arriaga v. Mukasey*, 521 F. 3d 219, 222-223 (2d Cir. 2008). "Laws with civil consequences receive less exacting vagueness scrutiny." *Id.* at 223. "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment." *United States v. Williams*, 553 U.S. 285, 304 (2008). "A civil statute is generally deemed unconstitutionally vague only if it commands compliance in terms so vague and indefinite as really to be no rule or standard at all."

13

**A-76**

*Advance Pharm., Inc. v. United States*, 391 F. 3d 377, 396 (2d Cir. 2004) (internal quotation marks omitted).  In the criminal context, "[a] conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement."  *Williams*, 553 U.S. at 304.  Due process requires only that a statute provide "minimal guidelines" as to the conduct it proscribes when understood through common sense and ordinary practice; the Constitution does not demand "meticulous specificity … at the cost of flexibility and reasonable breadth."  *United States v. Rosen*, 716 F. 3d 691, 699 (2d Cir. 2013). "[P]erfect clarity and precise guidance have never been required even of regulations that restrict expressive activity."  *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989).

Here, none of the challenged terms in Education Law § 8402 is impermissibly vague. Instead, they have "a core meaning that can reasonably be understood" and applied and are thus not vague.  *See Brache v. Westchester County*, 658 F. 2d 47, 51 (2d Cir. 1981), *cert. denied*, 455 U.S. 1005 (1982); *see also VIP of Berlin, LLC v. Town of Berlin*, 593 F. 3d 179, 187 (2d Cir. 2010); *Matter of Addei v. State Board for Professional Medical Conduct*, 278 A.D.2d 551, 552, (3d Dep't 2000) (determining that N.Y. Education Law provision concerning fitness to practice medicine was not unconstitutionally vague).  Indeed, Plaintiff concedes that her practice fits the definition of mental health counseling under Education Law § 8402.  ECF No. 24 ¶ 33.

Plaintiff also argues that Education Law § 8402 is vague because mental health counseling shares similarities to other licensed professions such as marriage and family therapy, creative arts therapy, and psychoanalysis.  ECF No. 24 at pp. 11, 20-21.  However, those professions are addressed in separate sections of Article 163, with their own definitions, and Plaintiff does not challenge the specific terms in those sections.  *See* Education Law §§ 8403, 8404, 8405.  In any

14

**A-77**

event, the possibility of "close cases" does not render the statute unconstitutionally vague. *Williams*, 553 U.S. at 306.

To the extent that Plaintiff brings a facial vagueness challenge, she faces a particularly high burden.  To succeed, she must establish that the statute is so vague that it "can never be validly applied," *Vermont Right to Life Committee, Inc. v. Sorrell*, 758 F. 3d 118, 128 (2d Cir. 2014)— i.e., that it "is impermissibly vague in all of its applications," *Richmond Boro Gun Club, Inc. v. City of New York*, 97 F. 3d 681, 684 (2d Cir. 1996) (internal quotation marks omitted).  Plaintiff does not come close to satisfying this high bar.  Contrary to Plaintiff's view, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotation marks omitted).

In sum, Count III should be dismissed for failure to state a claim.

## POINT III

## PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Where, as here, the problems with the plaintiff's causes of action are substantive, repleading would be futile and should be denied.  *See Cuoco v. Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000).  Moreover, Plaintiff has already amended the Complaint once.  Inasmuch as Plaintiff's claims in the Amended Complaint suffer from fatal substantive defects, further repleading would be futile and Plaintiff's claims should be dismissed with prejudice.  *See Burke v. Verizon Communications, Inc.*, No. 18-CV-4496, 2020 WL 4741043, at *6 (S.D.N.Y. Aug. 17, 2020), *adopted*, 2020 WL 6538748 (S.D.N.Y. Nov. 6, 2020) (dismissing the plaintiff's claims and determining that the plaintiff's request to amend should be denied as futile); *Ajamian v. New York*, No. 13-CV-1316, 2014 WL 3928448, at *7 (N.D.N.Y. Aug. 11, 2014) (dismissing plaintiff's

15

**A-78**

claims with prejudice and declining to exercise supplemental jurisdiction over his state law claims).

## CONCLUSION

For the reasons set forth above, the Court should grant this motion and dismiss the Amended Complaint with prejudice.

Dated: Albany, New York
August 6, 2021

LETITIA JAMES
Attorney General
State of New York
Attorney for Defendants
The Capitol
Albany, New York  12224

By: s/ Mark G. Mitchell
Mark G. Mitchell
Assistant Attorney General, of Counsel
Bar Roll No. 516818
Telephone:  (518) 776-2583
Fax:  (518) 915-7738 (Not for service of papers)
Email: mark.mitchell@ag.ny.gov

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH BROKAMP, | No. 1:21-cv-00389-DNH-ATB |
| *Plaintiff*, | |
| v. | |
| LETITIA JAMES, in her official capacity as Attorney General of the State of New York; BETTY ROSA, in her official capacity as the New York State Commissioner of Education; the NEW YORK STATE EDUCATION DEPARTMENT BOARD OF REGENTS; the NEW YORK STATE BOARD OF MENTAL HEALTH PRACTITIONERS; and THOMAS BIGLIN, HELENA BOERSMA, SARGAM JAIN, RENE JONES, SUSAN L. BOXER KAPPEL, SARA LIN FRIEDMAN MCMULLIAN, RODNEY MEANS, TIMOTHY MOONEY, ANGELA MUSOLINO, MICHELE LANDERS MEYER, NATALIE Z. RICCIO, HOLLY VOLLINK-LENT, JILL R. WELDUM, and SUSAN WHEELER WEEKS, in their official capacity as members of the New York State Board of Mental Health Practitioners, | |
| *Defendants*. | |

**RESPONSE TO EDUCATION DEPARTMENT DEFENDANTS' AND
ATTORNEY GENERAL LETITIA JAMES' MOTIONS TO DISMISS**

## **Table of Contents**

Introduction ........................................................................................................................1

Background ........................................................................................................................2

    A.    Dr. Brokamp's Counseling Services ......................................................2

    B.    New York's Licensing Requirement ......................................................3

    C.    New York's Enforcement of Its Licensing Law ...................................5

Argument ..........................................................................................................................5

    A.    This court has jurisdiction .....................................................................5

         1.    Under *Ex parte Young*, none of the defendants have immunity from prospective challenges to the constitutionality of state statutes ....................................................................................6

         2.    The Attorney General is an appropriate defendant because she has the specific and mandatory statutory responsibility for enforcing the law being challenged ............................................7

         3.    Dr. Brokamp has standing because New York's licensing law burdens her speech ....................................................................8

    B.    Dr. Brokamp has stated plausible First Amendment claims ...............11

         1.    Speech does not receive lesser (or no) protection simply because it is uttered by a "professional" ..........................................12

         2.    New York's licensing regime is a content-based restriction on speech, subject to strict scrutiny .......................................13

         3.    Dr. Brokamp has stated sufficient facial and as-applied First Amendment claims ..............................................................16

         4.    Under either strict or intermediate scrutiny, the State cannot meet its evidentiary burden on a motion to dismiss .........................21

Conclusion ......................................................................................................................22

## Table of Authorities

CASES

*Allen v. Wright,*
    468 U.S. 737 (1984)..................................................................................................11

*Burke v. Verizon Commc'ns, Inc.,*
    No. 18CIV4496PGGGWG, 2020 WL 4741043 (S.D.N.Y. Aug. 17, 2020).......................8

*Chan v. Pataki,*
    201 F.3d 430 (2d Cir. 1999)........................................................................................8

*Chrysafis v. James,*
    No. 21-CV-998 (JS)(ARL), 2021 WL 1405884 (E.D.N.Y. Apr. 14, 2021) .......................8

*Church of the Lukumi Babalu Aye v. City of Hialeah,*
    508 U.S. 520 (1993)..................................................................................................19

*Citizens United v. FEC,*
    558 U.S. 310 ..............................................................................................................19

*Edwards v. D.C.,*
    765 F. Supp. 2d 3 (D.D.C. 2011) .................................................................................9

*Edwards v. D.C.,*
    943 F. Supp. 2d 109 (D.D.C. 2013) ...........................................................................9

*Edwards v. District of Columbia,*
    755 F.3d 996 (D.C. Cir. 2014) ....................................................................................9

*Ex parte Young,*
    209 U.S. 123 (1908)................................................................................................6, 7

*Expressions Hair Design v. Schneiderman,*
    137 S. Ct. 1144 (2017)................................................................................................6

*Forsyth County v. Nationalist Movement,*
    505 U.S. 123 (1992)..................................................................................................19

*HealthNow New York, Inc. v. New York,*
    739 F. Supp. 2d 286 (W.D.N.Y. 2010) ......................................................................8

*In re Dairy Mart Convenience Stores, Inc.,*
    411 F.3d 367 (2d Cir. 2005)........................................................................................7

*Jackson-Bey v. Hanslmaier,*
    115 F.3d 1091 (2d Cir. 1997)....................................................................................10

*Jones v. Schneiderman,*
    974 F. Supp. 2d 322 (S.D.N.Y. 2013)........................................................................8

*June Med. Servs. L.L.C. v. Russo,*
    140 S. Ct. 2103 (2020) .................................................................................6

*MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) .....................................................................................9

*Mendez v. Heller,*
    530 F.2d 457 (2d Cir. 1976) ........................................................................8

*Moose Lodge No. 107 v. Irvis,*
    407 U.S. 163 (1972) ...................................................................................11

*N.Y. Youth Club v. Town of Smithtown,*
    867 F. Supp. 2d 328 (E.D.N.Y. 2012) .......................................................22

*NIFLA v. Becerra,*
    138 S. Ct. 2361 (2018) .........................................................................12, 13

*Otto v. City of Boca Raton,*
    981 F.3d 854 (11th Cir. 2020) ...................................................................13

*Pacific Coast Horseshoeing School v. Kirchmeyer,*
    961 F.3d 1062 (9th Cir. 2020) .................................................................9, 10

*Reed v. Town of Gilbert,*
    576 U.S. 155 (2015) ........................................................................... *passim*

*Reynolds v. Middleton,*
    779 F.3d 222 (4th Cir. 2015) .....................................................................22

*Sabin v. Nelson,*
    No. 7:12-CV-1373 GLS/DEP, 2014 WL 2945770 (N.D.N.Y. June 30, 2014) .................8

*Serafine v. Branaman,*
    810 F.3d 354 (5th Cir. 2016) ........................................................16, 17, 18

*Sup. Ct. of Va. v. Consumers Union of U. S., Inc.*
    446 U.S. 719 (1980) .....................................................................................6

*Ulrich v. Mane,*
    383 F. Supp. 2d 405 (E.D.N.Y. 2005) .........................................................8

*United States v. Decastro,*
    682 F.3d 160 (2d Cir. 2012) ......................................................................10

*United States v. Stevens,*
    559 U.S. 460 (2010) ...................................................................................18

*Vizaline, L.L.C. v. Tracy,*
    949 F.3d 927 (5th Cir. 2020) .....................................................................13

*Warden v. Pataki,*
 35 F. Supp. 2d 354 (S.D.N.Y.)..........................................................................8

*Williams-Yulee v. Florida Bar,*
 575 U.S. 433 (2015)........................................................................................20

## CODES, RULES, & STATUES

N.Y. Educ. Law § 6512(1)...............................................................................3, 18

N.Y. Educ. Law § 6514(2).....................................................................................7

N.Y. Educ. Law § 8402(1).....................................................................................4

N.Y. Educ. Law § 8402(1)(a)..........................................................................14, 16

N.Y. Educ. Law § 8402(3).....................................................................................4

N.Y. Educ. Law § 8403......................................................................................4, 18

N.Y. Educ. Law § 8403(c).....................................................................................18

N.Y. Educ. Law § 8404......................................................................................4, 18

N.Y. Educ. Law § 8405......................................................................................4, 18

N.Y. Educ. Law § 8405(1)(a).................................................................................18

N.Y. Educ. Law § 8407.........................................................................................4

N.Y. Educ. Law § 8410(2)..................................................................................4, 17

N.Y. Educ. Law § 8410(4)..................................................................................4, 17

N.Y. Educ. Law § 8410(5)..............................................................................4, 17, 20

**INTRODUCTION**

Dr. Elizabeth Brokamp filed this First Amendment lawsuit because in New York, it is a felony to have certain kinds of conversations, about certain topics, without a license from the state. Dr. Brokamp is a professional counselor, which means she has conversations with people in an effort to improve their emotional well-being. Her service consists of talking, and nothing else; she does not prescribe medication or conduct any medical procedures. She is highly trained, experienced, and licensed by the Commonwealth of Virginia, where she lives. During the pandemic, she has moved her practice online, and some of her clients have relocated, including to the State of New York. Although New York temporarily allowed out-of-state counselors to talk to clients in New York, that waiver has since expired. All that Dr. Brokamp wants to do is have internet video conversations with people in New York. If she does so, however, she risks felony prosecution.

The State Defendants[1] have filed two motions to dismiss, arguing that none of the defendants can be sued to prevent them from enforcing an unconstitutional law and that, in any event, the First Amendment does not apply to speech by licensed professionals. They are wrong on both counts. None of the defendants are immune from suit, and the Supreme Court has unambiguously held that professional speech is entitled to the full protection of the First Amendment. Because New York's licensing law is a content-based restriction on speech— whether it applies depends on what Dr. Brokamp is talking about with her clients—the law must satisfy strict scrutiny to survive. That demanding standard requires the State to produce actual evidence to justify its law, something it cannot do on a motion to dismiss.

---

[1] Attorney General Leticia James and "The Education Department Defendants," will be collectively referred to as "the State," and their briefs will be cited as "James Br." and "Ed. Br." respectively.

**BACKGROUND**

A.    **Dr. Brokamp's Counseling Services**

Elizabeth Brokamp has over twenty years' experience as a professional counselor. (Am. Compl. ¶ 1.) She has a Master's Degree in counseling from Columbia University, and a PhD from the University of the Cumberlands. (completed since the filing of the Amended Complaint). *Id.* ¶ 15. She also holds voluntary certifications related to professional counseling, including a certification in tele-mental health. *Id.* ¶ 16.

The Amended Complaint explains that "[p]rofessional counselors like Elizabeth talk to their clients about their feelings, their relationships, and their lives." *Id.* ¶ 1. "Elizabeth advises her clients on a variety of topics, including anxiety, relationships, and mindfulness." *Id.* ¶ 26. Her "services consist entirely of conversations between her and her clients." *Id.* ¶ 29. "Through these conversations, [Dr. Brokamp] seeks to improve her clients' well-being." *Id.* ¶ 30. Dr. Brokamp "does not prescribe medication or conduct any medical procedures." *Id.* ¶ 28.

Dr. Brokamp is licensed as a professional counselor in Virginia. Because of the pandemic, Dr. Brokamp has moved all of her counseling online, and she currently provides counseling out of her home in Virginia. *Id.* ¶ 8. While that online move was initially driven by the pandemic, Dr. Brokamp has subsequently found that teletherapy provides "significant benefits for clients, as it allows clients to seek out help without having to make a trip to a counselor's office." *Id.* ¶ 25. That flexibility is "beneficial for new mothers," a group that Dr. Brokamp serves in her practice, "as the demands of a newborn child can make it particularly difficult to schedule in-person counseling." *Id.*; *see also id.* ¶ 26 (explaining that Dr. Brokamp has a "specialty assisting women who are facing issues relating to infertility and postpartum depression"). Dr. Brokamp also believes teletherapy is helpful for clients who need to be seen imminently, and who cannot wait

2

**A-86**

for an in-person appointment. *Id.* ¶ 25. As a result, Dr. Brokamp "intends to continue providing online teletherapy for the indefinite future," including "when the pandemic is over." *Id.* ¶ 23.

During the pandemic, one of Dr. Brokamp's patients relocated to New York. *Id.* ¶ 36. Dr. Brokamp was able, for a time, to continue talking to that client because during the pandemic, New York had temporarily suspended the requirement that out-of-state counselors obtain New York licenses before they could provide teletherapy to New York residents. *Id.*

Another former client, who currently lives in New York, also reached out to Dr. Brokamp, seeking to resume therapy. *Id.* ¶ 39. Dr. Brokamp felt ethically obligated to turn down the former client because she did not think it would be in the client's interest to begin a course of therapy that might have to be terminated on short notice when the licensing exemption expired. As it turns out, the exemption expired on June 25, 2021. It is now illegal for Dr. Brokamp to talk to New Yorkers about their problems over the internet.

**B.     New York's Licensing Requirement**

In 2002, New York enacted a law making it a felony under N.Y. Educ. Law § 6512(1) to practice "mental health counseling" without a license issued by the Department of Education.. Mental health counseling is defined as:

> (a) the evaluation, assessment, amelioration, treatment, modification, or adjustment to a disability, problem, or disorder of behavior, character, development, emotion, personality or relationships by the use of verbal or behavioral methods with individuals, couples, families or groups in private practice, group, or organized settings; and (b) the use of assessment instruments and mental health counseling and psychotherapy to identify, evaluate and treat dysfunctions and disorders for purposes of providing appropriate mental health counseling services.

N.Y. Educ. Law § 8402(1). To obtain a license, one must pay a $175 fee, pass an exam, complete a one-year internship and 3,000 hours of supervised experience, and must have a master's degree or higher and "good moral character." N.Y. Educ. Law § 8402(3). Separate licenses with similar requirements are required for "marriage and family therapists," N.Y. Educ. Law § 8403, "creative arts therapists," N.Y. Educ. Law § 8404, and "psychoanalysts." The "practice of psychoanalysis" is defined as talk therapy focused on the "interpretation of dynamic unconscious mental processes that contribute to the formation of personality and behavior." N.Y. Educ. Law § 8405. A New York license does not authorize mental health counselors to prescribe drugs or use other invasive medical procedures. N.Y. Educ. Law § 8407.

New York's licensing laws also contain numerous exemptions, which allow various categories of people to provide services falling within the definition of mental health counseling without obtaining a mental health counselor license. N.Y. Educ. Law § 8410. For instance: "attorneys, rape crisis counselors, certified alcoholism counselors and certified substance abuse counselors" may "provid[e] mental health services within their respective established authorities." The statute does not define the permissible bounds of such practice. N.Y. Educ. Law § 8410(2). "[M]ember[s] of the clergy or Christian Science practitioner[s]" may provide "pastoral counseling services," but only "within the context of [their] ministerial charge or obligation." N.Y. Educ. Law § 8410(4). Spiritual counseling by non-clergy is apparently not exempt from the mental health counseling law. An even broader exception allows "individuals, churches, schools, teachers, organizations, or not-for-profit businesses" to "provid[e] instruction, advice, support, encouragement, or information to individuals, families, and relational groups." N.Y. Educ. Law § 8410(5). The distinction between such permitted conversations and "mental health counseling" is likewise not explained.

C.       New York's Enforcement of Its Licensing Law

New York's State Board for Mental Health Practitioners has confirmed that, with the expiration of the Governor's order suspending licensing requirements for out-of-state therapists, Dr. Brokamp is no longer allowed to provide teletherapy to New York residents. (Am. Compl. ¶ 38.) As the Amended Complaint alleges, and the State's motions to dismiss confirm, New York's policy is to enforce its mental health counseling law specifically against people like Dr. Brokamp, who possess extensive qualifications and expertise, but not against comparatively untrained life-coaches, mentors, self-help gurus, non-clergy religious guides, Alcoholics Anonymous, Weight Watchers, or friends and family who provide advice that otherwise falls within the definition of "mental health counseling."

## ARGUMENT

A.       This court has jurisdiction.

The State has raised a number of threshold jurisdictional arguments, all of which are meritless. First, the State argues that all of the defendants have sovereign immunity, notwithstanding that this case seeks only prospective relief. Second, the State argues that the Attorney General is not a proper defendant because she supposedly has no connection with the enforcement of the act. Yet the State ignores the fact that the act explicitly commands the Attorney General to prosecute violations. Finally, the State argues that Dr. Brokamp has no standing because she has not applied for a license, but it has long been established that individuals challenging allegedly unconstitutional burdens are not required to submit to the burdens prior to filing their challenges.

1. **Under *Ex parte Young*, none of the defendants have immunity from prospective challenges to the constitutionality of state statutes.**

For over 100 years, it has been black letter law that federal courts have jurisdiction to hear prospective challenges to the constitutionality of state statutes when plaintiffs sue the public officials responsible for enforcing those statutes. *Ex parte Young*, 209 U.S. 123, 161 (1908).

Defendants' Eleventh Amendment argument cites only cases involving retrospective relief, which Dr. Brokamp does not seek. Then, without any citation, Defendants assert that *Ex parte Young* does not apply to "this action involving a challenge to a state statute." (James Br. 5; Ed. Br. 6.) Why the State thinks that *Ex parte Young* does not apply to challenges to state statutes is unclear, but there is no authority for that proposition. After all, *Ex parte Young* itself involved a challenge to the constitutionality of a state statute. *See* 209 U.S. at 127. Indeed, this is the typical way that state statutes are challenged. *Sup. Ct. of Va. v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 736 (1980) ("Prosecutors … are natural targets for § 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law.") Such cases reach the Supreme Court year in and year out, and there is never any question of Eleventh Amendment immunity. *See, e.g., June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2113 (2020) (holding unconstitutional a Louisiana abortion statute); *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1147 (2017) (entertaining a First Amendment challenge to New York statute, in a case where the public officials charged with enforcing the law were the defendants). The Eleventh Amendment simply has no application in this case.

**2.   The Attorney General is an appropriate defendant because she has the specific and mandatory statutory responsibility for enforcing the law being challenged**

Defendant Leticia James argues that she is not a proper defendant because the Attorney General's "general enforcement powers," "duty to execute the laws," and "duty to defend the constitutionality of statutes" do not give her a sufficient connection to the licensing regime that Dr. Brokamp is challenging. (James Br. 5.) Notably, however, the State does not dispute that the other co-defendants are proper parties, and the Attorney General's office is representing the other defendants in this litigation, so whether General James is an appropriate defendant is not particularly important. But as it turns out, she is a proper defendant because the New York licensing statute at issue explicitly mandates that James "shall prosecute [the unlicensed practice of mental health counseling] in the name of the state[.]" N.Y. Educ. Law § 6514(2). As the prosecutor specifically commanded to enforce the statute, James is the "natural target[] for § 1983 injunctive suits since [she is] the state officer[] who [is] threatening to enforce and who [is] enforcing the law." *Consumers Union*, 446 U.S. at 736. In fact, the Second Circuit has held that "[s]o long as there is such a connection [between the defendant and the enforcement of the act], it is not necessary that the officer's enforcement duties be noted in the act." *See In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372–73 (2d Cir. 2005). If an explicit statutory mandate is not required to satisfy the "some connection" standard of *Ex parte Young*, 209 U.S. at 157, it follows that the clear and specific mandate of N.Y. Educ. Law § 6514(2) is more than sufficient to make James a proper defendant.

In the face of binding Second Circuit authority, James argues, again without citation, that the explicit statutory enforcement mandate of N.Y. Educ. Law § 6514(2) is insufficient to make

her a proper defendant. (James Br. 5.) Yet in every single case she cites, the plaintiffs were

unable to point to *any* authority demonstrating that the Attorney General had any connection

with the challenged laws or practices, other than the general duty to execute the laws and defend

the constitutionality of statutes.[2] Indeed, the very parentheticals that James uses to describe these

cases makes clear that they are inapposite. The entire argument reads as though it were simply

cut and pasted from another case.

### 3. Dr. Brokamp has standing because New York's licensing law burdens her speech.

Defendants argue that Dr. Brokamp has no standing because she has not yet applied for a

New York license. (James Br. 7; Ed. Br. 6.) This is incorrect. It has long been established that

plaintiffs are not required to subject themselves to an allegedly unconstitutional law before they

can challenge it. Dr. Brokamp alleges that she wishes to engage in protected speech in New

York, but that if she does so, she risks criminal prosecution. (Am. Compl. ¶ 77.) Defendants do

not dispute that she risks prosecution if she continues to speak. That is sufficient to demonstrate

---

[2] *Mendez v. Heller*, 530 F.2d 457, 460 (2d Cir. 1976) ("The Attorney General has no connection with the enforcement of s 230(5)"); *HealthNow New York, Inc. v. New York*, 739 F. Supp. 2d 286, 294 (W.D.N.Y. 2010) (same); *Warden v. Pataki*, 35 F. Supp. 2d 354, 359 (S.D.N.Y.), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999) ("a state official's duty to execute the laws is not enough by itself to make that official a proper party in a suit challenging a state statute"); *Jones v. Schneiderman*, 974 F. Supp. 2d 322, 352 (S.D.N.Y. 2013) ("In fact, Plaintiffs have not suggested that the NYAG has any connection with the enforcement of the Ban."); *Ulrich v. Mane*, 383 F. Supp. 2d 405, 410 (E.D.N.Y. 2005) ("While the Attorney General is charged with defending the constitutionality of state law, this fact alone does not provide a basis for bringing an action against him."); *Chrysafis v. James*, No. 21-CV-998 (JS)(ARL), 2021 WL 1405884, at *16 (E.D.N.Y. Apr. 14, 2021) (dismissing because the Attorney General had no "particular duty to enforce" the statute being challenged); *Burke v. Verizon Commc'ns, Inc.*, No. 18CIV4496PGGGWG, 2020 WL 4741043, at *3 (S.D.N.Y. Aug. 17, 2020), *report and recommendation adopted*, No. 18CIV4496PGGGWG, 2020 WL 6538748 (S.D.N.Y. Nov. 6, 2020) (same); *Sabin v. Nelson*, No. 7:12-CV-1373 GLS/DEP, 2014 WL 2945770, at *2 (N.D.N.Y. June 30, 2014) (same).

standing. *See, e.g.*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007) ("[W]e do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced. The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction.") (collecting cases).

Even in the specific context of First Amendment challenges to state licensing regimes, federal courts never require plaintiffs to subject themselves to allegedly unconstitutional burdens simply to demonstrate standing. For instance, in *Edwards v. District of Columbia*, plaintiffs brought a successful First Amendment challenge to a law that required them obtain a license before they could provide tours of Washington, D.C., to paying customers. 755 F.3d 996, 1000 (D.C. Cir. 2014). Their claim was that the requirement to obtain a license was itself unconstitutional, not that they would be unconstitutionally denied a license if they sought one. Accordingly, the plaintiffs never applied for a license, and nevertheless they had standing. *See Edwards v. District of Columbia*, 765 F. Supp. 2d 3, 12 n.7 (D.D.C. 2011); *accord Edwards v. District of Columbia*, 943 F. Supp. 2d 109, 116 (D.D.C. 2013).

So too in *Pacific Coast Horseshoeing School, Inc. v. Kirchmeyer*, where the plaintiffs challenged a California law that required students to pass an "ability to benefit" test administered by the state before they could enroll in a private vocational school. 961 F.3d 1062, 1069 (9th Cir. 2020). The prospective student in that case did not take the test, nor did he allege that he would be unable to pass it. He argued, rather, that the test itself placed an impermissible First Amendment burden on him. The Ninth Circuit agreed that the test imposed a First Amendment burden, and it did not require the plaintiff to take the test in order to demonstrate standing. *Id.* at

1067. The court remanded, ordering the district court to determine in the first instance whether strict or intermediate scrutiny applied. *Id.* at 1074.

The cases cited by the Defendants involve an entirely different category of claims. Unlike Dr. Brokamp, the plaintiffs in those cases did not challenge the government's right to require a license. Instead, the plaintiffs brought challenges alleging that if they applied for a license or a benefit, they would be illegally denied the license or benefit. Courts in such cases typically hold that plaintiffs lack standing where either (1) it is unclear whether they would, in fact, be denied the benefit, or (2) where they fail to allege that they actually want the benefit.

For instance, the plaintiff in *United States v. Decastro*, 682 F.3d 160, 164 (2d Cir. 2012), brought a Second Amendment suit against New York, alleging that if he were to apply for a handgun license, it would be unconstitutionally denied. The court noted that a large percentage of New York handgun applicants do receive licenses, and accordingly, the plaintiff needed to either unsuccessfully apply for a license or sufficiently allege futility, in order to establish standing *Id.* Notably, the plaintiff did not challenge New York's power to require that handgun owners obtain licenses. Had he done so, he surely would have had standing (regardless of whether his claim had any merit). *See also Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1095 (2d Cir. 1997) (holding that prisoner-plaintiff lacked standing for religious accommodation claim where he did not follow prescribed procedures for seeking an accommodation and did not allege that trying to do so would have been futile).

Similarly, the plaintiffs in *Allen v. Wright* challenged the IRS status of private schools with racially discriminatory admissions policies. 468 U.S. 737 (1984). The Supreme Court held that the plaintiffs lacked standing because "they ha[d] not alleged at any stage of this litigation that their children ha[d] ever applied or would ever apply to any private school." *Id.* at 746;

*accord Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972). Again, the plaintiffs did not allege that the application process itself placed illegal burdens on them. They alleged that if they applied, their applications would be illegally denied.

Defendants' standing argument misunderstands the nature of Dr. Brokamp's claim. She does not argue that she is unable to obtain a New York license. She argues that obtaining a New York license is burdensome—it involves a significant expenditure of time and money (Am. Compl. ¶¶ 72–74)—and that those burdens are inconsistent with the First Amendment. Just like the plaintiffs in *Edwards* and *Pacific Horseshoeing*, she is not required to subject herself to an allegedly unconstitutional burden before she can challenge that burden.

**B.      Dr. Brokamp has stated plausible First Amendment claims**

Defendants argue that Dr. Brokamp has not stated a First Amendment claim, but their briefs contain almost no discussion of the applicable First Amendment law and no citation to relevant cases. They do not even identify the applicable legal test. Instead, they cite cases (mostly outside the First Amendment context) for the general proposition that courts owe deference to legislative judgments. They also rely on abrogated cases that endorsed the now-repudiated view that speech is entitled to less First Amendment protection when it is uttered by professionals.

Below, Dr. Brokamp will show that (1) so-called "professional speech" is entitled to the full protection of the First Amendment, (2) New York's licensing regime is content-based, and therefore subject to strict scrutiny, (3) Dr. Brokamp has sufficiently alleged that New York's law is unconstitutional, both facially, and as applied to her speech, and (4) New York cannot satisfy its burden under the First Amendment on a motion to dismiss.

1.   **Speech does not receive lesser (or no) protection simply because it is uttered by a "professional."**

The State argues that Dr. Brokamp is "not entitle[d] … to special First Amendment protection" simply because her treatment consists solely of speech. (James Br. 10; Ed Br. 10). But Dr. Brokamp is not seeking "special protection." Rather, it is the State who is arguing that Dr. Brokamp's speech is subject to special restrictions, simply because she speaks with her clients as a professional. Speech is entitled to First Amendment protection whether or not it is uttered by professionals.

To be sure, there was a time when "[s]ome Courts of Appeals … recognized 'professional speech' as a separate category of speech that is subject to different rules." *NIFLA v. Becerra*, 138 S. Ct. 2361, 2371 (2018). Unfortunately for State's position, however, the Supreme Court in *NIFLA* unambiguously rejected the professional speech doctrine. The Court in *NIFLA* explained that "this Court has not recognized 'professional speech' as a separate category of speech," and that "[s]peech is not unprotected merely because it is uttered by professionals." 138 S. Ct. at 2371–72. The Court identified and criticized some of the lower court cases applying the professional speech doctrine, *id.*, and the Court noted that its own cases had applied strict scrutiny to laws regulating the speech of lawyers, professional fundraisers, and organizations that provide specialized advice about international law, *id.* at 2374. The Court also specifically expressed concern that the professional speech doctrine would "give[ ] the States unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement." *Id.* at 2375. Under *NIFLA*, the State's attempts to treat professional licensing as somehow exempt from First Amendment scrutiny cannot be sustained, and the State's reliance on pre-*NIFLA* cases is misplaced.

Other courts have recognized *NIFLA*'s significance. "*NIFLA* makes clear that occupational-licensing provisions are entitled to no special exception from otherwise-applicable First Amendment protections." *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 931 (5th Cir. 2020). "The Supreme Court's decision in *NIFLA* also refused to recognize professional speech as a new speech category deserving less protection," and makes clear that the "idea that [laws] target 'professional speech' does not loosen the First Amendment's restraints." *Otto v. City of Boca Raton*, 981 F.3d 854, 867 (11th Cir. 2020). Following *NIFLA*, the "First Amendment deprives the states of 'unfettered power to reduce a group's First Amendment rights by simply imposing a licensing requirement.'" *Pac. Coast Horseshoeing Sch., Inc. v. Kirchmeyer*, 961 F.3d 1062, 1069 (9th Cir. 2020) (quoting 138 S. Ct. at 2375). These decisions recognize that *Otto* abrogated previous lower court decisions applying less rigorous scrutiny to restrictions on professional speech. *See, e.g.*, *Vizaline*, 949 F.3d at 934; *Pacific Horseshoeing*, 961 F.3d at 1069. To the extent that any cases cited by the State suggest otherwise, they likewise are no longer good law.

### 2. New York's licensing regime is a content-based restriction on speech, subject to strict scrutiny.

Because Dr. Brokamp's speech to her clients is speech, as the State acknowledges, (James Br. 10; Ed. Br. 10.), the State's licensing law must, at a minimum, survive intermediate scrutiny. *See Edwards*, 755 F.3d at 1001–02. But, beyond that, the Complaint also alleges that the District's licensing law is a content based regulation of speech, meaning that it must survive strict scrutiny. (*See* Am. Compl. ¶¶ 71–75.)

The Supreme Court addressed the standard to determine if a law is content based in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). The Court in *Reed* distinguished the question of whether a law is viewpoint based from the question of whether a law is content based; a law is

content based if it "singles out specific subject matter for differential treatment, even if it does not target viewpoints within that subject matter." *Id*. at 169. The Court also explained that a law can be content based in two different ways: a law is content based if it "cannot be justified without reference to the content of the regulated speech" or if it "is content based on its face." *Id*. at 164 (marks and citation omitted). And the Court explained that a law is "content based on its face" so long as it "applies to particular speech because of the topic discussed"—either because it "defin[es] regulated speech by particular subject matter" or because it "defin[es] regulated speech by its function or purpose." *Id*. at 163. "Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny." *Id*. at 163–64.

The upshot of *Reed* is that a law is content based whenever it is necessary to examine the content of speech in order to determine how the law applies: For instance, the sign code at issue in *Reed* was content based because it distinguished between "political," "ideological," and "directional" signs. *Id*. at 164. The sign code did not involve any viewpoint discrimination—it did not, for example, treat political signs from one party differently than signs from another—but it was nonetheless subject to strict scrutiny.

Applying *Reed*, the State's licensing law is content based because its application depends on the subject matter, function, and purpose of Dr. Brokamp's speech. Under the licensing law, Dr. Brokamp cannot speak to her clients if her speech is intended to "assess[]" and "ameliorat[e]" her clients' "problem[s] or disorder[s] or behavior, character, development, emotion, personality or relationships by the use of verbal … methods." N.Y. Educ. Law § 8402(1)(a). There can be no question that this is a content-based restriction because it depends on the content of Dr. Brokamp's speech. If she wants to talk about sports with her clients, the law does not apply. If she wants to talk about their emotional problems, the law does apply. The

restriction therefore simultaneously defines the type of speech that requires a license both in terms of its "subject matter" and its "function or purpose," and *Reed* explains that both types of distinctions are content based. 491 U.S. at 163–64. Either is sufficient to trigger strict scrutiny.

The Ninth Circuit's recent decision in *Pacific Horseshoeing* illustrates the point. In that case, the challenged restrictions on vocational education did not apply to courses that were "solely avocational or recreational." 961 F.3d at 1071. The Ninth Circuit found that distinction content based, explaining: "The fact that the Act distinguishes between, say, golf lessons because they are 'solely avocational or recreational,' and horseshoeing lessons because they are not, is significant—even if we assume that the state has no particular interest in encouraging speech related to golf lessons or suppressing speech related to horseshoeing." *Id.* The law in *Pacific Horseshoeing* was content based because the application of the law turned on the subject that was being taught. And the same is true here: Just as a school in *Pacific Horseshoeing* could teach golf lessons but not horseshoeing, Dr. Brokamp can talk to her clients about history or interior decorating but cannot provide advice that falls within the definition of mental health counseling. (*See* Am. Compl. ¶¶ 84–86.) That is a content-based regulation of speech.

The State suggests that there is no problem with the licensing statute because it "does not dictate that mental health counselors convey a particular message." (James Br. 10; Ed. Br. 10.) It is unclear whether the State intends to argue that viewpoint discrimination is necessary to state a First Amendment claim, or if it is merely necessary to trigger strict scrutiny, but either view is incorrect. The defendant in *Reed* had argued that its sign code was content neutral because it "did not adopt its regulation of speech [based on] disagree[ment] with the message conveyed," *Reed*, 576 U.S. at 165, but the Supreme Court rejected that argument and explained that content-based

15
**A-99**

laws are "subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id*.

###    3.   Dr. Brokamp has stated sufficient facial and as-applied First Amendment claims.

Under strict scrutiny, the state must prove that its licensing law is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. The State cannot make that showing here: Unable to meaningfully define the harm that it wishes to prevent, the State has crafted a regulatory provision that is sweeping in its breadth. And yet, perhaps because the State realizes it cannot possibly regulate so much speech, the State has also narrowed that sweeping definition with a set of statutory exceptions that allow many of the harms the State supposedly wants to prevent. The result is a statutory mandate that is practically incomprehensible and impermissibly vague. And, in the end, the resulting prohibition squarely restricts only the speech the State claims to want to encourage. The result is not even rational, much less sufficiently tailored to satisfy strict scrutiny.

The text of New York's licensing law is extraordinarily broad. It requires licensure of anyone who uses "verbal … methods" to "ameliorate … problem[s] … of behavior, character, development, emotion, personality or relationships … in private practice, group, or organized settings." N.Y. Educ. Law § 8402(1)(a). This language describes an incredible swath of all human communication. This is not narrow tailoring, as New York cannot possibly have an interest in regulating all such speech. Indeed, the Fifth Circuit sustained a facial First Amendment to a similar psychologists' licensing law. *See Serafine v. Branaman*, 810 F.3d 354, 369 (5th Cir. 2016) ("The ability to provide guidance about the common problems of life— marriage, children, alcohol, health—is a foundation of human interaction and society, whether

16

**A-100**

this advice be found in an almanac, at the feet of grandparents, or in a circle of friends. There is no doubt that such speech is protected by the First Amendment.") The State itself admits the breadth of its regime when it concedes that the regime could be applied to limit the speech of "life coaches, mentors, and self-help gurus." (Ed. Br. 13.)

The State argues that the statutory exemptions to the licensing law limit any overbreadth problem, but the exemptions are either extremely narrow or so vague as to be meaningless. Most of the exemptions apply to specific professions such as attorneys, clergy, or people working under the supervision of licensed counselors. *E.g.,* N.Y. Educ. Law § 8410(2)–(4). As the Court in *Serafine* noted, such narrow exceptions only serve to underscore the general overbreadth of the law. 810 F.3d at 369 ("the presence of those exemptions suggests that anyone not granted an exemption in Section 501.004 is affirmatively covered by the Act").

One exemption, however, seemingly swallows the entire licensing regime: The licensing law does not "[p]rohibit or limit individuals, churches, schools, teachers, organizations, or not-for-profit businesses, from providing instruction, advice, support, encouragement, or information to individuals, families, and relational groups." N.Y. Educ. Law § 8410(5). There is simply no way, on the face of this statute, to distinguish between "instruction, advice, support, encouragement, or information" and "the use of verbal … methods" to "the evaluat[e], assess[], ameliorat[e] … [a] problem … of behavior, character, development, emotion, personality or relationships." These two categories of speech would seem to be nearly coterminous sets; every kind of speech that fits within one definition also fits within the other. So New York's licensing law is not merely a statute that allows for "the possibility of 'close cases,'" as the State argues. (James Br. 13; Ed. Br. 15.) This is a statute that simply both prohibits and permits the exact same conduct, simply using different words.

This is not the kind of exemption that brings clarity to an otherwise vague statutory provision. Rather, it leaves speakers at the mercy of the government's enforcement discretion, and "[s]uch unfettered discretion is untenable." *Serafine*, 810 F.3d at 369; *United States v. Stevens*, 559 U.S. 460, 480 (2010) (holding that a court cannot "uphold an unconstitutional statute merely because the Government promised to use it responsibly").[3]

The State has little to say on the issue of vagueness. It points out that vagueness doctrine is primarily applied to criminal statutes, (James Br. 12; Ed. Br. 13), but the State ignores the fact that the licensing law *is* a criminal statute. Providing mental health counseling without a license is a felony in the State of New York. N.Y. Educ. Law § 6512(1). The State then simply states that the law is clear, without grappling with any of the language of the statute or its internal inconsistencies.

Perhaps what the state means is that the licensing law is clear to the people who enforce it, but that is precisely what vagueness doctrine is designed to prevent. "[A] law subjecting the

---

[3] And the vagueness problems do not stop there. The licensing law also requires distinct licenses for what appear to be extremely similar types of counseling. A general "mental health counseling" license allows one to speak to people about their relationships and their emotions, but if Dr. Brokamp wants to talk to people about "mental, emotional and behavioral disorders and ailments within the context of marital … systems," she is required to have a different license. (Am. Compl. ¶ 109); N.Y. Educ. Law § 8403(c). And a separate "psychoanalyst" license is required if she wants to talk to people about their unconscious minds. N.Y. Educ. Law § 8405(1)(a). Nothing in the statute provides any guidance regarding when a mental health counselor has strayed too close to the province of the licensed marital counselor or licensed psychoanalyst. The State argues that it is irrelevant that there may be vagueness in the boundaries between different types of counseling licenses because Dr. Brokamp has not challenged those specific sections of the statute. (James Br. at 13.) That is factually and legally incorrect. As a factual matter, Dr. Brokamp is suing for the right to talk to her New York clients about their problems without a license. (Am. Compl. ¶¶ 78–112.) To the extent that *any* provision of the licensing law is an obstacle to that right, it is at issue in this case. (Am. Compl. Prayer for Relief ¶ A) (specifically challenging §§ 8402–8405 of the statute). Yet even if her First Amendment claims did not directly challenge Sections 8403, 8404, and 8405 of the Education Law, those sections are still relevant to the vagueness challenge because it is unclear when those sections apply and when they do not.

exercise of First Amendment freedoms to the prior restraint of a license must contain narrow, objective, and definite standards to guide the licensing authority." *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 131 (1992) (marks and citation omitted). The State's approach to regulation—enacting a sweepingly broad statutory prohibition, coupled with an equally broad exemption, and then applying it based on licensing authorities' ill-defined gestalt feeling of what "counseling" really means—introduces impermissible discretion into the licensing and enforcement process. In fact, the State essentially admits that it what it is doing when it says that it does not apply the licensing law to "life coaches, mentors, and self-help gurus" unless they are "found to be practicing mental health counseling without a license." (James Br. 11; Ed. Br. 13.) Nothing in the text of the statute provides any basis on which a life coach (or, indeed, Dr. Brokamp) could identify the boundary between unregulated "advice" and regulated "counseling." Both the coach and the counselor talk to paying clients about their problems in an effort to improve their lives and well-being. The distinction is in the eye of the enforcer, but the First Amendment does not allow for such enforcement discretion.

The State's approach to regulation also means that, in addition to being vague, the prohibition is also significantly underinclusive. (James Br. 11; Ed. Br. 13.)[4] After all, if the State is concerned about some purported danger posed by unlicensed mental health counseling, that concern surely does not go away simply because the counseling is provided by "individuals,

---

[4] The State claims to be confused by Dr. Brokamp's allegation that the licensing law is both overbroad and underinclusive. (James Br. 10; Ed. Br. 13.) There is nothing illogical about a statute being both overbroad (in that it reaches a great deal of speech that the state has no interest in regulating) and underinclusive (in that it fails to reach speech that the state claims to have an interest in regulating). *See, e.g., Citizens United v. FEC*, 558 U.S. 310, 362 ("the statute is both underinclusive and overinclusive"); *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993) ("all four ordinances are overbroad or underinclusive in substantial respects").

churches, schools, teachers, organizations, or not-for-profit businesses, from providing

instruction, advice, support, encouragement, or information to individuals, families, and

relational groups." N.Y. Educ. Law § 8410(5). The State has not actually said what harm it

believes it is combatting with its licensing law, but it is difficult to imagine what harm would be

advanced by allowing speech by all these other "individuals, churches, schools, teachers,

organizations, or not-for-profit businesses" while also limiting Dr. Brokamp's ability to speak

over the internet. Indeed, if the State is worried about un-qualified counseling, the State has

paradoxically *exempted* individuals without qualifications from its licensing regime, leaving only

speakers like Dr. Brokamp subject to its restrictions.

The State does not really dispute any of the above, but it waves away this problem with a

quotation from *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 449 (2015): "[T]he First

Amendment imposes no freestanding 'underinclusiveness limitation.'" Shorn from its context,

this quotation suggests that underinclusiveness is irrelevant, but reading the opinion in full, the

Court says no such thing. It emphasizes that "[u]nderinclusiveness can … reveal that a law does

not actually advance a compelling interest," and that it "raises a red flag." *Id.* The Court went on

to offer several reasons that underinclusiveness was not fatal in that particular case: The law at

issue was aimed "squarely" on the speech that the state had the strongest interest in regulating,

and it contained no exceptions whatsoever to undermine its effectiveness. The situation here is

the reverse. If the State has an interest in preventing people from giving bad advice to New

Yorkers, its efforts would logically be focused first on the people with the fewest qualifications

to give such advice, not the most. Moreover, as noted above, New York's licensing law is riddled

with exceptions, which, according to *Williams-Yulee*, is another reason that the Court has found

some laws "impermissibly underinclusive." *Id*.

At the end of the day, the only thing that the State can say with any certainty about the application of its licensing regime is that the regime applies to bar qualified speakers like Dr. Brokamp from speaking with New Yorkers without a license. (Ed. Br. 14.) And yet that one undisputed application of the licensing regime is also the one thing the State cannot justify: The Complaint alleges that New York has "no interest, compelling or otherwise, in preventing [Dr. Brokamp] from speaking with clients over the internet," (Am. Compl. ¶ 89), and the State does not even attempt to argue otherwise in its brief. Dr. Brokamp states an as-applied First Amendment claim because the State has no reason to restrict her speech, and Dr. Brokamp states a facial First Amendment claim because the law restricts her speech while permitting the very speech the State claims to be worried about—resulting in a law that totally fails any narrow tailoring analysis.

### 4. Under either strict or intermediate scrutiny, the State cannot meet its evidentiary burden on a motion to dismiss.

As explained above, because New York's licensing law is a content-based restriction on Dr. Brokamp's speech, it is presumptively unconstitutional and can survive only if the State proves that it is "narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163. But even if the court were to assume otherwise, the licensing law would *still* need to pass intermediate scrutiny, meaning that "(1) it is within the constitutional power of the Government; (2) it furthers an important or substantial governmental interest; (3) the governmental interest is unrelated to the suppression of free expression; (4) the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest; and (5) the regulation leaves open ample alternative channels for communication." *Edwards*, 755 F.3d at 1002 (marks and citations omitted).

Even intermediate scrutiny "require[s] the government to present ***actual evidence*** supporting its assertion that a speech restriction does not burden substantially more speech than necessary; argument unsupported by the evidence will not suffice to carry the government's burden." *Reynolds v. Middleton*, 779 F.3d 222, 229 (4th Cir. 2015) (emphasis added); *accord N.Y. Youth Club v. Town of Smithtown*, 867 F. Supp. 2d 328, 336 (E.D.N.Y. 2012) ("Given the absence of … evidence, and the limited scope of review on a 12(b)(6) motion … the Court cannot pass on whether the Ordinance is substantially related to the Town's stated interest."). The government cannot carry an evidentiary burden on a motion to dismiss, and that should be the end of the matter. And notably, although the State cannot prove at this stage of litigation that its licensing statute satisfies either strict or intermediate scrutiny, the State has not even *asserted* that the statute can survive either. The State appears to be resting entirely on the discredited notion that the First Amendment does not apply to professional speech.

## Conclusion

The Defendants' motions to dismiss should be denied.

DATED: August 26, 2021

Respectfully Submitted,

 /s/ Jeffrey Redfern
Jeffrey Redfern (DC Bar No. 1018046)*
Robert McNamara (VA Bar No. 73208)*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
P. (703) 682-9320
F. (703) 682-9321
E. jredfern@ij.org; rmcnamara@ij.org

Robert Johnson (D.C. Bar No. 1013390)*
INSTITUTE FOR JUSTICE
16781 Chagrin Blvd. #256

Shaker Heights, OH 44120
P. (703) 682-9320
F. (703) 682-9321
E. rjohnson@ij.org

*Lead Counsel for Plaintiff*

*\*Admitted Pro Hac Vice*

Alan Pierce, NY Bar No. 102366
HANCOCK ESTABROOK, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY  13202
Office: (315) 565-4546
Cell: (315) 427-0299
Email: apierce@hancocklaw.com

*Local Counsel for Plaintiff*

23

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ELIZABETH BROKAMP,

                                        *Plaintiff*,

               -against-                                    1:21-CV-00389

LETITIA JAMES, in her official                              DNH/ATB
capacity as Attorney General of the
State of New York, *et al*.,

                                        *Defendants*.

_____

**MEMORANDUM OF LAW IN REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS**

                         LETITIA JAMES
                         Attorney General
                         State of New York
                         Attorney for Defendants
                         The Capitol
                         Albany, New York  12224

Mark G. Mitchell
Assistant Attorney General, of Counsel
Bar Roll No. 516818
Telephone:  (518) 776-2583
Fax:  (518) 915-7738 (Not for service of papers)          Date: September 17, 2021

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 1

    POINT I - PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR LACK OF
        SUBJECT MATTER JURISDICTION ................................................................. 1

    POINT II - PLAINTIFF LACKS STANDING ................................................................. 2

    POINT III - PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE
        TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ............... 4

        First Amendment ................................................................................................... 4

        Vagueness ............................................................................................................... 6

    POINT IV - PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT
        LEAVE TO AMEND ............................................................................................. 6

CONCLUSION ..................................................................................................................... 7

## PRELIMINARY STATEMENT

In the present action, Plaintiff Elizabeth Brokamp, a Virginia-licensed professional counselor, claims to have a First Amendment right to provide mental health counseling in New York without a New York license.  Defendants filed motions to dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.  Motions to Dismiss, ECF Nos. 29, 36.  Defendants now submit this brief reply to Plaintiff's response to the motions to dismiss.  Plaintiff's Memorandum of Law, ECF No. 39.  For the reasons set forth below, as well as more fully in Defendants' principal Memoranda of Law (ECF Nos. 29-2, 36-2), the Amended Complaint should be dismissed with prejudice.

## ARGUMENT

## <u>POINT I</u>

## PLAINTIFF'S CLAIMS MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

For the reasons set forth in Defendants' principal Memoranda of Law, Defendants demonstrated that the Amended Complaint should be dismissed based on lack of subject matter jurisdiction.  ECF No. 29-2 at pp. 6-8; 36-2 at pp. 7-8.

In addition, in her Memorandum of Law in response to Defendants' motions to dismiss, Plaintiff does not address Defendants' contention that Plaintiff's claims against the New York State Education Department Board of Regents and the New York State Board of Mental Health Practitioners, both state agencies, should be dismissed based on Eleventh Amendment immunity. *See* ECF No. 39 at p. 11; ECF No. 36-2 at pp. 7-8.  "At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."  *Holmes v. County of Montgomery*, 1:19-CV-0617, 2020 WL 1188026, at *4 (N.D.N.Y. Mar. 12, 2020) (internal quotation marks and alteration

1

omitted).  Accordingly, Plaintiff's claims against the New York State Education Department Board of Regents and the New York State Board of Mental Health Practitioners are abandoned and should be dismissed.  *See id*.

In sum, Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.

## POINT II

### PLAINTIFF LACKS STANDING

In their principal Memoranda of Law, Defendants demonstrated that Plaintiff lacks standing.  ECF No. 29-2 at p. 9; ECF No. 36-2 at pp. 8-9.  "As a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy."  *Jackson-Bey v. Hanslmaier*, 115 F. 3d 1091, 1096 (2d Cir. 1997).  Here, Plaintiff concedes that she has no intention of applying to become licensed in New York.  ECF No. 24 ¶ 35; ECF No. 39 at p. 13.  Further, Plaintiff states that "[s]he does not argue that she is unable to obtain a New York license."  ECF No. 39 at p. 16.  Accordingly, Plaintiff does not claim that the futility exception to standing applies.  *See Jackson-Bey*, 115 F. 3d at 1096 (observing that the "threshold requirement for standing may be excused only where a plaintiff makes a substantial showing that application for the benefit (or, in this case, registration) would have been futile.").  Plaintiff's mere preference to operate an unlicensed counseling business does not support standing in this case.  Thus, Plaintiff's claims must be dismissed for lack of standing.  *See United States v. Decastro*, 682 F. 3d 160, 164 (2d Cir. 2012) (holding that plaintiff who failed to apply for a New York license lacked standing to challenge the state's licensing laws), *cert. denied*, 568 U.S. 1092 (2013); *see also Libertarian Party of Erie Cty. v. Cuomo*, 300 F. Supp. 3d 424, 433 (W.D.N.Y. 2018), *aff'd in part, appeal dismissed in part*, 970 F. 3d 106 (2d Cir. 2020).

2

Plaintiff claims that she should be excused from the general requirement of standing because she "challenge[s] the government's right to require a license." ECF No. 39 at p. 15. However, Plaintiff concedes that states are permitted to impose licensing requirements on mental health counselors. In the Amended Complaint, Plaintiff boasts of her credentials as a licensed professional counselor in Virginia who is subject to oversight by the Virginia Board of Counseling. ECF No. 24 ¶¶ 1, 14, 17, 18, 62. Plaintiff demands that the Court set aside New York's established regulatory authority and simply deem Plaintiff qualified to practice mental health counseling in New York on the basis of her Virginia license. In her Memorandum of Law in response to Defendants' motions to dismiss, Plaintiff does not even attempt to defend her nonsensical view that Virginia is permitted to impose licensing requirements on mental health counselors, but New York is not.

In any event, a state's "broad power to establish and enforce standards of conduct within its borders relative to the health of everyone there … extends naturally to the regulation of all professions concerned with health …", including mental health counselors. *Barsky v. Board of Regents of Univ.*, 347 U.S. 442, 449 (1954); *see also National Ass'n for Advancement of Psychoanalysis v. California Bd. of Psychology*, 228 F. 3d 1043, 1053-1056 (9th Cir. 2000) (rejecting First Amendment challenge to California's mental health licensing system), *cert. denied*, 532 U.S. 972 (2001). In enacting N.Y. Education Law Article 163, the New York Legislature found that the "practices of mental health counseling, marriage and family therapy, creative arts therapy, and psychoanalysis within the state of New York affects the public safety and welfare of its citizens" and that "it is in the public interest to regulate and control these practices in order to protect the public from unprofessional, improper, unauthorized and unqualified practice of counseling and psychotherapy." L. 2002, Ch. 676, § 7 (cited in *Matter of New York State*

3

*Psychiatric Ass'n, Inc. v. Mills*, 29 A.D.3d 1058, 1060 (3d Dep't 2006), *lv denied*, 7 N.Y.3d 708

(2006)).  Accordingly, Plaintiff's claims should be dismissed with prejudice.

## POINT III

**PLAINTIFF'S CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

### First Amendment

Plaintiff apparently claims that the United States Supreme Court's decision in *National*

*Institute of Family and Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018), took away New York's

authority to impose licensing requirements on mental health counselors.  Plaintiff is mistaken.

That case concerned a California law which required clinics that primarily serve pregnant women

to provide a particular notice to clients about state-sponsored services, including abortion.  *See id*.

at 2369, 2371.  The Supreme Court determined that the notice was a content-based regulation that

compelled individuals to "speak a particular message" by reading a government-drafted script

about services, including abortions.  *Id*. at 2371.  The Supreme Court further stated that "this Court

has not recognized 'professional speech' as a separate category of speech" that is subject to

different rules.  *Id*.

However, as should be clear from reviewing Defendants' principal Memoranda of Law,

Defendants do not rely on a special theory of "professional speech" in seeking dismissal of

Plaintiff's claims.  Further, unlike the notice in *National Institute of Family and Life Advocates*,

N.Y. Education Law § 8402 does not dictate that mental health counselors convey a particular

message.  Rather, N.Y. Education Law § 8402 defines the practice of mental health counseling

and sets forth requirements for a professional license.  In *National Institute of Family and Life*

*Advocates*, the Supreme Court observed that "States may regulate professional conduct, even

though that conduct incidentally involves speech."  *Id*. at 2372.  Nothing in *National Institute of*

4

**A-113**

*Family and Life Advocates* casts doubt on the longstanding principle that "'States have a compelling interest in the practice of professions within their boundaries, and … as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.'" *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975)).   The Supreme Court has routinely upheld regulations of professional conduct that incidentally burden speech, holding that "the First Amendment does not prevent restrictions directed at commerce or conduct from imposing incidental burdens on speech," *Sorrell v. IMS Health Inc.,* 564 U.S. 552, 567 (2011); including when such restrictions are applied to professionals.  *See Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460 (1978). Indeed, all 50 states impose licensing requirements on professional counselors.  *See* ECF No. 36-2 at p. 12.

The state's exercise of its legitimate interest to protect the public by establishing standards for professional licensure, if it is viewed as a restriction on speech, is nonetheless a content-neutral restriction on speech.  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (internal citation, quotation marks, and alteration omitted).  New York State's licensing requirements for mental health counselors do not restrict speech based upon the content of such speech, they merely protect the public by establishing standards for who is qualified to practice as a mental health counselor in the state.  A regulation that targets only potentially harmful secondary effects of speech, rather than the contents of the speech itself, is deemed content-neutral.  *See,*

*e.g., City of Erie v. Pap's A.M.*, 529 U.S. 277, 291 (2000).  New York State's licensing standards are focused on the potential harm of unlicensed practice as a mental health counselor, not the particular content of speech, therefore any incidental impact on speech survives First Amendment scrutiny.

In sum, Plaintiff's First Amendment claims should be dismissed for failure to state a claim.

### **Vagueness**

For the reasons set forth in Defendants' principal Memoranda of Law, Defendants demonstrated that Plaintiff's vagueness claims should be dismissed for failure to state a claim. ECF No. 29-2 at pp. 14-16; ECF No. 36-2 at pp. 15-17.  Indeed, Plaintiff concedes that her practice fits the definition of mental health counseling under Education Law § 8402.  ECF No. 24 ¶ 33. Plaintiff's vagueness claims are nothing more than a pretext to further her business objective of operating as an unlicensed mental health counselor in New York.

### **POINT IV**

### **PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND**

In their principal Memoranda of Law, Defendants demonstrated that the Amended Complaint suffers from fatal substantive defects that cannot be cured by further repleading, and thus Plaintiff's claims should be dismissed with prejudice.  ECF No. 29-2 at p. 16; ECF No. 36-2 at pp. 17-18.  Plaintiff did not respond to this contention.  Accordingly, it is undisputed that in the event Defendants' motions to dismiss are granted, dismissal with prejudice is appropriate.  *See Holmes v. County of Montgomery*, 1:19-CV-0617, 2020 WL 1188026, at *4 (N.D.N.Y. Mar. 12, 2020).

**CONCLUSION**

For the reasons set forth above, as well as in Defendants' principal Memoranda of Law,

the Court should grant Defendants' motions and dismiss the Amended Complaint with prejudice.


Dated:  Albany, New York
       September 17, 2021

                           LETITIA JAMES
                           Attorney General
                           State of New York
                           Attorney for Defendants
                           The Capitol
                           Albany, New York  12224

                           By: *s/ Mark G. Mitchell*
                           Mark G. Mitchell
                           Assistant Attorney General, of Counsel
                           Bar Roll No. 516818
                           Telephone:  (518) 776-2583
                           Fax:  (518) 915-7738 (Not for service of papers)
                           Email: mark.mitchell@ag.ny.gov

7

**A-116**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
ELIZABETH BROKAMP,

                    *Plaintiff,*

v.                                                    No. 1:21-cv-00389-DNH-ATB

LETITIA JAMES; BETTY ROSA;
NEW YORK STATE EDUCATION
DEPARTMENT BOARD OF REGENTS;
NEW YORK STATE BOARD OF
MENTAL HEALTH PRACTITIONERS;
and THOMAS BIGLIN, HELENA BOERSMA,
SARGAM JAIN, RENE JONES, SUSAN L.
BOXER KAPPEL, SARA LIN FRIEDMAN
MCMULLIAN, RODNEY MEANS, TIMOTHY
MOONEY, ANGELA MUSOLINO,
MICHELE LANDERS MEYER,
NATALIE Z. RICCIO, HOLLY VOLLINK-LENT,
JILL R. WELDUM, SUSAN WHEELER WEEKS,

                    *Defendants.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                          OF COUNSEL:

INSTITUTE FOR JUSTICE                 JEFFREY REDFERN, ESQ.
*Attorneys for Plaintiff*             ROBERT JOHNSON, ESQ.
901 N. Glebe Road, Suite 900          ROBERT McNAMARA, ESQ.
Arlington, VA 22203                   ALAN J. PIERCE, ESQ.

HON. LETITIA JAMES                    MARK G. MITCHELL, ESQ.
Attorney General for the State of New York   Ass't Attorney General
*Attorneys for Defendants*
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

**MEMORANDUM-DECISION and ORDER**

## I. <u>INTRODUCTION</u>

Plaintiff Elizabeth Brokamp ("Brokamp" or "plaintiff") brings this action against defendants Letitia James, in her official capacity as Attorney General of the State of New York (the "Attorney General"), Betty Rosa, in her official capacity as the New York State Commissioner of Education (the "Education Commissioner"), the New York State Education Department Board of Regents (the "Board of Regents"), the New York State Board of Mental Health Practitioners (the "Board of Mental Health Practitioners"), and the following individuals sued in their official capacity as members of the Board of Mental Health Practitioners: Thomas Biglin, Helena Boersma, Sargam Jain, Rene Jones, Susan L. Boxer Kappel, Sara Lin Friedman McMullian, Rodney Means, Timothy Mooney, Angela Musolino, Michele Landers Meyer, Natalie Z. Riccio, Holly Vollinik-Lent, Jill R. Weldum, and Susan Wheeler Weeks (the "Mental Health Board defendants" and, together with the Attorney General, the Education Commissioner, the Board of Regents, and the Board of Mental Health Practitioners, "defendants").

Plaintiff, a Virginia-licensed professional counselor, seeks a declaratory judgment providing that N.Y. Educ. Law sections 8402-8405 violate the First and Fourteenth Amendments to the United States Constitution.  Plaintiff also seeks a permanent injunction prohibiting defendants and their agents

2

**A-118**

from applying New York's licensing requirements for mental health counselors to prevent plaintiff from providing teletherapy services to New York residents.  Defendants have moved to dismiss the complaint in its entirety and against all defendants under Federal Rule of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6).  The motion having been fully briefed, the Court will now consider it on the basis of the parties' submissions without oral argument.

## II. <u>BACKGROUND</u>

### A. <u>Brokamp and her Counseling Services</u>

Brokamp is a Virginia-licensed professional counselor with over twenty years' experience.  Dkt. 24 ("Am. Compl.") ¶ 1.  Professional counselors like plaintiff "talk to their clients about their feelings, their relationships, and their lives."  *Id*. ¶ 1.  Her services consist entirely of conversations with her clients; plaintiff does not prescribe any medication or conduct medical procedures.  *Id*. ¶¶ 28-29.

Brokamp provides counseling out of her home in Virginia, but she has moved all her counseling online due to the COVID-19 pandemic.  Am. Compl. ¶ 8.  While her move online was initially driven by the pandemic, plaintiff has found that this arrangement is beneficial for clients because it allows them to seek out help without making a trip to her office.  *Id*. ¶ 25.

3

Consequently, plaintiff intends to continue providing online teletherapy for the indefinite future, including after the pandemic is over. *Id.* ¶ 23.

During the pandemic, one of Brokamp's clients relocated to New York. Am Compl. ¶ 36. As explained below, New York temporarily suspended its requirement that out-of-state counselors obtain New York counseling licenses before providing teletherapy to New York residents, so plaintiff was able to continue counseling her client for a time. *Id.*

Another of Brokamp's former clients who lives in New York also contacted her seeking to resume therapy. Am. Compl. ¶ 39. Concerned that she may have to terminate therapy with this client when New York's licensing exemption expired, plaintiff felt ethically obligated to turn this individual down. *Id.*

## B. New York's Licensing Requirement and Enforcement

N.Y. Educ. Law § 6512(1) makes it a felony to practice certain professions without a license issued by the New York State Education Department (the "Education Department"). One such profession this statute covers is "mental health counseling."[1]

_____

[1] N.Y. Educ. Law § 8402(1) defines "mental health counseling" as: (a) the evaluation, assessment, amelioration, treatment, modification, or adjustment to a disability, problem, or disorder of behavior, character, development, emotion, personality or relationships by the use of verbal or behavioral methods with individuals, couples, families or groups in private practice, group, or organized settings; and (b) the use of assessment instruments and mental health counseling and psychotherapy to identify, evaluate and treat dysfunctions and disorders for purposes of providing appropriate mental health counseling services.

To obtain a mental health counseling license, one must satisfy several requirements, which include passing an exam, completing an internship and supervised experience, obtaining a master's degree or higher, and paying a fee.  N.Y. Educ. Law § 8402(3).  In addition, New York's licensing laws contain various exemptions, which allow certain professions to provide services falling within the definition of "mental health counseling" without obtaining a mental health counselor license.  *See* N.Y. Educ. Law § 8410.[2]

Early in the COVID-19 pandemic, New York issued an executive order temporarily suspending its requirement that out-of-state counselors obtain New York licenses before providing teletherapy to New York residents, so Brokamp was able to continue counseling her New York clients.  *See* Am. Compl. ¶ 36 (citing N.Y. Exec. Ord. 202.15).  On March 9, 2020, the Board of Mental Health Practitioners confirmed to plaintiff that, after N.Y. Exec. Ord. 202.15 expired, she would no longer be able to provide teletherapy to New York residents.  *Id.* ¶ 38.  On June 25, 2021, a subsequent executive order, N.Y. Exec. Ord. 210, confirmed that N.Y. Exec. Ord. 202.15 expired.

---

[2] For instance, "attorneys, rape crisis counselors, certified alcoholism counselors and certified substance abuse counselors" may "provid[e] mental health services within their respective established authorities."  N.Y. Educ. Law § 8410(2).  Similarly, "member[s] of the clergy or Christian Science practitioner[s]," may provide "pastoral counseling services" if such services are "within the context of his or her ministerial charge or obligation."  *Id.* § 8410(4).

### III. LEGAL STANDARD

#### 1. Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court … may refer to evidence outside the pleadings." *Id.* at 113. Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." *Hartwick v. Annucci*, 2020 WL 6781562, at *4 (N.D.N.Y. Nov. 18, 2020).

#### 2. Failure to State a Claim

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he complaint must contain sufficient factual matter that it presents a claim to relief that is plausible on its face." *Hartwick*, 2020 WL 6781562, at *4 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

6

In assessing the plausibility of the plaintiff's complaint, "the complaint is to be construed liberally, and all reasonable inferences must be drawn in the plaintiff's favor." *Ginsburg*, 839 F. Supp. 2d at 540 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  A plaintiff may support her complaint with "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

## IV. <u>DISCUSSION</u>

In her Amended Complaint, Brokamp advances three causes of action: (i) an as-applied First Amendment challenge; (ii) a facial First Amendment challenge; and (iii) an as-applied First & Fourteenth Amendment vagueness challenge.[3]

In response, defendants raise the following objections: (1) plaintiff lacks standing; (2) plaintiff's claims must be dismissed for lack of subject matter

---

[3] Plaintiff does not specify whether her vagueness challenge is as-applied or facial, but "[t]he label is not what matters." *Libertarian Party of Erie Cty. v. Cuomo*, 300 F. Supp. 3d 424, 438 (W.D.N.Y. 2018), *aff'd in part, appeal dismissed in part*, 970 F.3d 106 (2d Cir. 2020).  A claim is facial if it "challenges application of the law more broadly," but a "claim is as-applied if it is limited to a plaintiff's particular case." *Id.*  While plaintiff's prayer for relief seeks, in part, a declaration that N.Y. Educ. Law §§ 8402-8405 is unconstitutional, in substance plaintiff's vagueness claim and proposed remedies are tied to enforcement of New York's licensing regime as to her and to her specific injuries, not those more broadly experienced by others.  The Court therefore considers Count III an as-applied constitutional challenge.

jurisdiction because defendants have sovereign immunity; (3) the Attorney General is not a proper defendant in this action; and (4) plaintiff's claims must be dismissed for failure to state a claim upon which relief can be granted.

### A. Standing[4]

Defendants argue that Brokamp lacks standing over each of her claims. As to her as-applied claims, the Court agrees with defendants.

Standing limits the jurisdiction of federal courts to decide only actual "Cases" or "Controversies." *Smith v. Hochul*, 2021 WL 4972640, at *3 (N.D.N.Y. Oct. 26, 2021). To establish standing, a plaintiff must show: (1) an injury-in-fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury "will be redressed by a favorable decision." *Knife Rts., Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015). If any of these three elements is missing, a federal court lacks jurisdiction to entertain the claim. *Libertarian Party of Erie County v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020).

---

[4] While defendants make their standing argument under Fed. R. Civ. P. 12(b)(6), "standing is at heart 'a jurisdictional prerequisite to a federal court's deliberations,' … and thus it is more appropriately analyzed under Rule 12(b)(1)." *See Disability Rights N.Y. v. N.Y.*, 2019 WL 2497907, at *4 n.2 (E.D.N.Y. Jun. 14, 2019) (citing *Thompson v. Cty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994)); *see also All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1)").

### 1. Plaintiff lacks standing to bring her as-applied First Amendment and Vagueness claims.

(i)      <u>Plaintiff has not submitted to the challenged licensure requirement.</u>

"To establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997).  However, a plaintiff may be excused from the threshold standing requirement that she submit to the challenged policy if she "makes a substantial showing that application for the benefit … would have been futile." *Id.*

Thus, when a plaintiff wishes to mount an as-applied First Amendment challenge to a licensing scheme in New York, she must either: (1) apply for a license under that scheme; or (2) make a "substantial showing" that submitting a licensing application "would have been futile." *See Prayze FM v. F.C.C.*, 214 F.3d 245, 251 (2d Cir. 2000) (citing *Jackson-Bey*, 115 F.3d at 1096).

Brokamp does not allege that she has applied for a license, nor does she allege that applying for a license would be futile.  Indeed, plaintiff concedes that she has no intention of applying to become a licensed mental health counselor in New York.  Am. Compl. ¶ 35.  Because plaintiff's alleged injuries result from her own decision to not apply for a license in New York, and she does not allege that obtaining a license would have been futile, she has failed

to satisfy a "threshold requirement for standing" on her as-applied claims. *See Jackson-Bey*, 115 F.3d at 1096; *Prayze FM*, 214 F.3d at 251-52.

(ii)    <u>Plaintiff has not alleged a credible threat of prosecution.</u>

Brokamp also claims that because she faces the threat of prosecution if she engages in unlicensed counseling services, she is not required to subject herself to the licensing requirement before she can challenge it.

Where a plaintiff "asserts injury based on the threat of prosecution, [she] need not expose [herself] to liability before bringing suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *Adam v. Barr*, 792 F. App'x 20, 21 (2d Cir. 2019) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007)) (internal quotations omitted). Such preenforcement review is "available where the 'circumstances … render the threatened enforcement sufficiently imminent.'" *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

"To sufficiently allege standing on [her] preenforcement claim, Plaintiff must … allege both a concrete intention to violate the law and the credible threat of prosecution if [she] were to do so." *Smith*, 2021 WL 4972640, at *8 (citing *Adam v. Barr*, 2019 WL 1426991, at *3 (S.D.N.Y. Mar. 29, 2019)); *see also Adam*, 792 F. App'x at 22 ("A sufficiently imminent injury can be established by plausible allegations that a plaintiff intends to engage in conduct proscribed by a statute, and 'there exists a credible threat of

10

prosecution thereunder'"). "A credible threat is not established by 'imaginary or speculative' fears of prosecution." *Adam*, 792 F. App'x at 22. "Although courts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund, the mere existence of a law prohibiting intended conduct does not automatically confer Article III standing." *Id.* (cleaned up).

Brokamp fails to allege either a concrete intention to violate the law or a credible threat of prosecution. If anything, plaintiff seems to concede that she intends to *follow* the law, not violate it. *See, e.g.,* Am. Compl. ¶¶ 39, 68.

Even assuming *arguendo* that Brokamp had alleged a concrete intention to violate the law, she also fails to allege a credible threat of prosecution. Although plaintiff notes that the Attorney General has the power to enforce New York's professional licensing regime through prosecution, Am. Compl. ¶ 9, and that she faces a "threat of felony prosecution," *id.* ¶ 77, she has not alleged facts which particularize such enforcement as to her. Any alleged injury is, at best, "conjectural or hypothetical." *See Adam*, 792 F. App'x at 21, 23 (holding that, where plaintiff would simply be at risk of prosecution like any other person who might violate the law at issue, enforcement was not particularized as to him); *compare Knife Rts.*, 802 F.3d at 385–87 (holding that fear of prosecution was not conjectural or hypothetical "given that defendant [prosecutor] recently identified [plaintiff]

11

as a [state criminal law] violator and pursued enforcement action against it").[5]

In sum, alleging that she will be prosecuted for providing counseling services without a license because doing so is against N.Y. Educ. Law ¶ 6512(1), without more, fails to demonstrate a credible threat of prosecution.  Any alleged injury based on threat of enforcement against plaintiff for counseling without a license is insufficiently imminent to confer standing.  Accordingly, plaintiff lacks standing over her as-applied claims, and Counts I and III of her Amended Complaint will be dismissed.

### 2.  Plaintiff has standing to bring her facial First Amendment claim.

"A speaker subject to licensure has standing to make a facial [First Amendment] challenge without the necessity of first applying for, and being denied, a license when the [licensing] scheme allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity."  *Prayze FM*, 214 F.3d at 252 (citing *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755-56 (1988)) (cleaned up).  Such a speaker can also bring a facial challenge to a regulation that "purport[s] to

---

[5] Moreover, plaintiff has not made any allegations concerning the past or present enforcement of N.Y. Educ. Law ¶ 6512(1) from which a credible threat of prosecution against her could be inferred. *See Susan B. Anthony List*, 573 U.S. at 164 (considering history of past enforcement of a statute against the plaintiff, for the same conduct, as being good evidence that "the threat of enforcement is not 'chimerical'")

regulate the time, place, and manner of expressive or communicative conduct" on the ground that it is not sufficiently narrowly tailored. *Id*. (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)).

Brokamp alleges that "New York's mental health counseling licensing law is substantially overbroad, as it sweeps in significant amounts of speech that New York has no conceivable interest in regulating." Am. Compl. ¶ 94. This is akin to alleging that the statute is not sufficiently narrowly tailored, and is sufficient to give plaintiff standing over her facial First Amendment challenge. *See Prayze FM*, 214 F.3d at 252 (finding plaintiff had standing to raise facial challenge to licensing scheme where its "narrow tailoring challenge to the licensing scheme … [was] analogous to … a challenge to a time, place, or manner regulation").

## B. **Sovereign Immunity**

Defendants argue that Brokamp's claims must be dismissed for lack of subject matter jurisdiction because they have sovereign immunity. With respect to the Board of Regents and Board of Mental Health Practitioners, the Court agrees.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign

13

**A-129**

State." *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (citing U.S. Const. amend. XI).  The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity.  *See Brown v. New York*, 975 F. Supp. 2d 209, 221 (N.D.N.Y. 2013) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 92-100 (1984)).  Although the plaintiff generally bears the burden of proving subject matter jurisdiction, the entity claiming Eleventh Amendment immunity bears the burden of proving such immunity.  *Id.* at 221.

New York has not waived its sovereign immunity for 42 U.S.C. § 1983 claims.  *See Jones v. N.Y. Div. of Military & Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999).  Moreover, it is well-settled that states and their officials acting in their official capacities are not "persons" under § 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Similarly, 28 U.S.C. § 1343, has no effect on sovereign immunity, and the bare fact that a case implicates a federal question under 28 U.S.C. § 1331 does not override state sovereign immunity.  *See Sierotowicz v. State of New York Div. of Hous. & Cmty. Renewal*, 2005 WL 1397950, at *1 (E.D.N.Y. June 14, 2005).

14

## 1. Claims against the Board of Regents and Board of Mental Health Practitioners

Regardless of the type of relief Brokamp seeks, the Eleventh Amendment bars this Court from assuming jurisdiction over her claims asserted against the Board of Regents and Board of Mental Health Practitioners, which are New York state agencies.  New York has neither waived its sovereign immunity for § 1983 claims, *see Jones*, 166 F.3d at 49, nor has Congress overridden Eleventh Amendment immunity, *see Will*, 491 U.S. at 71.  The other statutes plaintiff references in her Amended Complaint likewise fail to abrogate New York's sovereign immunity.

Accordingly, Brokamp's claims against the Board of Regents and Board of Mental Health Practitioners will be dismissed.  *See Roberts v. New York*, 911 F. Supp. 2d 149, 159-60 (N.D.N.Y. 2012) (dismissing claims against state of New York and various state agencies for lack of subject matter jurisdiction based upon Eleventh Amendment); *see also Brown*, 975 F. Supp. 2d at 221 (same).

## 2. Claims against the Attorney General, the Education Commissioner, and the Mental Health Board Defendants in their official capacities

Brokamp also asserts claims against the Attorney General, the Education Commissioner, and the Mental Health Board defendants in their official capacities.  Actions for damages against state officials in their official

capacities are essentially actions against the state itself, and the Eleventh Amendment will bar these actions unless: (1) Congress has abrogated immunity; (2) the state has consented to suit; or (3) the *Ex parte Young* doctrine applies. *See Will*, 491 U.S. at 71. As noted, New York has not consented to suit and Congress has not abrogated Eleventh Amendment immunity. However, defendants' motions to dismiss present issues involving the *Ex parte Young* doctrine.

*Ex parte Young* established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. *See* 209 U.S. 123, 160 (1908). The *Ex parte Young* doctrine provides "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment." *Ford v. Reynolds*, 316 F.3d 351, 354-55 (2d Cir. 2003). Under the doctrine, a plaintiff may bring a claim against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when she: (1) alleges an

ongoing violation of federal law; and (2) seeks relief properly characterized as prospective.[6]  *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007).

First, the Court must consider whether Brokamp alleges an ongoing violation of federal law.  "The inquiry for determining whether an 'ongoing violation' exists is, 'does the enforcement of the law amount to a continuous violation of [plaintiff's] constitutional rights or a single act that continues to have negative consequences for [plaintiff].'"  *Brown*, 975 F. Supp. 2d at 223 (citing *N.J. Educ. Ass'n v. N.J.*, 2012 WL 715284, at *4 (D.N.J. Mar. 5, 2012)). If the former is true, plaintiff will satisfy the first prong of *Ex parte Young*, *see id*; if the latter is true, the Eleventh Amendment will bar plaintiff's claim, *see N.J. Educ. Ass'n*, 2012 WL 715284, at *4.

Brokamp alleges that the Attorney General, Education Commissioner, and Board of Mental Health Practitioners (of which the Mental Health Board defendants are members) are statutorily responsible for either enforcing or administering New York's licensing requirements, *see* Am. Compl. ¶¶ 9, 10, 12, 13, and that these requirements are unconstitutional, *see generally id*. ¶¶ 78-112.  These allegations are sufficient to satisfy the first prong of *Ex*

---

[6] While retrospective relief is "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials," prospective relief "includes injunctive relief that bars a state actor from engaging in certain unconstitutional acts or abates ongoing constitutional violations as well as the payment of state funds 'as a necessary consequence of compliance in the future with a substantive federal-question determination.'"  *Brown*, 975 F. Supp. 2d at 222-23 (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)).

*parte Young.  See Brown*, 975 F. Supp. 2d at 223 ("[a]n allegation that state officials are enforcing a law in contravention of controlling federal law is sufficient to allege an ongoing violation for the purposes of *Ex parte Young*") (citing *Chester Bross Const. Co. v. Schneider*, 886 F. Supp. 2d 896, 905 (C.D. Ill. 2012)).

Second, the Court must determine whether Brokamp seeks prospective relief.  As defendants acknowledge, *Ex parte Young* allows federal courts to entertain suits against state officials in their official capacity where a plaintiff seeks injunctive or declaratory relief.  *See* 209 U.S. at 161.  While declaratory judgments form part of the injunctive relief that *Ex parte Young* allows for, such relief will not satisfy the second prong of the *Ex parte Young* analysis when it "would serve to declare only past actions in violation of federal law." *Brown*, 975 F. Supp. 2d at 225 (citing *Tigrett v. Cooper*, 855 F. Supp. 2d 733, 744 (W.D. Tenn. 2012)).

In this case, Brokamp seeks a permanent injunction prohibiting defendants from applying New York's licensing requirements and an order declaring New York's licensing law for mental health counselors unconstitutional.  These requests are prospective and satisfy *Ex parte Young's* second prong.  *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 636 (2002) ("[plaintiff's] prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling

18

federal law—clearly satisfies our 'straightforward inquiry' [for an *Ex parte Young* analysis]"); *see also Brown*, 975 F. Supp. 2d at 226 (holding that plaintiffs' request for an order declaring statute unconstitutional sought prospective relief).

Accordingly, jurisdiction remains over Brokamp's facial First Amendment claim against the Attorney General, the Education Commissioner, and the Mental Health Board defendants in their official capacities.[7]

## C. **Failure to State a Claim**

As noted *supra*, Brokamp lacks standing to bring her as-applied First Amendment and First and Fourteenth Amendment vagueness challenges. This leaves the Court to consider whether plaintiff's facial First Amendment challenge states a claim upon which relief can be granted against the remaining defendants.

Brokamp alleges that "New York's mental health counseling licensing law is substantially overbroad, as it sweeps in significant amounts of speech that New York has no conceivable interest in regulating." Am. Compl. ¶ 94. In

---

[7] The Attorney General also asserts that she is not a proper defendant in this action because she has no enforcement powers under the statutes at issue. However, as plaintiff correctly points out, the statute at issue in this case mandates that the "attorney general shall prosecute such alleged [violations of N.Y. Educ. Law §§ 6512-6513] in the name of the state." N.Y. Educ. Law § 6514(2). N.Y. Educ. Law § 6512(1) makes it a felony to practice mental health counseling without a license issued by the Department of Education. *Id.* § 6512(1). Thus, the Attorney General has a connection to the enforcement of the licensing laws at issue, not simply a general duty to execute them, and is a proper defendant. *See In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372-73 (2d Cir. 2005) ("Under *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law").

other words, plaintiff's facial First Amendment challenge is an overbreadth claim, which presents a steep hurdle: "[i]nvalidation for overbreadth is a 'strong medicine' that is not to be 'casually employed.'" *United States v. Williams*, 553 U.S. 285, 293 (2008).[8]

"In order to prevail on an overbreadth challenge, 'the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.'" *Farrell v. Burke*, 449 F.3d 470, 499 (2d Cir. 2006) (citing *Broadrick*, 413 U.S. at 615). "An overbreadth challenger 'must demonstrate from the text of [the law] and from actual fact that a substantial number of instances exist in which the [l]aw cannot be applied constitutionally.'" *Sibley v. Watches*, 501 F. Supp. 3d 210, 223 (W.D.N.Y. 2020) (citing *United States v. Thompson*, 896 F.3d 155, 163 (2d Cir. 2018)). This substantiality standard is "'vigorously enforced,' and because the overbreadth doctrine's purpose is to prevent the chilling of protected speech, '[r]arely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or

---

[8] In the same claim, plaintiff also alleges that New York's licensing laws are "significantly underinclusive." *See, e.g.*, Am. Compl. ¶ 99. While a law's "underinclusivity" may raise a "red flag," the Court notes that "the First Amendment imposes no freestanding underinclusiveness limitation," and a state "need not address all aspects of a problem in one fell swoop; policymakers may focus on their most pressing concerns." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015).

demonstrating).'" *Id.* (citing *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)) (internal citations omitted).

Brokamp's allegations do not support an overbreadth challenge. First, plaintiff fails to adequately allege New York's licensing scheme will chill protected speech. While certain of plaintiff's allegations may suggest New York's licensing requirements could have a chilling effect on *her own* future conduct, *see, e.g.,* Am. Compl. ¶¶ 39, 68, 72-73, she does not allege that these requirements will chill conduct more broadly.

Thus, Brokamp has not shown New York's licensing laws "will have a *substantial* chilling effect on protected conduct." *Farrell*, 449 F.3d at 497 (emphasis added); *see also Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984) ("the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge...there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court"); *Sibley*, 501 F. Supp. 3d at 224 (finding allegation that challenged statute would chill plaintiff's *own* future protected conduct was insufficient to state a facial overbreadth challenge).

Second, even assuming Brokamp's allegations were sufficient to establish a chilling effect, she also fails to show that any effect would be substantial as

21

**A-137**

compared to New York's plainly legitimate interest in protecting the public through regulation of mental health counselor licensing.  This would have been enough to warrant dismissal on its own.  *See Bobbit v. Marzan*, 2017 U.S. Dist. LEXIS 161478, *63 (S.D.N.Y. Sep. 28, 2017) (dismissing overbreadth challenge because any alleged burden on First Amendment rights was "outweighed by the law's legitimate purpose"); *United States v. Hashmi*, 2009 WL 4042841, *10 (S.D.N.Y. Nov. 18, 2009) ("Even if it were shown that the law affects some activity that otherwise receives First Amendment protection, [plaintiff] does not show that these potential interferences are substantial in view of the law's legitimate purpose").

Brokamp has failed to demonstrate that New York's licensing scheme is overbroad, let alone substantially so in relation to New York's legitimate interest in establishing standards for professional licensure.  Plaintiff's facial First Amendment claim will be dismissed for failure to state a claim.

## V. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  Defendants' motions to dismiss are GRANTED; and

2.  Plaintiff's Amended Complaint is DISMISSED.

The Clerk is directed to enter judgment accordingly and close the file

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  November 22, 2021
        Utica, New York.

**A-139**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

### JUDGMENT IN A CIVIL CASE

**Elizabeth Brokamp**
        Plaintiff(s)

    vs.                       **CASE NUMBER:** 1:21-cv-389

**Letitia James et al.**
*in her official capacity as Attorney General of the State of New York*
        Defendant(s)

**Decision by Court.**  This action came to trial or hearing before the Court.  The issues
have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED, Defendants' motions to dismiss are GRANTED;
and Plaintiff's Amended Complaint is DISMISSED.

All of the above pursuant to the order of the Honorable Judge David N. Hurd, dated the
22nd day of November, 2021.

DATED: November 22, 2021

                                            Clerk of Court

                                    s/ M.Gallup-Hughes
                                    Deputy Clerk

# Federal Rules of Appellate Procedure
## Rule 4. Appeal as of Right

### (a) Appeal in a Civil Case.

1. (1) *Time for Filing a Notice of Appeal.*

(A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from.

(B) The notice of appeal may be filed by any party within 60 days after entry of the judgment or order appealed from if one of the parties is:

(i) the United States;
(ii) a United States agency;
(iii) a United States officer or employee sued in an official capacity; or
(iv) a current or former United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf — including all instances in which the United States represents that person when the judgment or order is entered or files the appeal for that person.

(C) An appeal from an order granting or denying an application for a writ of error *coram nobis* is an appeal in a civil case for purposes of Rule 4(a).

(2) *Filing Before Entry of Judgment.* A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.

(3) *Multiple Appeals.* If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.

(4) *Effect of a Motion on a Notice of Appeal.*

(A) If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:

(i) for judgment under Rule 50(b);

(ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;

(iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;

(iv) to alter or amend the judgment under Rule 59;

(v) for a new trial under Rule 59; or

(vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

(B)(i) If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

(ii) A party intending to challenge an order disposing of any motion listed in Rule 4(a)(4)(A), or a judgment's alteration or amendment upon such a motion, must file a notice of appeal, or an amended notice of appeal—in compliance with Rule 3(c)—within the time prescribed by this Rule measured from the entry of the order disposing of the last such remaining motion.

(5) *Motion for Extension of Time.*

(A) The district court may extend the time to file a notice of appeal if:

(i) a party so moves no later than 30 days after the time prescribed by this Rule 4(a) expires; and

(ii) regardless of whether its motion is filed before or during the 30 days after the time prescribed by this Rule 4(a) expires, that party shows excusable neglect or good cause.

(B) A motion filed before the expiration of the time prescribed in Rule 4(a)(1) or (3) may be ex parte unless the court requires otherwise. If the motion is filed after the expiration of the prescribed time, notice must be given to the other parties in accordance with local rules.

(C) No extension under this Rule 4(a)(5) may exceed 30 days after the prescribed time or 14 days after the date when the order granting the motion is entered, whichever is later.

(6) *Reopening the Time to File an Appeal.* The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered, but only if all the following conditions are satisfied:

(A) the court finds that the moving party did not receive notice under Federal Rule of Civil Procedure 77 (d) of the entry of the judgment or order sought to be appealed within 21 days after entry;

(B) the motion is filed within 180 days after the judgment or order is entered or within 14 days after the moving party receives notice under Federal Rule of Civil Procedure 77 (d) of the entry, whichever is earlier; and

(C) the court finds that no party would be prejudiced.

(7) *Entry Defined.*

(A) A judgment or order is entered for purposes of this Rule 4(a):

(i) if Federal Rule of Civil Procedure 58 (a) does not require a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79 (a); or

(ii) if Federal Rule of Civil Procedure 58 (a) requires a separate document, when the judgment or order is entered in the civil docket under Federal Rule of Civil Procedure 79(a) and when the earlier of these events occurs:

• the judgment or order is set forth on a separate document, or

• 150 days have run from entry of the judgment or order in the civil docket under Federal Rule of Civil Procedure 79 (a).

(B) A failure to set forth a judgment or order on a separate document when required by Federal Rule of Civil Procedure 58 (a) does not affect the validity of an appeal from that judgment or order.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
DOCKET NUMBER 1:21-CV-00389-DNH-ATB

---

ELIZABETH BROKAMP,

    *Plaintiff,*

    v.

LETITIA JAMES, in her official
capacity as Attorney General of the
State of New York; BETTY ROSA, in
her official capacity as the New York
State Commissioner of Education; the
NEW YORK STATE EDUCATION
DEPARTMENT BOARD OF
REGENTS; the NEW YORK STATE
BOARD OF MENTAL HEALTH
PRACTITIONERS; and THOMAS
BIGLIN, HELENA BOERSMA,
SARGAM JAIN, RENE JONES,
SUSAN L. BOXER KAPPEL, SARA
LIN FRIEDMAN MCMULLIAN,
RODNEY MEANS, TIMOTHY
MOONEY, ANGELA MUSOLINO,
MICHELE LANDERS MEYER,
NATALIE Z. RICCIO, HOLLY
VOLLINK-LENT, JILL R. WELDUM,
and SUSAN WHEELER WEEKS, in
their official capacity as members of the
New York State Board of Mental
Health Practitioners,

    *Defendants.*

**NOTICE OF APPEAL**

A-142

Notice is hereby given that Plaintiff Elizabeth Brokamp hereby appeals to the United States Court of Appeals for the Second Circuit from the final judgment of this Court, granting Defendants' motion to dismiss, entered in this action on November 22, 2021. (ECF No. 41, 42.)

DATED: December 15, 2021

Respectfully Submitted,

/s/ Jeffrey Redfern
Jeffrey Redfern (DC Bar No. 1018046)
Robert McNamara (VA Bar No. 73208)
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
P. (703) 682-9320
F. (703) 682-9321
E. jredfern@ij.org; rmcnamara@ij.org

Robert Johnson (D.C. Bar No. 1013390)
INSTITUTE FOR JUSTICE
16781 Chagrin Blvd. #256
Shaker Heights, OH 44120
P. (703) 682-9320
F. (703) 682-9321
E. rjohnson@ij.org

*Lead Counsel for Plaintiff*

Alan Pierce, NY Bar No. 102366
HANCOCK ESTABROOK, LLP
1800 AXA Tower I
100 Madison Street
Syracuse, NY  13202
Office: (315) 565-4546
Cell: (315) 427-0299
Email: apierce@hancocklaw.com

*Local Counsel for Plaintiff*

2

**A-143**