𝕴𝖓 𝕿𝖍𝖊

# 𝖀𝖓𝖎𝖙𝖊𝖉 𝕾𝖙𝖆𝖙𝖊𝖘 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘
## 𝕱𝖔𝖗 𝕿𝖍𝖊 𝕾𝖊𝖈𝖔𝖓𝖉 𝕮𝖎𝖗𝖈𝖚𝖎𝖙

**ELIZABETH BROKAMP,**

*Plaintiff–Appellant,*

*v.*

**LETITIA JAMES, in her official capacity as Attorney General
of the State of New York, BETTY A. ROSA, in her official
capacity as the New York State Commissioner of Education,
NEW YORK STATE EDUCATION DEPARTMENT BOARD OF
REGENTS, NEW YORK STATE BOARD OF MENTAL
HEALTH PRACTITIONERS, THOMAS BIGLIN, in his official
capacity as a member of the New York State Board of Mental
Health Practitioners, RODNEY MEANS, in his official
capacity as a member of the New York State Board of Mental
Health Practitioners, TIMOTHY MOONEY, in his official
capacity as a member of the New York State Board of Mental
Health Practitioners, HELENA BOERSMA, in her official
capacity as a member of the New York State Board of Mental
Health Practitioners, SARGAM JAIN, in her official capacity
as a member of the New York State Board of Mental Health
Practitioners, RENE JONES, in her official capacity as a
member of the New York State Board of Mental Health
Practitioners,**

*(Caption Continued Inside Cover)*

**SUSAN L. BOXER KAPPEL, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SARA LIN FRIEDMAN MCMULLIAN, in her official capacity as a member of the New York State Board of Mental Health Practitioners, ANGELA MUSOLINO, in her official capacity as a member of the New York State Board of Mental Health Practitioners, MICHELE LANDERS MEYER, in her official capacity as members of the New York State Board of Mental Health Practitioners, NATALIE Z. RICCIO, in her official capacity as a member of the New York State Board of Mental Health Practitioners, HOLLY VOLLINK-LENT, in her official capacity as a member of the New York State Board of Mental Health Practitioners, JILL R. WELDUM, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SUSAN WHEELER WEEKS, in her official capacity as a member of the New York State Board of Mental Health Practitioners,**

*Defendants–Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

**APPELLANT'S PETITION FOR PANEL REHEARING OR REHEARING EN BANC**

---

| Jeffrey H. Redfern | Robert E. Johnson | Alan J. Pierce |
|---|---|---|
| Robert J. McNamara | INSTITUTE FOR JUSTICE | HANCOCK ESTABROOK LLP |
| INSTITUTE FOR JUSTICE | 16781 Chagrin Boulevard, #256 | 1800 AXA Tower 1 |
| 901 North Glebe Road, Suite 900 | Shaker Heights, Ohio 44120 | 100 Madison Street |
| Arlington, Virginia 22203 | (703) 682-9320 | Syracuse, New York 13202 |
| (703) 682-9320 | | (315) 565-4546 |
| | | |
| *Counsel for Appellant* | *Counsel for Appellant* | *Counsel for Appellant* |

# Table of Contents

Table of Authorities ........................................................................ii

STATEMENT OF ISSUES WARRANTING REHEARING .................... 1

INTRODUCTION ........................................................................ 1

STATEMENT OF FACTS ............................................................ 3

ARGUMENT ................................................................................ 5

   I.  The Panel Opinion Allows Content-Based Laws to Escape Strict Scrutiny.................................................................................. 6

  II.  The Panel Opinion Allows the Government to Carry Its Intermediate-Scrutiny Burden Without Any Evidence................ 13

CONCLUSION ........................................................................... 20

CERTIFICATE OF COMPLIANCE ........................................... 21

Certificate of Filing and Service ............................................... 22

# Table of Authorities

**Page(s)**

## Cases

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004) ........................................................................ 13

*Barr v. American Ass'n of Political Consultants, Inc.*
    140 S. Ct. 2335 (2020) ........................................................... 1, 9-11

*Billups v. City of Charleston*,
    961 F.3d 673 (4th Cir. 2020) ....................................................... 15

*Brokamp v. James*,
    573 F. Supp. 3d 696 (N.D.N.Y. 2021) ......................................... 5

*Citizens United v. FEC*,
    558 U.S. 310 (2010) ........................................................................ 19

*City of Austin v. Reagan Nat'l Advert.*,
    142 S. Ct. 1464 (2022) ................................................................. 7-8

*Dent v. West Virginia*,
    129 U.S. 114 (1889) ........................................................................ 15

*Edwards v. Dist. of Columbia*,
    755 F.3d 996 (D.C. Cir. 2014) ....................................................... 15

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) ............................................................................ 12

*Libertarian Party of Erie Cnty. v. Cuomo*,
    970 F.3d 106 (2d Cir. 2020)........................................................... 14

*McCullen v. Coakley*,
    573 U.S. 464 (2014) ................................................................. 1, 13

*NAACP v. Button,*
371 U.S. 415 (1963) ...................................................... 12

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra,*
138 S. Ct. 2361 (2018) ................................................. 19

*PETA v. N.C. Farm Bureau Fed'n,*
60 F.4th 815 (4th Cir. 2023)........................................ 7

*Police Dep't of Chi. v. Mosley,*
408 U.S. 92 (1972) ....................................................... 19

*Reed v. Town of Gilbert,*
576 U.S. 155 (2015) ................................................1, 6-7

*Williams-Yulee v. Florida Bar,*
575 U.S. 433 (2015) ..............................................11-12

## Constitutional Provisions

U.S. CONST. amend. I ..............................................1-3, 18, 20

U.S. CONST. amend. XIV ............................................... 15

## Statutes and Code

N.Y. Educ. Law § 6512(1) ............................................... 4

N.Y. Educ. Law § 8402(1)(a) ......................................... 7

N.Y. Comp. Codes R. & Regs. tit. 8, § 79-9.8(c)(2)(ii)(a) ......................... 16

## Rules

Fed. R. Civ. P. 12(b)(1) ................................................. 5

Fed. R. Civ. P. 12(b)(6) ........................................................ 5, 15

**Other Authorities**

N.Y. Exec. Ord. 202.15 ............................................................. 4

Continuing Education: Frequently Asked Questions and Answers for
Licensed Mental Health Counselors (LMHC), available at
https://www.op.nysed.gov/professions/mental-health-counselors/
continuing-education-faqs ........................................................ 16

Audrey Russo, *Mental health options for college students attending
schools in other states can be a challenge*, WFSB (Sept. 26, 2022),
https://www.wfsb.com/2022/09/26/mental-health-options-college-
students-attending-schools-other-states-can-be-challenge/ ............ 17, 18

Harry Ritter, *How cross-state licensure reform can ease America's
mental health crisis*, STAT News (Mar. 8, 2023),
https://www.statnews.com/2023/03/08/cross-state-licensure-reform-
telehealth-ease-mental-health-crisis/ .................................................... 17

Ruth Reader, *The frustrating reason why your therapist may have to
break up with you*, Fast Company (Nov. 23, 2020),
https://www.fastcompany.com/90578222/telehealth-therapy-
pandemic-laws ........................................................................ 17

**STATEMENT OF ISSUES WARRANTING REHEARING**

Panel rehearing or rehearing en banc is warranted because the panel opinion conflicts with the Supreme Court's decision in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015), which holds that laws do not escape strict scrutiny because they restrict speech based on its "function or purpose" rather than explicitly based on its content, and *Barr v. American Association of Political Consultants, Inc.* 140 S. Ct. 2335 (2020), which held that a law prohibiting speech based on its purpose was a content-based restriction on speech. Rehearing is separately warranted because the panel opinion conflicts with *McCullen v. Coakley*, 573 U.S. 464 (2014).

**INTRODUCTION**

Elizabeth Brokamp is a Virginia-based therapist who wants to use the internet to talk to New Yorkers about their mental health. She cannot have those conversations because she is not licensed by New York, and, as a result, she had to cut off her relationship with a client who moved to the state. The district court (incredibly) held that Elizabeth lacked standing to challenge this restriction on her speech. Then the panel affirmed on a different—but also incredible—theory: that this burden on

1

Elizabeth's speech is so clearly justified that it passes First Amendment scrutiny on a motion to dismiss.

That decision threatens the First Amendment rights of countless therapists and their clients. With the advent of teletherapy, it is now technologically possible for a therapist in one state to provide services to clients located anywhere in the world. This means that a teenager who leaves home for college can now maintain a long-distance relationship with her therapist; similarly, an adult on vacation with her mother-in-law can now call her therapist for an urgent consultation. But, if that college or that vacation happens to be in New York, then any out-of-state therapist who engages in such a conversation risks prosecution for unlicensed practice.

Nor is this problem limited to New York. Therapists face a patchwork of state laws, with different entry requirements, scope-of-practice definitions, and continuing education requirements. Licensure takes time, requires paperwork, and incurs annual dues. The cost (in both time and money) for a therapist to become licensed in *every* state where a client might travel would be prohibitive. As a practical matter, it is thus no answer to say that therapists who want to talk to New

Yorkers should just get licensed in New York. Under that reasoning, a therapist who wanted to exercise her First Amendment right to talk nationwide would need to apply for a license in every state.

This national patchwork of restrictions on therapists' speech violates the First Amendment. However, because this case was resolved on a motion to dismiss, there is no need to finally resolve that ultimate question. The *only* question here is whether Elizabeth Brokamp's challenge to New York's licensing requirement raises sufficient First Amendment issues that it should be allowed to proceed to discovery. The panel instead cut Elizabeth's challenge off at the knees. As described in more detail below, rehearing is warranted because that decision was contrary to black letter First Amendment doctrine.

## STATEMENT OF FACTS

Dr. Elizabeth Brokamp is a Virginia-licensed professional counselor who provides counseling services to people who want to talk with her about their feelings or emotions—services she currently provides exclusively via online conversations initiated from her home in Virginia. (JA 14, 16–17, ¶¶ 1, 8, 15–16.) While her practice is online, her patients (generally) reside in and around Virginia—except when they move.

During the pandemic, for example, one of Dr. Brokamp's patients relocated to New York. (JA 20–21, ¶ 36.) Dr. Brokamp was able, for a time, to continue talking to that client because New York had temporarily suspended the requirement that out-of-state counselors obtain New York licenses before they could provide teletherapy to New York residents. *Id.*; N.Y. Exec. Ord. 202.15. But when the pandemic-related suspension ended, Dr. Brokamp ended her relationship with that client, just as she declined to resume a relationship with a client who had relocated to New York and wanted to resume having conversations about their feelings with Dr. Brokamp. (JA 21, ¶ 39.)

Dr. Brokamp declined to have these conversations because they are crimes. Since 2005 (and only since 2005), New York law has made it a felony to practice "mental health counseling" without a license issued by the state Department of Education. N.Y. Educ. Law § 6512(1). Dr. Brokamp's conversations are undeniably "mental health counseling"— she is, after all, a licensed counselor in Virginia—and, rather than shoulder the burdens imposed by New York, she chose to stop talking with clients located in New York. (JA 21, ¶ 39.)

But, troubled by her inability to talk to willing listeners in New York, she sued, filing this action in the Northern District of New York, on April 5, 2021, and later amending her complaint on June 21, 2021. (JA 5–7.) The State defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(1) and 12(b)(6), and U.S. District Judge David Hurd granted those motions on November 22, 2021. *Brokamp v. James*, 573 F. Supp. 3d 696 (N.D.N.Y. 2021). Dr. Brokamp timely appealed, and the panel opinion affirmed on the alternate ground that (1) the law preventing Dr. Brokamp from talking to New Yorkers to help ameliorate their emotional problems (but not prohibiting her from talking to New Yorkers for some other purpose) is a content-neutral restriction on her speech and (2) New York can carry its evidentiary burden under intermediate scrutiny even at the motion-to-dismiss stage.

## ARGUMENT

The panel opinion makes two erroneous holdings that warrant rehearing or rehearing en banc. First, it wrongly holds that speech-restricting laws can evade strict scrutiny so long as they outlaw conversations based on the purpose of the conversation rather than specifically its topic. Second, it wrongly holds that a government

defendant can carry its affirmative evidentiary burden under intermediate scrutiny in the absence of any record evidence that its law is adequately tailored to advancing the government's interest.

## I. The Panel Opinion Allows Content-Based Laws to Escape Strict Scrutiny.

This case is a challenge to a law that forbids Elizabeth Brokamp from having conversations over Zoom because the government is concerned that Elizabeth (a licensed counselor in Virginia, but not New York) might say things in those conversations that could harm the health of the New Yorkers she speaks with. The panel opinion holds that this restriction on speech is content-neutral because its application hinges on whether Elizabeth is having the conversation for a "statutorily identified therapeutic purpose[]" rather than on the content of the conversation. Slip op. 31.

This holding is quite literally the opposite of the Supreme Court's holding in *Reed v. Town of Gilbert*, which squarely held that government restrictions on speech may not escape strict scrutiny by "defining regulated speech by its function or purpose." 576 U.S. 155, 163 (2015). The panel opinion rests on exactly that sort of definitional game. On its face, the challenged statute specifically forbids speech: Brokamp violates

it if she uses "verbal . . . methods" to, among other things, "ameliorat[e] . . . [a] problem, or disorder of behavior, character, development, emotion, personality, or relationships[.]" N.Y. Educ. Law § 8402(1)(a). But, the panel opinion holds, this is not a content-based restriction on those "verbal . . . methods" (that is, on speech) because it is triggered only if the words have a "therapeutic purpose[]." Slip op. at 30–31.

To support this holding, the panel opinion relies entirely on *City of Austin v. Reagan National Advertising*, 142 S. Ct. 1464 (2022). Slip op. at 28–30. But *City of Austin* is expressly to the contrary. In that case, the Supreme Court reaffirmed that "a regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result." 142 S. Ct. at 1474. As the Fourth Circuit recently confirmed, *City of Austin* thus "reaffirmed *Reed*'s 'straightforward' conclusion." *PETA v. N.C. Farm Bureau Fed'n*, 60 F.4th 815, 830 (4th Cir. 2023).

The panel's contrary reading of *City of Austin* over-extends the decision's discussion of permissible time, place, and manner restrictions. The Supreme Court, in *City of Austin*, recognized that "ordinary time,

place, or manner" restrictions may require some consideration of speech's function or purpose. 142 S. Ct. at 1473. The Court noted precedents that approved of time, place, or manner restrictions on solicitation, *id.*, and the Court further held that sign codes may separately regulate on- and off-premises signs even though doing so may require some analysis of the content of the sign, *id.* at 1474.

The panel opinion extends that rule far beyond the time, place, and manner context, though. After all, nothing in the law challenged here restricts *when* or *where* or *how* Dr. Brokamp can have conversations about her patients' emotional problems. It forbids her from having them at all. And there is no meaningful difference between a law that forbids a conversation when its *subject matter* is the amelioration of a mental or emotional problem and a law that forbids a conversation when its *purpose* is the amelioration of a mental or emotional problem. In holding otherwise, the panel opinion transmutes *City of Austin*'s rule from one that approves some limited consideration of speech's content in the application of an otherwise-valid "time, place, or manner" restriction to one that would approve *any* consideration of speech's content so long as that consideration is phrased in terms of the law's "purpose."

The best illustration of the problem with the panel opinion's approach is *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. 2335 (2020). There, the plaintiff challenged a law that, on its face, regulated speech based solely on its purpose—that is, it banned robocalls entirely except for calls made "to collect a debt owed to or guaranteed by the United States." 140 S. Ct. at 2344–45 (plurality opinion). The panel opinion suggests that *Barr* is different because the law there "depend[ed] on the topics discussed," slip op. at 27 n.19, but it is unclear where the panel draws that distinction. The law in *Barr* prohibited calls unless their *purpose* was "to collect a debt owed to . . . the United States[.]" Just like the law here, though, a call that is *intended* to collect a debt owed to the United States could embrace any conceivable topic: "world events, planned travel, hobbies, sports, favorite movies, or any other subject." Slip op. at 30. In practice, of course, it is unlikely (though not impossible) that a robocall meant to collect a private debt would consist entirely of information about the New York Mets—but the same is true of a conversation whose "therapeutic purpose [is to] treat a condition of the psyche[.]" Slip op. at 27 n.19. After all, a conversation's content will be driven by its purpose. A robocall about the New York Mets

would be singularly ineffective as a means of collecting a debt—unless it included some other content to induce the listener to go to a debt-collection website or call a debt-collection number. So too with a therapy session: A therapist might choose to talk about the Mets, but it is unlikely to be a successful (or even recognizable) therapeutic intervention without some additional content.

The fact that the law in *Barr* was explicitly framed in terms of the speech's purpose, though, made no difference to the analysis. The four-Justice plurality expressly rejected the idea that the statute's distinctions "depend[ed] simply on whether the caller is engaged in a particular economic activity, not on the content of speech." 140 S. Ct. at 2347 (plurality opinion). Instead, the plurality treated it as obvious that a law that drew distinctions based on the *purpose* of a robocall necessarily "focuse[d] on whether the caller is *speaking* about a particular topic." *Ibid.* And Justice Gorsuch, who dissented because he believed the offending provision of the law was non-severable, agreed that "[t]he statute [was] content-based because it allow[ed] speech on a subject the government favors (collecting its debts) while banning speech on other disfavored subjects (including political matters)." *Id.* at 2364 (Gorsuch,

10

J., dissenting in part). Again, Justice Gorsuch was technically wrong—a robocall could theoretically have included some political content, so long as its true purpose was to collect a government debt—but he focused, as did the plurality, on the practical effect of the law's distinctions.

Even the remaining Justices in *Barr* did not adopt the panel opinion's contention that a law can escape strict scrutiny so long as its distinctions can be viewed as *purpose* rather than *content*-based. Instead, they advocated for throwing out the rule against content discrimination entirely. *See id.* at 2356 (Sotomayor, J., concurring in the judgment) ("I agree with much of the partial dissent's explanation that strict scrutiny should not apply to all content-based distinctions."); *id.* at 2359 (Breyer, J., dissenting in part) (arguing that content-based restrictions should not trigger strict scrutiny to "ordinary regulatory programs posing little threat to the free marketplace of [political] ideas").

By adopting a rule that would have controlled in *Barr*, the panel opinion undermines free-speech protections more broadly. Indeed, accepting the panel opinion's analysis would mean that all of the Supreme Court's modern strict-scrutiny cases turned solely on how the government *framed* the laws in question. In *Williams-Yulee v. Florida*

*Bar*, for example, the Supreme Court applied strict scrutiny to a canon of judicial conduct that forbade judges from "personally solicit[ing] campaign funds[.]" 575 U.S. 433, 439 (2015). But, under the panel's view, strict scrutiny would be unnecessary if the canon had instead forbidden communications *with the purpose of* soliciting campaign funds—after all, solicitations for money, like therapy sessions, might involve "hobbies, sports, favorite movies, or any other subject." Slip op. at 30. And the same is true of *Holder v. Humanitarian Law Project*, which applied strict scrutiny to a prohibition on providing "material support" to designated terrorist groups because (among other things) it prohibited them from conducting trainings "impart[ing] a 'specific skill'" to those groups. 561 U.S. 1, 27 (2010). There, too, the panel's holding means the government could have escaped scrutiny had it only forbidden support *with the purpose of providing* these groups with particular skills.

One could go on. The point is that the panel opinion's rule is both wrong and dangerous. As the Supreme Court has long cautioned, "a State cannot foreclose the exercise of constitutional rights by mere labels." *NAACP v. Button*, 371 U.S. 415, 429 (1963). The panel opinion allows exactly that, and rehearing en banc is therefore warranted.

## II. The Panel Opinion Allows the Government to Carry Its Intermediate-Scrutiny Burden Without Any Evidence.

Even if New York's prohibition on unlicensed "counseling" is subject to only intermediate scrutiny, that standard imposes a real evidentiary burden on the government. Intermediate scrutiny demands that the government demonstrate that its law is "narrowly tailored to serve a significant government interest"—a requirement that, "by demanding a close fit between ends and means, prevents the government from too readily sacrificing speech for efficiency." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (cleaned up). This means the government must be able to demonstrate that it has not "too readily forgone options that could serve its interests just as well, without substantially burdening the kind of speech in which [a plaintiff] wish[es] to engage. *Id.* at 490. It must "show[] that it seriously undertook to address the problem with less intrusive tools readily available to it" and that it "considered different methods that other jurisdictions have found effective." *Id.* at 494; *accord Ashcroft v. ACLU*, 542 U.S. 656, 668 (2004) (holding that it is the government's burden to present "specific evidence" to prove its speech restrictions are narrowly tailored).

The panel opinion acknowledges this demanding standard, conceding that courts *generally* cannot conduct the intermediate-scrutiny analysis until at least summary judgment. Slip op. at 31–32. But it proceeds to do so anyway, effectively gutting the intermediate scrutiny standard in the process.

The panel's intermediate-scrutiny analysis begins with the assertion that "the record" (by which the opinion means legislative history, not the allegations of the complaint) establishes that there is a need to protect the public from conversations with "unqualified" counselors. Slip op. at 33 & n.22.[1] And, holds the opinion, imposing a licensing requirement is a sufficiently direct way to protect that interest because the Supreme Court has held that licensing laws do not

_____

[1] The panel opinion is, of course, correct that a court can take judicial notice of a law's legislative history when deciding a motion to dismiss. *Id.* But it cannot accept the factual assertions in that legislative history as *true*, particularly when they contradict the allegations of the complaint. *See* A-29 ¶ 89 ("New York has no interest, compelling or otherwise, in preventing Elizabeth from speaking with clients over the internet."); A-31 ¶ 99 ("New York does not apply its laws to speakers who lack the training and qualifications associated with 'mental health counselors.'") *Cf. Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 128 (2d Cir. 2020) (holding that "[t]he Complaint itself," as opposed to legislative history materials, demonstrated that the challenged handgun restriction was sufficiently tailored to survive intermediate scrutiny).

categorically violate the Due Process Clause. Slip op. at 33–34 (citing *Dent v. West Virginia*, 129 U.S. 114, 122 (1889)).

But the fact that licensing laws sometimes survive challenges under the Due Process Clause (*i.e.,* the rational basis test) does not mean, as a matter of law, that a licensing law is a sufficiently tailored way of regulating speech. Sometimes a licensing law will be narrowly tailored. Sometimes it will not. Indeed, courts across the country, analyzing speech-restrictive licensing laws on a full record, have held that they can fail intermediate scrutiny. *See Billups v. City of Charleston*, 961 F.3d 673, 687 (4th Cir. 2020); *accord Edwards v. District of Columbia*, 755 F.3d 996, 1002 (D.C. Cir. 2014).

The panel opinion suggests that the licensing requirement here is essentially immune to challenge because it simply isn't burdensome—Dr. Brokamp, it says, can qualify for licensure by endorsement, and so the licensing requirement cannot be enough of a burden on her speech to fail intermediate scrutiny. But, again, in the context of a 12(b)(6) motion, the allegations of the complaint control—and those allegations are that obtaining a license in New York would be so burdensome that Dr.

Brokamp *stopped speaking to patients in New York* rather than meet New York's requirements.[2]

And justly so. Obtaining a license in New York would not only require Dr. Brokamp to complete paperwork and pay annual fees, which the panel opinion suggests is the only burden involved. *See* slip op. at 40. It would require her to satisfy continuing-education requirements with New York-approved (rather than Virginia-approved) educational providers. N.Y. Comp. Codes R. & Regs. tit. 8, § 79-9.8(c)(2)(ii)(a).[3] And these burdens must also be viewed in a broader context, as Dr. Brokamp's patients do not exclusively move to New York—they, naturally, also move to other states, and the compliance requirements to speak across state lines therefore increase exponentially.

---

[2] The State asserted that she could apply for licensure by endorsement, but expressed no opinion on whether such an application would be successful. Doc. No. 44 at 17 ("Brokamp *may* satisfy the requirements of that provision[.]") (emphasis added).

[3] *See also* Continuing Education: Frequently Asked Questions and Answers for Licensed Mental Health Counselors (LMHC), available at https://www.op.nysed.gov/professions/mental-health-counselors/continuing-education-faqs (explaining that an out-of-state practitioner who obtains a license in New York is only exempt from New York's continuing-education requirements for three years).

In the real world, the burdens posed by therapist licensing laws like New York's have been broadly recognized. One survey found that "70% of therapists reported that they had to stop seeing a client who moved to a different state," which can be "profoundly damaging in a health care category where therapeutic alliance and fit are so critical to outcomes."[4] With the rise of teletherapy, therapists must "try to keep track of where their clients are living and whether they can legally counsel them," and "therapists, afraid of breaking the law, have stopped seeing some of their patients."[5] From the client's perspective, this can be devastating; as one college student stated, when she was forced to give up her therapist after moving across state lines, "I trust that person, I feel like I can talk to them," and "[i]t's hard opening up to somebody you don't feel comfortable

---

[4] Harry Ritter, *How cross-state licensure reform can ease America's mental health crisis*, STAT News (Mar. 8, 2023), https://www.statnews.com/2023/03/08/cross-state-licensure-reform-telehealth-ease-mental-health-crisis/.

[5] Ruth Reader, *The frustrating reason why your therapist may have to break up with you*, Fast Company (Nov. 23, 2020), https://www.fastcompany.com/90578222/telehealth-therapy-pandemic-laws.

with."[6] Under the First Amendment, the state's interference with these relationships is a meaningful burden.

What does New York gain by imposing these restrictions on therapists and their clients? The record—which, here, is just the complaint—says nothing. But there is reason to doubt that the law confers *any* meaningful benefit at all, given its many exceptions. These exemptions ensure the law does not apply to "relatives, friends, teachers, church groups, and support organizations such as the Salvation Army, the Red Cross, and Alcoholics Anonymous," slip op. at 36, but it is hard to see what special danger is posed by Elizabeth's speech just because she is educated and trained as a therapist. If the state is worried about unqualified therapists, why does it exempt unqualified laypersons from its licensure requirement? Under the panel's decision, the state will never have to answer these questions.

Particularly combined with its expansive view of what sorts of discrimination still counts as "content neutral," the panel's assumption

---

[6] Audrey Russo, *Mental health options for college students attending schools in other states can be a challenge*, WFSB (Sept. 26, 2022), https://www.wfsb.com/2022/09/26/mental-health-options-college-students-attending-schools-other-states-can-be-challenge/.

that licensing laws advance important government interests as a matter of law is a recipe for widespread censorship. Under the panel opinion's approach, nothing would stop New York from requiring a license to engage in speech with the *purpose* of persuading someone to vote for or against a particular candidate.[7] Nothing would stop New York from requiring a license to engage in speech with the purpose of persuading someone to obtain (or refrain from obtaining) an abortion.[8] Nothing would stop New York from requiring a license to engage in speech with the purpose of ending a dispute between labor and management.[9] And it could even restrict this speech specifically on the grounds that it was important, that it could have serious consequences on its listeners, and that the State therefore wants to ensure that only competent individuals engage in it. So long as the legislative history reflected a sincere concern about these dangers and the speech restriction took the form of an occupational licensing, that would be the end of the matter.

---

[7] *But see Citizens United v. FEC*, 558 U.S. 310 (2010).

[8] *But see Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361 (2018).

[9] *But see Police Dep't of Chi. v. Mosley*, 408 U.S. 92 (1972).

Surely not. The Supreme Court's evidence-based test demands more. The First Amendment demands more. And this Court should demand more as well.

## CONCLUSION

For these reasons, the petition should be granted.

Respectfully submitted,

/s/ Jeffrey H. Redfern
Jeffrey H. Redfern
Robert J. McNamara
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, Virginia  22203
(703) 682-9320

Robert E. Johnson
Institute for Justice
16781 Chagrin Boulevard, #256
Shaker Heights, Ohio  44120
(703) 682-9320

Alan J. Pierce
Hancock Estabrook LLP
1800 AXA Tower I
100 Madison Street
Syracuse, New York  13202
(315) 565-4546

*Counsel for Appellant-Petitioner*

## CERTIFICATE OF COMPLIANCE

Under Federal Rules of Appellate Procedure 35(b), Local Rule 35.1, and Federal Rules of Appellate Procedure 40, Local Rule 40.1, I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 40(b) and 35(b)(2), (3) because this brief contains <u>3,892</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Office Word for Microsoft 365 MSO and is set in Century Schoolbook font in a size equivalent to 14 points or larger.

Dated May 11, 2023                    /s/ Jeffrey H. Redfern
                                      *Counsel for Appellant-Petitioner*

**Certificate of Filing and Service**

I hereby certify that on this 11th day of May, 2023, I caused this Appellant's Petition for Panel Rehearing or Rehearing En Banc to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ Jeffrey H. Redfern
*Counsel for Appellant-Petitioner*

# Exhibit A

21-3050
*Brokamp v. James*

# In the
# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2022

No. 21-3050-cv

ELIZABETH BROKAMP,

*Plaintiff-Appellant*,

v.

LETITIA JAMES, in her official capacity as Attorney General of the State of New York, BETTY A. ROSA, in her official capacity as the New York State Commissioner of Education, NEW YORK STATE EDUCATION DEPARTMENT BOARD OF REGENTS, NEW YORK STATE BOARD OF MENTAL HEALTH PRACTITIONERS, THOMAS BIGLIN, in his official capacity as a member of the New York State Board of Mental Health Practitioners, RODNEY MEANS, in his official capacity as a member of the New York State Board of Mental Health Practitioners, TIMOTHY MOONEY, in his official capacity as a member of the New York State Board of Mental Health Practitioners, HELENA BOERSMA, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SARGAM JAIN, in her official capacity as a member of the New York State Board of Mental Health Practitioners, RENE JONES, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SUSAN L. BOXER KAPPEL, in her official capacity as a member of the New York State Board of Mental Health Practitioners, SARA LIN FRIEDMAN MCMULLIAN, in her official capacity as a member of the New York State Board of Mental Health Practitioners, ANGELA MUSOLINO, in her official capacity as a member of the New York State Board of Mental Health Practitioners, MICHELE LANDERS MEYER, in her official capacity as a member of the New York State Board of Mental Health Practitioners, NATALIE Z. RICCIO, in her official capacity as a member of the New York State Board of Mental Health Practitioners, HOLLY VOLLINK-LENT, in her official capacity as a member of the New York State Board

of Mental Health Practitioners, JILL R. WELDUM, in her official capacity as a member of the New York State Board of Mental Health Practitioners, and SUSAN WHEELER WEEKS, in her official capacity as a member of the New York State Board of Mental Health Practitioners,

*Defendants-Appellees.*

_____

ARGUED: SEPTEMBER 19, 2022

DECIDED: APRIL 27, 2023

_____

Before: RAGGI, WESLEY, and LOHIER, *Circuit Judges*.

_____

Plaintiff Elizabeth Brokamp, a Virginia-licensed mental health counselor, appeals from a judgment entered in the United States District Court for the Northern District of New York (David N. Hurd, *J.*), dismissing her First Amendment and Due Process challenges to a New York law requiring her to obtain a further license in that state to provide mental health counseling to New York residents. Brokamp argues that the district court erred in (1) dismissing her as-applied challenges for lack of standing and, therefore, lack of jurisdiction, *see* Fed. R. Civ. P. 12(b)(1); (2) construing her First Amendment facial challenge as alleging overbreadth and concluding therefrom that she failed to state a plausible claim for relief, *see* Fed. R. Civ. P. 12(b)(6); and (3) overlooking her facial Due Process claim. Because Brokamp alleges that the very fact of New York's license requirement chills her speech, she did not have to apply for and be denied a license to demonstrate standing to pursue her First Amendment and Due Process claims. Nevertheless, because New York permits her to obtain a New York license by endorsement of her Virginia license without need to satisfy the many particular requirements for initial licensure, her claimed injury is attributable to the former endorsement provision and, thus, it is that provision rather than the particular requirements for initial licensure that she has standing to challenge, whether facially or as applied. In all other respects, her claims are properly dismissed for

2

lack of standing. As to licensure by endorsement, accepting Brokamp's express disavowal of a First Amendment overbreadth challenge and construing her Due Process claim as both a facial and as-applied challenge, we conclude that her claims are properly dismissed for failure to state a plausible claim for relief.

AFFIRMED.

_____

> JEFFREY H. REDFERN, Institute for Justice, Arlington, VA (Robert J. McNamara; Robert Johnson, Institute for Justice, Shaker Heights, OH; Alan J. Pierce, Hancock Estabrook LLP, Syracuse, NY, *on the brief*), *for Plaintiff-Appellant*.
>
> FREDERICK A. BRODIE, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, Jeffrey W. Lang, Deputy Solicitor General, *on the brief*) *for* Letitia James, Attorney General, State of New York, Albany, NY, *for Defendants-Appellees*.

_____

REENA RAGGI, *Circuit Judge*:

Plaintiff Elizabeth Brokamp is a Virginia-licensed mental health counselor who, for a fee, treats patients online with "talk therapy." Compl. ¶ 1.[1] Pursuant to 42 U.S.C. § 1983, she sued various New York state agencies and named officials in the United States District Court for the Northern District of New York (David N. Hurd, *Judge*), seeking (1) a judicial declaration that New York's mental health counselor licensing laws violate the First Amendment right to free speech and the

---

[1] The National Institute of Mental Health explains that "talk therapy" is another name for "psychotherapy," which "refers to a variety of treatments that aim to help a person identify and change troubling emotions, thoughts, and behaviors. Most psychotherapy takes place when a licensed mental health professional and a patient meet one-on-one or with other patients in a group setting." *Psychotherapies*, NAT'L INST. OF MENTAL HEALTH, https://www.nimh.nih.gov/health/topics/psychotherapies (last updated Jan. 2023).

Due Process Clause's prohibition on statutory vagueness, *see* U.S. Const. amends. I, XIV; and (2) an injunction prohibiting defendants from enforcing those laws as against her. On November 22, 2021, the district court dismissed Brokamp's complaint in its entirety as against defendant state agencies on sovereign immunity grounds, *see id.* amend. XI; and as against defendant state officials in part for lack of jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and in part for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6). *See Brokamp v. James*, 573 F. Supp. 3d 696 (N.D.N.Y. 2021). Brokamp now appeals that dismissal as against the state officials, arguing that the district court (1) erred in ruling that she had to apply for a New York license to establish standing to pursue as-applied challenges to the state license requirements, (2) mischaracterized her facial First Amendment claim as an overbreadth challenge in concluding that she failed to state a plausible claim for relief, and (3) overlooked her facial Due Process claim.[2]

For reasons stated in this opinion, we affirm the judgment of dismissal. While Brokamp did not have to apply for a license to demonstrate standing to complain that New York's license requirement unconstitutionally chilled her speech in vaguely defined ways, she nevertheless has standing only to challenge New York's requirement for licensure by endorsement as that provision, providing a streamlined license process for persons already holding out-of-state licenses, is the one causing her alleged concrete injury. Insofar as Brokamp challenges New York's initial license requirement—whether under the First Amendment or the Due Process Clause, whether on its face or as applied— dismissal for lack of jurisdiction is warranted because she need not satisfy the particular requirements for initial licensure to procure a New York license, thus, she cannot demonstrate a risk of real and concrete injury as necessary for standing. Finally, accepting Brokamp's express disavowal of any overbreadth challenge and

---

[2] Because Brokamp has confirmed that she does not appeal the district court's sovereign immunity dismissal of her claims against defendant state agencies, *see* Appellant Br. 10 n.1, we do not here review that part of the judgment.

construing her vagueness challenge to be both facial and as applied, we conclude that her First Amendment and Due Process challenges to New York's license-by-endorsement requirement are properly dismissed for failure to state plausible claims for relief. *See Jusino v. Fed'n of Cath. Tchrs., Inc.*, 54 F.4th 95, 100 (2d Cir. 2022) (holding that appeals court can affirm judgment on any ground supported by record).

## BACKGROUND

The following facts are drawn from Brokamp's complaint, documents attached thereto or incorporated therein, and facts of which we may take judicial notice. *See Melendez v. City of New York*, 16 F.4th 992, 996 (2d Cir. 2021). Our recitation assumes the truth of Brokamp's factual allegations and casts all facts in the light most favorable to her. *See id.* (discussing Rule 12(b)(6) dismissal); *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016) (discussing Rule 12(b)(1) dismissal).

## I. Brokamp's Talk Therapy Practice

Plaintiff Brokamp is highly educated and Virginia licensed to provide mental health counseling. In 1994, she was awarded a master's degree in Counseling Psychology by Columbia University, and, in 2018, she began work toward a doctoral degree in Counseling at the University of the Cumberlands, which degree she has since been awarded. Brokamp was first licensed to practice mental health counseling in 2004 by Virginia's Board of Counseling.[3] She continues to hold that Virginia license, having renewed it at required intervals

---

[3] *See License Lookup: License No. 0701003683*, VA. DEP'T OF HEALTH PROFESSIONS, https://dhp.virginia interactive.org/Lookup/Detail/0701003683 (last accessed Apr. 25, 2023); *see also Cangemi v. United States*, 13 F.4th 115, 124 n.4 (2d Cir. 2021) (taking judicial notice of record published on government website). To secure a license in Virginia, Brokamp had to (1) satisfy certain educational and experiential requirements; (2) pass a standardized exam; and (3) submit an application including, *inter alia*, (a) proof of her completion of required education and experience, and (b) application processing and licensure fees. *See* 18 Va. Admin. Code § 115-20-40.

through the present date.[4]  Brokamp has never challenged Virginia's licensing requirement.  *See* Oral Arg. Tr. 3:14–23.  To the contrary, Brokamp plainly recognizes the value of her state license.  In promoting herself to clients,[5] the first thing Brokamp says is that she is "a *licensed* professional counselor."  *See* NOVA TERRA THERAPY, https://novaterratherapy.com/ (last accessed Nov. 2, 2022) (emphasis added).

Until 2018, Brokamp provided mental health counseling to clients in person at her office in Alexandria, Virginia.  Brokamp closed her office that year to pursue her doctoral degree.  When she resumed her counseling practice in 2020—during the early stages of the COVID-19 pandemic—Brokamp offered only online services, operating out of her Virginia home under the name Nova Terra Therapy.  That remained the case as of the date of the operative complaint.

Under ordinary circumstances, New York law would not permit Brokamp to provide mental health counseling to persons residing in New York without being licensed by that state.  *See* N.Y. Educ. Law § 8402(2) ("Only a person licensed or exempt under this article shall practice mental health counseling or use the title 'mental health counselor.'").  Among the many executive orders signed by New York's governor in response to the COVID-19 pandemic, however, was one suspending this (and other) in-state licensing requirements for persons, such as Brokamp, holding valid out-of-state licenses.  *See* N.Y. Exec. Order 202.15 (temporarily suspending § 8402 "to the extent necessary to allow mental health counselors . . . in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure").

---

[4] To renew her Virginia license, Brokamp must annually complete a minimum of 20 hours of continuing education—two of which must be "in courses that emphasize the ethics, standards of practice, or laws governing behavioral science professions in Virginia"—and pay a renewal fee.  *See* 18 Va. Admin. Code §§ 115-20-100, 115-20-105.

[5] Because Brokamp refers to the persons she counsels as "clients" rather than patients, *e.g.*, Compl. ¶ 1, we do the same in this opinion, *but see supra* Note 1.

As a result, for a time, Brokamp provided online counseling to one client who had relocated to New York during the pandemic.  She declined, however, to initiate a counseling relationship with another former client then residing in New York because, in response to Brokamp's inquiry, the New York State Board of Mental Health Practitioners ("N.Y. Board") advised that she would not be able to continue such counseling after Executive Order 202.15 expired.  Thus, since expiration of that order on June 25, 2021, Brokamp has provided no mental health counseling to any New York resident, although she wishes to do so.

Brokamp asserts that she should be permitted to provide online counseling to New York residents without having to obtain a New York license.  She maintains that New York's licensing requirement cannot stand because it is content-based and vague, violating the First Amendment's guarantee of free speech both on its face and as applied, as well as the Due Process Clause.

## II.    New York's Mental Health Counselor Licensing Requirement

Before addressing Brokamp's claims, it is helpful to review certain provisions of New York law.

The practice of certain professions in New York without a required license is a class E felony, *see* N.Y. Educ. Law § 6512(1), punishable by a prison term of up to four years and a monetary fine, *see* N.Y. Penal Law §§ 70.00(2)(e), 80.00(1).  In 2002, having found that the practice of mental health counseling "affects the public safety and welfare," the New York legislature enacted a licensing requirement for such counselors to "protect the public from unprofessional, improper, unauthorized and unqualified practice of counseling and psychotherapy."  2002 N.Y. Sess. Laws ch. 676, § 7.[6]  Thus, New York Education Law § 8402(2) states that

---

[6] All fifty states, the District of Columbia, and Puerto Rico have license requirements for mental health counselors.  *See* Ala. Code § 34-8A-18; Alaska Stat. § 08.29.100; Ariz. Rev. Stat. Ann. § 32-3286; Ark. Code Ann. § 17-27-104; Cal. Bus. & Prof. Code § 4999.30; Colo. Rev. Stat. § 12-245-218; Conn. Gen. Stat. § 20-195bb; Del. Code Ann. tit. 24, § 3030; D.C. Code § 3-1205.01; Fla. Stat. § 491.003; Ga. Code Ann. § 43-10A-7; Haw. Rev. Stat. § 453D-5; Idaho Code § 54-3402; 225 Ill. Comp. Stat. 107/21; Ind. Code § 25-23.6-4.5-1; Iowa

"[o]nly a person licensed or exempt under this article shall practice mental health counseling or use the title 'mental health counselor.'"[7]

In requiring such licensure, the legislature defined the "practice of the profession of mental health counseling" as follows:

(a)    the evaluation, assessment, amelioration, treatment, modification, or adjustment to a disability, problem, or disorder of behavior, character, development, emotion, personality or relationships by the use of verbal or behavioral methods with individuals, couples, families or groups in private practice, group, or organized settings; and

(b)    the use of assessment instruments and mental health counseling and psychotherapy to identify, evaluate and treat dysfunctions and disorders for purposes of providing appropriate mental health counseling services.

N.Y. Educ. Law § 8402(1). The first paragraph—which the parties emphasize on this appeal—uses four factors to define "mental health counseling." These can be denominated: (1) purpose, (2) focus, (3) methods, and (4) circumstances. To begin

---

Code § 147.2; Kan. Stat. Ann. § 65-5803; Ky. Rev. Stat. Ann. § 335.505; La. Stat. Ann. § 37:1122; Me. Stat. tit. 32, § 13854; Md. Code Ann., Health Occ. § 17-301; Mass. Gen. Laws ch. 112, § 164; Mich. Comp. Laws § 333.18105; Minn. Stat. § 148B.591; Miss. Code Ann. § 73-30-19; Mo. Rev. Stat. § 337.505; Mont. Code Ann. § 37-23-201; Neb. Rev. Stat. § 38-2116; Nev. Rev. Stat. § 641A.410; N.H. Rev. Stat. Ann. § 330-A:23; N.J. Stat. Ann. § 45:8B-39; N.M. Stat. Ann. § 61-9A-4; N.Y. Educ. Law § 8402; N.C. Gen. Stat. § 90-331; N.D. Cent. Code § 43-47-06; Ohio Rev. Code Ann. § 4757.02; Okla. Stat. tit. 59, § 1911; Or. Rev. Stat. § 675.825; 63 Pa. Stat. and Cons. Stat. Ann. § 1904; P.R. Laws Ann. tit. 20, § 3254; 5 R.I. Gen. Laws § 5-63.2-11; S.C. Code Ann. § 40-75-30; S.D. Codified Laws § 36-32-58; Tenn. Code Ann. § 63-22-117; Tex. Occ. Code Ann. § 503.301; Utah Code Ann. § 58-60-103; Vt. Stat. Ann. tit. 26, § 3262; Va. Code Ann. § 54.1-3506; Wash. Rev. Code § 18.225.020; W. Va. Code § 30-31-1; Wis. Stat. § 457.04; Wyo. Stat. Ann. § 33-38-110.

In 2002, New York already required the licensure of four professions addressing mental health concerns: medicine, nursing, psychology, and social work. *See* N.Y. Educ. Law §§ 6522, 6903, 7601, 7702. That year, the state extended a license requirement to mental health counselors, psychoanalysts, marriage and family therapists, and creative arts therapists. *See id.* §§ 8402–8405.

[7] Hereafter, when we use the phrase "the license requirement" or "New York license requirement" in this opinion, we refer to the requirement for a *mental health counselor*, unless otherwise indicated.

with *methods*, the definition references both "verbal" and "behavioral" methods, thus plainly reaching speech. The other three factors cabin the speech qualifying as mental health counseling. Specifically, to constitute mental health counseling requiring licensure, speech must be used for a specific *purpose, i.e.*, "evaluation, assessment, amelioration, treatment, modification, or adjustment." These terms are not statutorily defined, but their plain meaning in the health context signals a therapeutic purpose.[8] Further, to constitute mental health counseling requiring licensure, the *focus* of therapeutic speech must be more than "behavior, character, development, emotion, personality or relationships." It must be "a disability, problem, or disorder" in one of those areas. In other words, the therapeutic speech must address something wrong with a person's psyche. Finally, to constitute mental health counseling requiring licensure, therapeutic speech addressing a mental "disability, problem, or disorder" must occur in particular *circumstances*: "private practice, group or organized settings." This signals that mental health counseling is not something rendered casually or on the spur of the moment.

---

[8] As pertinent to health, the dictionary defines the statute's purpose words as follows: (1) "evaluate"—"to examine and judge concerning the . . . condition of," as in "at the first visit, an attempt should be made to evaluate the patient as a whole," WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 786 (Philip Babcock Gove ed. 1986); (2) "assess"—"to analyze critically and judge definitively the nature, significance, status or merit of" the matter under consideration, *id.* at 131; (3) "ameliorate"—"to make better," *id.* at 67; (4) "treat"—"to seek cure or relief of (as a disease)," *id.* at 2435; (5) "modification"—"the act or action of changing something without fundamentally altering it," *id.* at 1452; (6) "adjust"—"to bring to a more satisfactory state" or "to achieve a harmonious mental and behavioral balance between one's own personal needs and strivings and the demands of other individuals and of society," *id.* at 27; *see generally Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."); *Yates v. United States*, 574 U.S. 528, 543 (2015) (relying on "principle of *noscitur a sociis*—a word is known by the company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words" (internal quotation marks omitted)).

9

To secure a counselor license, New York law requires a person to satisfy particular educational, experiential, examination, age, and character requirements, and to pay a fee. *See* N.Y. Educ. Law § 8402(3).[9]

---

[9] "To qualify for a license as a 'licensed mental health counselor'" in New York, an applicant must fulfill the following requirements:

(a)     Application: File an application with the [Education Department];

(b)     Education: Have received an education, including a master's or higher degree in counseling from a program registered by the department or determined by the department to be the substantial equivalent thereof, in accordance with the commissioner's regulations. The graduate coursework shall include, but not be limited to the following areas:

     (i)     human growth and development;

     (ii)     social and cultural foundations of counseling;

     (iii)     counseling theory and practice and psychopathology;

     (iv)     group dynamics;

     (v)     lifestyle and career development;

     (vi)     assessment and appraisal of individuals, couples and families and groups;

     (vii)     research and program evaluation;

     (viii)     professional orientation and ethics;

     (ix)     foundations of mental health counseling and consultation;

     (x)     clinical instruction; and

     (xi)     completion of a minimum one year supervised internship or practicum in mental health counseling;

(c)     Experience: An applicant shall complete a minimum of three thousand hours of post-master's supervised experience relevant to the practice of mental health counseling satisfactory to the board and in accordance with the commissioner's regulations [or such other experience as the statute identifies as satisfactory];

(d)     Examination: Pass an examination satisfactory to the board and in accordance with the commissioner's regulations;

(e)     Age: Be at least twenty-one years of age;

(f)     Character: Be of good moral character as determined by the department; and

New York permits persons (such as Brokamp) already licensed in another state to practice mental health counseling to practice in New York upon obtaining "endorsement" of their out-of-state licenses. *See* N.Y. Educ. Law § 6506(6) (granting Board of Regents authority to endorse licenses issued by other states); N.Y. Comp. Codes R. & Regs. tit. 8, § 79-9.7 (providing for mental health counseling licensure by endorsement).[10] It appears that Brokamp has never

---

(g)     Fees: Pay a fee of one hundred seventy-five dollars for an initial license and a fee of one hundred seventy dollars for each triennial registration period.

N.Y. Educ. Law § 8402(3).

[10] "An applicant seeking [New York] endorsement of a license in mental health counseling issued by another state, country or territory shall present evidence of:

(a)     age, the applicant shall be at least 21 years of age;

(b)     licensure by another jurisdiction;

(c)     completion of a graduate degree in mental health counseling or a related field that at the time of completion qualified the applicant for licensure as a mental health counselor in the other jurisdiction;

(d)     completion of supervised experience in mental health counseling and psychotherapy that qualified the applicant for initial licensure in the other jurisdiction;

(e)     passage of an examination acceptable to the department for the practice of mental health counseling;

(f)     at least five years of experience in mental health counseling satisfactory to the State Board for Mental Health Practitioners, within the 10 years immediately preceding the application for licensure by endorsement in New York;

(g)     completion of coursework in the identification and reporting of suspected child abuse and neglect or the exemption from such coursework, as specified in section 6507(3) of the Education Law;

(h)     good moral character as determined by the department;

(i)     acceptable licensure and discipline status in each jurisdiction in which the applicant holds a professional license.

N.Y. Comp. Codes R. & Regs. tit. 8, § 79-9.7. An applicant for licensure by endorsement must also pay a $371 fee. *See License Requirements for Mental Health Counselors*, N.Y. STATE EDUC. DEP'T OFF. OF THE PROFESSIONS, https://www.op.nysed.gov/professions/mental-health-counselors/license-requirements (last accessed Apr. 25, 2023).

sought a license by endorsement to practice mental health counseling in New York.

## III.    District Court Proceedings

On April 5, 2021, Brokamp initiated this action and, on June 21, 2021, filed the amended complaint here at issue.[11]  On November 22, 2021, the district court dismissed that complaint in its entirety against the individual defendants under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  *See Brokamp v. James*, 573 F. Supp. 3d at 704–06, 709–10.

The district court ruled that because Brokamp had not (1) applied for a New York mental health counselor license, (2) alleged that applying for such a license would have been futile, or (3) alleged a credible threat of prosecution for engaging in unlicensed mental health counseling, she lacked standing to bring her as-applied First Amendment and Due Process challenges to New York's licensure regime.  *See id.* at 704–06.  As to her First Amendment facial challenge—which the district court construed to complain of overbreadth, *see id.* at 709—the district ordered dismissal based on Brokamp's failure to plead that New York's licensing laws would have a substantial chilling effect on protected conduct, *see id.* at 709–10.

The district court entered judgment on the same day, and Brokamp timely appealed.

---

[11] We note that on December 9, 2020, Brokamp also initiated an action in the United States District Court for the District of Columbia challenging the District's code requirement for licensure of the "practice of professional counseling," an action still pending in that court.  *See Brokamp v. District of Columbia*, No. 20-cv-3574 (D.D.C.).

## DISCUSSION

### I.     Standard of Review

"A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it,' such as when . . . the plaintiff lacks constitutional standing to bring the action." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "On appeal from a dismissal under [Fed. R. Civ. P.] 12(b)(1), we review the court's factual findings for clear error and its legal conclusions *de novo*." *Id.* at 417; *accord Cangemi v. United States*, 13 F.4th 115, 129 (2d Cir. 2021).

A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(6) when the pleadings fail to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Because a judgment of dismissal pursuant to Fed. R. Civ. P. 12(b)(6) can only be entered if a court determines that, as a matter of law, a plaintiff failed to state a claim upon which relief can be granted, we review that legal determination *de novo*." *Melendez v. City of New York*, 16 F.4th at 1010.

### II.     Standing

The Constitution limits federal courts' jurisdiction to actual cases or controversies. *See* U.S. Const. art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014), by requiring a plaintiff to "allege[] such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf," *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975) (internal quotation marks omitted). Thus, to plead Article III standing, a plaintiff must allege facts plausibly demonstrating "(1) an

13

'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. at 157–58 (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). To satisfy the first requirement, a plaintiff must plead an injury that is "concrete and particularized and . . . actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. at 560 (internal quotation marks, citations, and footnote omitted). A threatened injury may be sufficiently imminent if it "is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. at 158 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013) (employing "certainly impending" standard while acknowledging cases referencing "substantial risk" standard, but declining to address possible distinction)).

## A. Brokamp's Failure To Apply for a License Does Not Deprive Her of Standing

The district court found Brokamp to lack standing to pursue as-applied challenges to New York's license requirements for mental health counselors because she did not allege that she had ever applied for such a license or that such an application would have been futile. *See Brokamp v. James*, 573 F. Supp. 3d at 704–05. The district court located such an application requirement in *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091 (2d Cir. 1997). In that case, an inmate alleged religious discrimination by prison officials who denied his request to wear certain garments allegedly prescribed by his Moorish Science Temple faith, rather than standard issued clothing, when taken to attend his father's funeral. *See id.* at 1094. Prisoners have no right to wear garments of their choosing. Nevertheless, record evidence indicated that the defendant prison authorities accommodated requests to wear garments prescribed by an inmate's *registered* religion. *See id.* Jackson-Bey did not challenge the constitutionality of the registration requirement or dispute his failure to comply with it, despite opportunities to do so. *See id.* at 1096. In those

14

circumstances, this court concluded that Jackson-Bey lacked standing to claim religious discrimination because "any injury suffered by Jackson-Bey result[ed] from his own decision not to follow the simple procedure of registering his religion." *Id.* at 1095. It was in that context that the court noted that, "[a]s a general matter, to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy" or "make[] a substantial showing that application for the benefit . . . would have been futile." *Id.* at 1096.

This case is plainly distinguishable from *Jackson-Bey* in that Brokamp is certainly challenging the constitutionality of New York's mental health counselor license requirement as an impermissible restraint on free speech. Her complaint is not that a permissible licensing requirement is being applied to her in an unconstitutional or unlawful manner. As the cases cited in *Jackson-Bey* to support the above-quoted statement show, an application requirement is apt when a party complains that he is being denied a benefit that is not itself constitutionally guaranteed—*e.g.*, a club membership, admission to a private school, a job, a parking permit—for unconstitutional (or other unlawful) reasons. [12] In those

---

[12] In *Jackson-Bey,* this court discussed the supporting authority as follows:

> [I]n *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 167–68 (1972), the Supreme Court held that an African-American who never actually applied for membership to the Moose Lodge lacked standing to challenge the club's all-white membership requirement. Similarly, in *Allen v. Wright*, 468 U.S. [737,] 755 [(1984)], the Court held that plaintiffs, parents of children who had never applied for admission to private schools with allegedly racially discriminatory admissions policies, had no standing to challenge the tax-exempt status of those private schools. *See also Madsen v. Boise State Univ.*, 976 F.2d 1219, 1220 (9th Cir. 1992) (denying standing to university student who failed to apply for handicap parking permit); *Albuquerque [Indian Rts. v. Lujan]*, 930 F.2d [49,] 57 [(D.C. Cir. 1991)] (denying standing to plaintiffs who sought to extend Indian hiring preferences to jobs for which they had never applied); *Doe v. Blum*, 729 F.2d 186, 189–90 (2d Cir. 1984) (denying standing to plaintiffs—sexually active teenagers—who never applied for and therefore were never denied desired family planning benefits); *cf. Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43 (1993) (holding that claims of immigrants who never applied for amnesty, challenging alleged mistakes made in administration of amnesty provision, were not ripe).

115 F.3d at 1096.

15

circumstances, because there is no legally cognizable injury until there is a denial, a party must apply for the benefit or allege that application would be futile to plead the injury element of standing.

The same conclusion does not obtain in this case. Brokamp asserts that talk therapy is speech, in which she is constitutionally entitled to engage without state limitation or license. In that circumstance, Brokamp's alleged First Amendment injury does not arise only upon application for or denial of a license. Rather, injury arises from the very fact of a licensure requirement which *presently* silences Brokamp—under pain of criminal prosecution—from engaging in the professed protected speech. Further, Brokamp maintains that the extent to which she is silenced is informed by the vagueness of the law's proscriptions. She contends that speech that she could, and did, engage in while Executive Order 202.15 was in effect has become speech that she cannot, and does not, engage in because of the challenged license requirement.

To be sure, defendants may defend against Brokamp's First Amendment and Due Process claims by demonstrating that the challenged licensure requirement passes the requisite level of constitutional scrutiny. But that goes to the merits of her claims. It is the present chilling effect of that requirement on Brokamp's speech that demonstrates actual injury sufficient for standing without need to submit a license application. *See Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (holding that plaintiffs pleaded Article III injury where they alleged "actual and well-founded fear that the law will be enforced against them," explaining that "alleged danger of this statute is . . . one of self-censorship; a harm that can be realized even without an actual prosecution"); *Bordell v. Gen. Elec. Co.*, 922 F.2d 1057, 1060 (2d Cir. 1991) ("[T]he fact that a plaintiff's speech has actually been chilled can establish an injury in fact . . . . ").

The district court nevertheless concluded that Brokamp lacked standing because she failed to allege a credible threat of prosecution. *See Brokamp v. James*,

573 F. Supp. 3d at 705–06. That conclusion appears to rest on the well-settled principle that a plaintiff may bring a pre-enforcement challenge to a statute by alleging "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). The district court reasoned that Brokamp's conceded cessation of online counseling in New York (after expiration of Executive Order 202.15) meant she was at no present risk of prosecution. *See Brokamp v. James*, 573 F. Supp. 3d at 705–06. That, however, misperceives Brokamp's burden.

The law does "not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). That Brokamp would have faced a credible threat of prosecution if she had continued counseling New York residents after expiration of Executive Order 202.15 is evident both from the N.Y. Board's explicit communication to Brokamp that she could not lawfully continue unlicensed mental health counseling of New York residents after expiration of Executive Order 202.15, *see supra* at 7; and from caselaw demonstrating New York's prosecution of persons who practice certain professions without obtaining required licenses.[13]

Thus, contrary to the district court, we conclude that Brokamp was not required to apply for a New York mental health counselor license to demonstrate standing to pursue her as-applied First Amendment and Due Process challenges. Rather, we hold that Brokamp satisfactorily demonstrated standing by "ceas[ing]"

---

[13] *See, e.g., People v. Hollander*, 177 A.D.3d 683, 113 N.Y.S.3d 712 (2d Dep't 2019) (unauthorized practice of dentistry); *People v. Mobley*, 144 A.D.3d 477, 40 N.Y.S.3d 426 (1st Dep't 2016) (unauthorized practice of medicine); *People v. Eun Sil Jang*, 17 A.D.3d 693, 793 N.Y.S.2d 540 (2d Dep't 2005) (unauthorized practice of massage therapy).

her online counseling of New York residents "unless and until" the challenged licensing law, as applied to her, is "declared unconstitutional and the threat . . . of . . . sanctions . . . thereby removed." *Vermont Rt. to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 381–84 (2d Cir. 2000).

**B.    Only New York's Licensure by Endorsement Requirement Causes Brokamp Injury Supporting Standing**

While we recognize Brokamp's standing generally to challenge New York's requirement that mental health counselors be licensed to practice in that state, that does not mean that she has standing to challenge "[t]he entire licensing law." Oral Arg. Tr. 2:25–3:7. As discussed *supra* at 10–11, New York provides different means for obtaining a mental health counselor license depending on whether a person is seeking an initial license or endorsement of a license already obtained in another state. Brokamp draws no distinction between the two. She does not dispute, however, that as a Virginia-licensed mental health counselor in good standing, she does not need to satisfy the many particulars of New York's initial license requirement to provide mental health counseling in that state. She need only satisfy New York's streamlined requirement for licensure by endorsement.[14] Thus, Brokamp cannot plausibly claim imminent and concrete (as opposed to hypothetical and speculative) injury from the eleven specific coursework requirements and 3,000 hours of supervised counseling demanded of applicants for initial licensure, but not required of her. She can claim imminent and concrete injury from, and therefore standing to challenge, only the endorsement part of New York's licensing regime. As the Supreme Court has observed, "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996); *see also Davis*

---

[14] Brokamp does not contend that any person already licensed as a mental health counselor in a state other than New York would seek to satisfy New York's detailed requirements for initial licensure rather than its streamlined requirements for licensure by endorsement. Thus, injury to such a party from the former requirements is hypothetical and speculative in nature. Accordingly, we need not here consider a party's standing to challenge alternative statutory requirements when either might reasonably apply.

*v. FEC*, 554 U.S. 724, 733–34 (2008) ("The fact that Davis has standing to challenge § 319(b) does not necessarily mean that he also has standing to challenge the scheme of contribution limitations that applies when § 319(a) comes into play."). Thus, while Brokamp has standing to challenge New York's licensure by endorsement requirement, the same conclusion does not obtain for her challenges to New York's particular provisions for initial licensure. Her First Amendment and Due Process claims as to these provisions are properly dismissed.

Moreover, that dismissal properly extends to both Brokamp's as-applied and facial First Amendment challenges, without regard to whether the latter is based on overbreadth. The substantial overbreadth doctrine permits a plaintiff to plead a facial First Amendment challenge to a statute "with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Parker v. Levy*, 417 U.S. 733, 759 (1974) (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). But that doctrine does not absolve the plaintiff of the initial obligation to plead the injury in fact required for standing. As this court has explained, "the overbreadth doctrine speaks to whose interests a plaintiff suffering Article III injury may represent. It does not provide a reason to find [personal] injury where none is present or imminently threatened in the first instance." *Hedges v. Obama*, 724 F.3d 170, 204 (2d Cir. 2013); *see also Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 958 (1984) ("Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court. Munson's ability to serve that function has nothing to do with whether or not its own First Amendment rights are at stake. The crucial issues are whether

Munson satisfies the requirement of 'injury-in-fact,' and whether it can be expected satisfactorily to frame the issues in the case.").[15]

Because Brokamp can plead concrete injury only from New York's license-by-endorsement requirement, and not from its particular requirements for initial licensure, all claims as to the latter are properly dismissed.

## III. Failure To State a Claim

### A. First Amendment Claims

Brokamp contends that New York's licensing regime for mental health counselors is, both on its face and as applied, a content-based restriction on speech that cannot satisfy strict scrutiny. *See* Appellant Br. 24–38.[16] The First Amendment generally prevents government from "proscribing speech . . . because [it] disapprov[es] of the ideas expressed," *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992), or mandating speech because it seeks to promote particular views, *see Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013) (reiterating "basic First Amendment principle that freedom of speech prohibits the

---

[15] Because Brokamp here specifically disavows any overbreadth claim, this case is distinguishable from those holding that in resolving disputes as to whether a First Amendment is facial or as-applied, "[t]he label is not what matters." *Doe v. Reed*, 561 U.S. 186, 194 (2010); *accord Vermont Rt. to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 126 (2d Cir. 2014). Here, Brokamp not only disavows an overbreadth claim, she argues that it was error for the district court to construe her facial First Amendment challenge to allege overbreadth: "Because Dr. Brokamp alleges that her speech is constitutionally protected, the 'substantial overbreadth' doctrine is inapplicable." Appellant Br. 32. In these circumstances, we take Brokamp at her word, mindful both that "the party who brings a suit is master to decide what law he will rely upon," *Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913), and that facial challenges are frequently pleaded with as-applied challenges simply to expand "the breadth of the remedy employed by the Court," *Citizens United v. FEC*, 558 U.S. 310, 331 (2010). That, however, does not alter "what must be pleaded in a complaint" to demonstrate standing to pursue any claim or remedy. *Id.*

[16] Our use of the phrase "licensing regime" should not be interpreted as a departure from our ruling that Brokamp has standing to challenge only the licensure by endorsement requirement of that regime. *See supra* at 18–20. Rather, we use the phrase simply as shorthand, recognizing that certain statutory provisions apply equally to New York's initial license and license-by-endorsement requirements. *See, e.g.*, N.Y. Educ. Law § 8402(1) (defining "mental health counseling"); *id.* § 8410 (identifying exemptions from license requirements); *id.* § 6512(1) (criminally proscribing unlicensed mental health counseling by "[a]nyone not authorized to practice under this title," regardless of license method applicable to particular person).

government from telling people what they must say" (internal quotation marks omitted)). *See generally Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2354 (2020) (plurality opinion) (describing First Amendment as "a kind of Equal Protection Clause for ideas" (internal quotation marks omitted)). For this reason, "[c]ontent-based regulations are presumptively invalid" and must satisfy strict scrutiny to withstand constitutional attack. *R.A.V. v. City of St. Paul*, 505 U.S. at 382. To pass that test, challenged regulations must be "narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ("Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."). No exception to this principle applies for speech engaged in by professional persons subject to state licensure. *See National Inst. of Fam. & Life Advocs. ("NIFLA") v. Becerra*, 138 S. Ct. 2361, 2371–72 (2018) ("Speech is not unprotected merely because it is uttered by 'professionals.'"); *id.* at 2375 (observing that "licensing requirement" does not give state "unfettered power to reduce a group's First Amendment rights").

Defendants submit that New York's licensing regime is content-neutral and, in fact, is directed at the *conduct* of mental health counselors, while only incidentally burdening speech. In these circumstances, they maintain that licensing requirements need satisfy only the "less stringent test" of intermediate scrutiny, *Hobbs v. County of Westchester*, 397 F.3d 133, 149 (2d Cir. 2005), which can be satisfied by a showing that the challenged license requirement "(1) advances important governmental interests unrelated to the suppression of free speech and (2) does not burden substantially more speech than necessary to further those interests," *Cornelio v. Connecticut*, 32 F.4th 160, 171 (2d Cir. 2022) (internal quotation marks omitted). *See generally Vincenty v. Bloomberg*, 476 F.3d 74, 84 (2d Cir. 2007) (emphasizing that intermediate scrutiny does not demand "'least speech-restrictive means of advancing the Government's interests,'" as required

21

for strict scrutiny (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994))). Under this standard, states have been permitted to "regulate professional conduct, even though that conduct incidentally involves speech." *NIFLA v. Becerra*, 138 S. Ct. at 2372; *see, e.g.*, *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1225–26 (11th Cir. 2022) (upholding license requirement for nutritionists as regulation of "occupational conduct"); *Capital Associated Indus., Inc. v. Stein*, 922 F.3d 198, 207–08 (4th Cir. 2019) (upholding ban on corporate practice of law because the relevant "statutes [did not] target the communicative aspects of practicing law").[17]

Brokamp maintains that these professional licensing cases are inapt here because, in each, the professional engaged in at least some non-expressive conduct. She submits that mental health counseling—as she practices it, using talk therapy—consists of nothing but speech. For this reason, Brokamp argues that it is "unconstitutional to require *any* license for this kind of a mental health professional." Oral Arg. Tr. 8:13–22 (emphasis added).

For purposes of reviewing the dismissal of Brokamp's First Amendment challenge to New York's licensure-by-endorsement requirement, we will assume, without deciding, that her counseling services consist only of speech without any non-verbal conduct. *Cf. Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (assuming, without deciding, that certain conduct was expressive for purposes of First Amendment claim). Thus, in deciding the appropriate level of scrutiny, we focus only on whether the licensing requirement is a content-based or content-neutral limitation on speech. For reasons we now explain, we conclude

---

[17] Regulation of conduct, directed not against but incidentally burdening speech, has also been upheld in other contexts because of the strong state interest in the conduct. As the Supreme Court has explained, "[t]hat is why a ban on race-based hiring may require employers to remove 'White Applicants Only' signs; why an ordinance against outdoor fires may forbid burning a flag; and why antitrust laws can prohibit agreements in restraint of trade." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (internal quotation marks and citations omitted); *see R.A.V. v. City of St. Paul*, 505 U.S. at 389 (stating that "law against treason . . . is violated by telling the enemy the Nation's defense secrets").

that the requirement is content neutral and, therefore, subject to intermediate rather than strict scrutiny.

### 1. New York's License Requirement Is Content Neutral

The Supreme Court has repeatedly emphasized the First Amendment's intolerance for content discrimination—most obviously, government censorship of controversial, unpopular, or simply disfavored viewpoints. *See, e.g.*, *Police Dep't of Chi. v. Mosley*, 408 U.S. 92 (1972). In *Mosley*, the Court invalidated a city ordinance that prohibited picketing within 150 feet of a school except for picketing involving a labor dispute, ruling that "government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views." *Id.* at 96. The Court explained that such content discrimination was unconstitutional because,

> above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. To permit the continued building of our politics and culture, and to assure self-fulfillment for each individual, our people are guaranteed the right to express any thought, free from government censorship. The essence of this forbidden censorship is content control. Any restriction on expressive activity because of its content would completely undercut the profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open.

*Id.* at 95–96 (internal quotation marks and citations omitted).

Consistent with the First Amendment's strict prohibition on content censorship, the Supreme Court in *Boos v. Barry*, 485 U.S. 312 (1988), invalidated a District of Columbia code provision that forbade "the display of any sign within 500 feet of a foreign embassy if that sign tends to bring that foreign government into 'public odium' or 'public disrepute,'" *id.* at 315. Though the prohibition might have appeared "not viewpoint based" insofar as acceptable and unacceptable

23

viewpoints were identified "in a neutral fashion by looking to the policies of foreign governments," *id.* at 319, the Court ruled it unconstitutional, reasoning that "a regulation that 'does not favor either side of a political controversy' is nonetheless impermissible because the 'First Amendment's hostility to content-based regulation extends to prohibition of public discussion of an entire topic,'" *id.* (ellipsis omitted) (quoting *Consolidated Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 537 (1980)). More recently, the Court has reiterated that "content discrimination" is constitutionally proscribed because it "'raises the specter that the Government may effectively drive certain ideas or viewpoints from the marketplace.'" *R.A.V. v. City of St. Paul*, 505 U.S. at 387 (quoting *Simon & Schuster Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 116 (1991)).

Applying these principles here, we conclude that New York's mental health licensing regime, particularly the licensing-by-endorsement requirement applicable to Brokamp, is not a content-based restriction on speech. Like any license requirement, the one here at issue regulates—and to that extent limits—who can use the title "mental health counselor," or "practice mental health counseling," N.Y. Educ. Law § 8402(2)—activity that, for purposes of this appeal, we presume to consist only of speech. But New York's mental health counseling license requirement does not turn on the content of what a person says. Specifically, it does not license "views it finds acceptable," while refusing to license "less favored or more controversial views." *Police Dep't of Chi. v. Mosley*, 408 U.S. at 96. It does not condemn "certain ideas or viewpoints." *R.A.V. v. City of St. Paul*, 505 U.S. at 387 (internal quotation marks omitted). It does not "prohibit[] public discussion of an entire topic." *Boos v. Barry*, 485 U.S. at 319 (internal quotation marks omitted). Rather, New York's license requirement applies—regardless of what is said—only to speech having a particular purpose, focus, and

24

circumstance.[18]  Thus, we conclude that New York's license-by-endorsement requirement is not content based, but rather content neutral.

That conclusion finds support in the rulings of our sister circuits, notably, *National Association for Advancement of Psychoanalysts v. California Board of Psychology*, 228 F.3d 1043 (9th Cir. 2000) ("*NAAP v. Cal. Bd.*"), and *Otto v. City of Boca Raton*, 981 F.3d 854 (11th Cir. 2020).

In *NAAP*, psychoanalysts challenged California's psychologist licensing requirement on First and Fourteenth Amendment grounds.  Like the challenged New York law, a California law required license applicants to satisfy educational, experiential, and examination requirements.  *See* 228 F.3d at 1046–47.  In rejecting the psychoanalysts' First Amendment challenge, the Ninth Circuit ruled that California's license requirement was a content-neutral exercise of the state's police power, explaining that "California's mental health licensing laws . . . do not dictate *what can be said* between psychologists and patients during treatment," *id.* at 1055 (emphasis added); they "merely determine[] who is qualified as a mental health professional," *id.* at 1056.  The same conclusion obtains here.  New York's license-by-endorsement requirement determines what persons, already licensed by another state to provide mental health counseling, can provide such counseling in New York upon a less detailed showing of competency than that required by the state's initial licensure procedure.  The license-by-endorsement requirement does not "dictate what can be said" between a mental health counselor and client;

---

[18] *See supra* at 8–9 (discussing statutory definition of "mental health counseling").  We note that in Brokamp's challenge to the District of Columbia code requirement for licensure of the practice of professional counseling, the district court, in a minute order denying dismissal of her First Amendment claim, ruled that the D.C. code "is . . . content-based, given that it only applies to Plaintiff's speech if she speaks about certain topics, such as her clients' mental, emotional, or behavioral issues."  *See Brokamp v. District of Columbia*, No. 20-cv-3574, Minute Order (D.D.C. Mar. 7, 2022).  We need not decide whether we agree with this conclusion about the D.C. code because we consider only New York's license laws.  For reasons discussed in text, we conclude that New York's license requirement depends not on any topic that a counselor may discuss with a client, but on the purpose, focus, and circumstance of any discussion.

it merely determines "who is qualified" as a mental health counseling professional. *Id.* at 1055–56.

In *Otto*, the Eleventh Circuit struck down as content-based restrictions on speech a pair of ordinances prohibiting talk therapy practices designed to change a minor's sexual orientation or gender identity (practices more commonly known as "conversion therapy"). *See* 981 F.3d at 859. The court there explained that, under the challenged ordinances,

> [w]hether therapy is prohibited depends only on the content of the words used in that therapy, and the ban on that content is because the government disagrees with it. And whether the government's disagreement is for good reasons, great reasons, or terrible reasons has nothing at all to do with it. All that matters is that a therapist's speech to a minor client is legal or illegal under the ordinances based solely on its content.

*Id.* at 863. By contrast to these ordinances, which were "based solely on [the] content" of a therapist's speech to a minor client, *id.*, the licensing requirements in this case do not depend on anything that is said between a counselor and a client seeking mental health care. What matters is that—whatever is said—the speech (1) have a therapeutic purpose, (2) relating to a mental disorder or problem, (3) in the context of a professional practice or organized setting. *See supra* at 8–9. Brokamp may disagree with New York's determination that mental health counselors licensed in other states, such as herself, must make some (streamlined) showing of competency to be licensed to treat New York residents. But that does not alter the fact that New York's license-by-endorsement requirement for such counselors places no limits or conditions on what a licensed counselor may hear and say in providing mental health counseling. Thus, like the license requirement

26

in *NAAP*, and unlike the ordinances at issue in *Otto*, New York's license-by-endorsement requirement is content neutral.[19]

In urging otherwise, Brokamp relies on *Reed v. Town of Gilbert*, 576 U.S. 155. In that case, a church and its pastor raised a First Amendment challenge to a town code prohibiting the display of outdoor signs anywhere in the town without a permit but providing for 23 exemptions, each of which was subject to different restrictions. *See id.* at 159. Among these were exemptions for "Ideological Signs," "Political Signs," and "Temporary Directional Signs Relating to a Qualifying Event." *Id.* at 159–60 (brackets omitted). The Supreme Court ruled that the sign code was a content-based restriction on speech because its application to any

---

[19] A trio of Supreme Court cases identifying content-based restrictions on speech are also distinguishable from this case and, thus, further support our conclusion that the licensing requirement here at issue is content neutral. Insofar as New York's license requirement does not depend on the topics discussed between counselor and client, this case is not akin to *Barr v. American Association of Political Consultants, Inc.*, 140 S. Ct. at 2347 (striking down government-debt exception to federal restriction on robocalls to cell phones as content-based restriction on speech because "law here focuses on whether the caller is speaking about a particular topic" (emphasis omitted)). Its singular concern is on whether the counselor purports to be speaking for a therapeutic purpose in order to treat a condition of the psyche in a professional context. Nor does New York mandate that a licensed counselor provide any information or convey any message when treating a client, distinguishing this case from *NIFLA v. Becerra*, 138 S. Ct. at 2371 (holding California statute requiring licensed clinics to notify women that state provides free or low-cost health care services, including abortions, is "content-based regulation of speech" because "[b]y compelling individuals to speak a particular message, such notices alter the content of their speech" (brackets and internal quotation marks omitted)). Further, New York imposes criminal penalties only for providing mental health counseling without a license; the content of that counseling is irrelevant. *Cf. Holder v. Humanitarian L. Project*, 561 U.S. 1, 8–9, 27 (2010) (ruling that statute criminalizing provision of material support for foreign terrorist organizations, including by providing "expert advice or assistance," "regulates speech on the basis of its content" because "[p]laintiffs want to speak to [two groups designated as foreign terrorist organizations], and whether they may do so under [the statute] depends on what they say[;] [i]f plaintiffs' speech to those groups imparts a 'specific skill' or communicates advice derived from 'specialized knowledge' . . . then it is barred [whereas] plaintiffs' speech is not barred if it imparts only general or unspecialized knowledge" (internal quotation marks omitted)).

27

particular sign "depend[ed] entirely on the communicative content of the sign." *Id.* at 164.[20]  The Court explained:

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed.  This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys.  Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose.  Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Id.* at 163–64 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011)).

Brokamp argues that "[t]he upshot of *Reed* is that a law is content based whenever it is necessary to examine the content of speech in order to determine how the law applies."  Appellant Br. 29.  She submits that New York law requires such an examination of content because the law "defines the type of speech that requires a license both in terms of its 'subject matter' and its 'function or purpose.'" *Id.* at 30 (quoting *Reed v. Town of Gilbert*, 576 U.S. at 163–64).  Like the Seventh Circuit, we cannot construe *Reed* as Brokamp urges because the Supreme Court specifically disavowed that construction last term in *City of Austin v. Reagan National Advertising of Austin, LLC*, 142 S. Ct. 1464 (2022).  *See GEFT Outdoor, LLC v. City of Westfield*, 39 F.4th 821, 825 (7th Cir. 2022) (observing that, in *City of Austin*, Supreme Court "altogether rejected [idea] that a need-to-read requirement" to

---

[20] The Court illustrated with a hypothetical:  "If a sign informs its reader of the time and place a book club will discuss John Locke's Two Treatises of Government, that sign will be treated differently from a sign expressing the view that one should vote for one of Locke's followers in an upcoming election, and both signs will be treated differently from a sign expressing an ideological view in Locke's theory of government."  *Reed v. Town of Gilbert*, 576 U.S. at 164.

28

determine whether communication falls within statutory prohibition "necessarily shows regulation based on the content of speech").

In *City of Austin*, a pair of companies that owned outdoor billboards raised a First Amendment challenge to a municipal sign code that distinguished between on-premises signs (*i.e.*, signs advertising products or services offered on the same premises as the signs) and off-premises signs (*i.e.*, signs advertising products or services not available on the same premises or directing people to other locations) in more strictly limiting the latter. *See* 142 S. Ct. at 1468–70. In ruling for the billboard owners, the Fifth Circuit construed *Reed*, as Brokamp here urges, "to mean that if 'a reader must ask[,] who is the speaker and what is the speaker saying' to apply a regulation, then the regulation is automatically content based." *Id*. at 1471 (brackets omitted) (quoting *Reagan Nat'l Advert. of Austin, Inc. v. City of Austin*, 972 F.3d 696, 706 (5th Cir. 2020)). The Supreme Court reversed, characterizing the quoted language from the Fifth Circuit as "too extreme an interpretation" of *Reed. Id.* The Supreme Court concluded that the Austin sign code presented no facial First Amendment violation because, while enforcement of the challenged code required "reading a billboard to determine whether it directs readers to the property on which it stands or to some other, offsite location," the law did "not single out any topic or subject matter for differential treatment." *Id*. at 1472.

Of particular relevance here, the Supreme Court clarified that *Reed*'s "function or purpose" language did not upset well-settled precedent that "restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral." *Id*. at 1473–74. It explained that "a regulation of speech cannot escape classification as facially content based simply by swapping an obvious subject-matter distinction for a 'function or purpose' proxy that achieves the same result." *Id*. at 1474. But "[t]hat does not mean that any classification that considers function or purpose is *always* content based." *Id*. (emphasis in original).

The four dissenting justices in *City of Austin* did not take exception to this last statement, much less urge, as Brokamp does here, that *any* function or purpose classification is *necessarily* content based. Rather, the dissenters appear to have questioned the majority's conclusion that the particular classifications drawn by the Austin sign code did not depend on the message conveyed. *See id.* at 1481–84 (Thomas, *J.*, with Gorsuch, Barrett, *JJ.*, dissenting) (stating that "per *Reed*, it does not matter that Austin's code defines regulated speech by its function or purpose[;] . . . all that matters is that the regulation draws distinctions based on a sign's communicative content, which the off-premises restriction plainly does" (brackets and internal quotation marks omitted)); *see also id.* at 1480 (Alito, *J.*, concurring in part and dissenting in part) (rejecting majority's "categorical" statement that challenged code provision did "not discriminate on the basis of the topic discussed or the idea or message expressed" (internal quotation marks omitted)). To illustrate its concern, the dissent offered hypotheticals suggesting that Austin enforcing officials would have to know not only "*where* the sign is" located, but also "*what* the sign says" to determine if there was a violation of law. *Id.* at 1484 (Thomas, *J.*, dissenting) (emphasis in original) (distinguishing between sign on Catholic bookstore's premises saying "'Visit the Holy Land,'" which dissent deemed "likely an off-premises sign because it conveys a message directing people elsewhere (unless the name of the bookstore is 'Holy Land Books')" and sign saying "'Buy More Books,'" which it deemed "likely a permissible on-premises sign (unless the sign also contains the address of another bookstore across town)").

The license requirement here raises no concerns akin to those presented by these hypotheticals. New York law does not condition its mental health licensing requirement on the topics or subject matters discussed. Indeed, for purposes of licensure, it matters not at all whether a counselor speaks to a client about personal relationships, professional anxieties, medical challenges, world events, planned travel, hobbies, sports, favorite movies, or any other subject. All that matters is

30

that the conversations be for one of the statutorily identified therapeutic purposes, in addressing a mental disorder or problem, in the context of a private practice, group, or organized setting.[21]

Thus, we conclude that New York's mental health counseling license requirement is content neutral, and we apply intermediate, rather than strict, scrutiny in deciding whether Brokamp's First Amendment challenge was correctly dismissed for failure to state a claim.

## 2. Application of Intermediate Scrutiny

To defeat Brokamp's claim that New York's license-by-endorsement requirement impermissibly limits speech—even in a content-neutral way—it is defendants' burden to demonstrate that the requirement withstands intermediate scrutiny, *i.e.*, that it "(1) advances important governmental interests unrelated to the suppression of free speech and (2) does not burden substantially more speech than necessary to further those interests." *Cornelio v. Connecticut*, 32 F.4th at 171 (internal quotation marks omitted). To make the first showing, defendants must do more than demonstrate that "'the recited harms are real, not merely conjectural'"; they must show "'that the regulation will in fact alleviate these harms in a direct and material way.'" *Id.* (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. at 664). "To establish that the law does not burden substantially more speech than necessary, the government must demonstrate that the law is 'narrowly tailored' to serve the relevant interest." *Id.* (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989)). Because the intermediate scrutiny burden will frequently require the government to "identify evidence—or, at least, provide sound reasoning that draws reasonable inferences based on substantial evidence," courts will generally "wait until the summary judgment stage of the litigation" to

---

[21] This conclusion obtains with particular force to Brokamp, who holds herself out as acting with a therapeutic purpose to address mental health problems in the context of her private Nova Terra Therapy practice. *See supra* at 6.

31

determine if the burden has been carried as a matter of law. *Id.* at 172 (brackets and internal quotation marks omitted). Nevertheless, in some circumstances, the determination can be made on a motion to dismiss. *See, e.g.*, *Citizens United v. Schneiderman*, 882 F.3d 374, 380–85 (2d Cir. 2018) (affirming judgment of dismissal upon district court determination that challenged New York regulations of charitable organizations withstood intermediate scrutiny). This is such a case.

### a.   Advances Important State Interest in Public Health

Brokamp does not seriously dispute that New York's license requirement addresses an important government interest, *i.e.*, promoting and protecting public health, specifically, mental health. As her counsel stated at oral argument: "[W]e don't really dispute that [the challenged licensure] involves the health of New Yorkers." Oral Arg. Tr. 5:16–17 (arguing that point in dispute was tailoring). This appears to abandon the assertion made in Brokamp's brief that New York "has not actually said what harm it believes it is combatting with its licensing law." Appellant Br. 36. In any event, the record is to the contrary.

Defendants have detailed at length findings made by the New York State legislature, and contemporaneously memorialized in the enactment record, that (1) mental health counseling "affects the public safety and welfare"; and (2) there is a demonstrated need (a) "to protect the public from unprofessional, improper, unauthorized and unqualified practice of [mental health] counseling and psychotherapy"; (b) "to protect both the mental health profession and the public by clearly defining the scope of practice of the profession of mental health counselor"; and (c) "to increase access to vital mental health services from recognized professionals." Appellees Br. 39–43 (internal quotation marks omitted); *see Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) (recognizing that, in considering state interest in vaccination mandate challenged as unconstitutional,

"courts may take judicial notice of legislative history" (citing *Territory of Alaska v. Am. Can Co.*, 358 U.S. 224, 226–27 (1959)).[22]

The Supreme Court has long recognized the states' strong interest in protecting public health "against the consequences of ignorance and incapacity, as well as of deception and fraud." *Dent v. West Virginia*, 129 U.S. 114, 122 (1889). On this basis, the Court in *Dent* unanimously rejected the argument that a state certification requirement to practice medicine violated the Due Process right to pursue a profession. The Court explained that while everyone may at some time have occasion to consult a physician,

> comparatively few can judge of the qualifications of learning and skill which he possesses. Reliance must be placed upon the assurance given by his license, issued by an authority competent to judge in that respect, that he possesses the requisite qualifications. Due consideration, therefore, for the protection of society may well induce

---

[22] Defendants support the quoted text with citations to 2002 N.Y. Sess. Laws ch. 676, § 7, N.Y. Educ. Law §§ 6509–6511, as well as to various materials included in the licensure legislation's Bill Jacket. *See Vatore v. Comm'r of Consumer Affs.*, 83 N.Y.2d 645, 651 (1994) (referencing bill jacket in observing that "contemporaneous interpretation of a statute is entitled to considerable weight in discerning legislative intent" (internal quotation marks omitted)); *accord Doe v. Pataki*, 120 F.3d 1263, 1277 (2d Cir. 1997). The latter included letters from academicians, mental health and counseling associations, and other entities providing mental health services (*e.g.*, American Red Cross), *see* Bill Jacket for L.2002, ch. 676, at 17–40, citing anecdotal and statistical evidence "that patients can suffer significant, traumatic damage at the hands of mental health professionals who are unscrupulous, unethical, or untrained," *id.* at 29, 36; and emphasizing the value of a uniform credential that could be recognized by institutions and insurers, *id.* at 21, 32, 77. It included a Sponsor Letter indicating that the licensure legislation was intended to "ensure that those professionals offering services identified in their scope of practice have met the education, experience, and examination requirements established by law" and to increase access to mental health services from recognized professionals. *Id.* at 3. It included a Budget Report, *see id.* at 5–7, concluding that licensing requirements would protect persons seeking mental health care from "exploitation by incompetent, unqualified and fraudulent practitioners," and that standards for licensure would "raise the quality of mental health services available in the State," *id.* at 6; as well as a State Education Department Recommendation, *see id.* at 8–12, advising that the legislation's "entry standards" and the department's ability to discipline counselors who failed to comply with these standards would ensure "substantially increased public protection" consistent with standards "refined over a period of years" by the mental health counseling profession, *id.* at 11.

the state to exclude from practice those who have not such a license,
or who are found upon examination not to be fully qualified.

*Id.* at 122–23.[23]   The Supreme Court has extended this reasoning to health
professionals other than physicians.  *See, e.g., Semler v. Or. State Bd. of Dental
Exam'rs*, 294 U.S. 608, 611 (1935) ("That the state may regulate the practice of
dentistry, prescribing the qualifications that are reasonably necessary, and to that
end may require licenses and establish supervision by an administrative board, is
not open to dispute.  The state may thus afford protection against ignorance,
incapacity[,] and imposition." (citations omitted)).  Indeed, the Court has observed
that a state's "broad power to establish and enforce standards of conduct within
its borders relative to the health of everyone there" extends "naturally to the
regulation of *all* professions concerned with health."  *Barsky v. Bd. of Regents*, 347
U.S. 442, 449 (1954) (emphasis added).[24]   As noted *supra* at Note 6, at present, all
fifty states, the District of Columbia, and Puerto Rico have established licensure
standards for mental health counselors.

Thus, at the first step of intermediate scrutiny, we conclude as a matter of
law that New York's license requirement for mental health counselors both
(1) addresses a significant state interest in safeguarding and promoting public
health, and (2) does so in a way—licensure based on specified standards of
education, experience, and testing—long recognized by the Supreme Court
directly and materially to alleviate concerns about ignorant, incompetent, and/or
deceptive health care providers.

---

[23] Brokamp herself appears to recognize the value of a license to persons seeking health care from
competent and ethical practitioners.  As noted earlier, in her promotional materials, the first thing she says
about herself is that she is a "*licensed* professional."  *See* NOVA TERRA THERAPY, *supra* at 6 (emphasis added).

[24] This case thus does not raise concerns about over-licensing professions involving less apparent state
interests than public health.  *See, e.g.*, Claudia E. Haupt, *Licensing Knowledge*, 72 VAND. L. REV. 501, 515–24
(2019); *see generally* David E. Bernstein, *The Due Process Right To Pursue a Lawful Occupation: A Brighter Future
Ahead?*, 126 YALE L.J.F. 287 (2016).

In urging against the second of these findings, Brokamp points to the numerous statutory exemptions from New York's license requirements for mental health counselors, which she submits "necessarily allow whatever harm the State supposedly wants to prevent." Appellant Br. 34. But, as Brokamp herself acknowledges, underinclusiveness does not necessarily mean that a statute fails the government-interest prong of intermediate scrutiny. *See id.* at 37. Precedent has long held that laws need not address all aspects of a problem to pass scrutiny. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205, 215 (1975) (observing, in context of First Amendment strict scrutiny, "[t]his Court frequently has upheld underinclusive classifications on the sound theory that a legislature may deal with one part of a problem without addressing all of it"). Nevertheless, to the extent underinclusiveness might bear on intermediate scrutiny, *cf. Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015) (observing that underinclusiveness can "raise[] a red flag" as to whether law advances "compelling interest" required for strict scrutiny); *see also Trans Union Corp. v. FTC*, 267 F.3d 1138, 1143 (D.C. Cir. 2001) (stating, in applying intermediate scrutiny, that "[u]nderinclusiveness analysis ensures that the proffered state interest actually underlies the law, so a rule is struck for *under*inclusiveness only if it cannot fairly be said to advance any genuinely substantial government interest" (brackets and internal quotation marks omitted)), the exemptions here at issue raise no colorable claim as to the license requirement's direct and material alleviation of public health concerns.

In general, the exemptions stated in N.Y. Educ. Law § 8410 identify persons acting in circumstances reducing the risk of incompetent or deceptive counseling. These include persons already licensed in a related health field such as licensed physicians, physician's assistants, registered professional nurses, nurse practitioners, psychologists, master social workers, clinical social workers, and behavior analysts. *See* N.Y. Educ. Law § 8410(1). Such persons need not obtain a further license to provide what New York defines as mental health counseling provided that they do not represent themselves as "licensed mental health

counselor[s]."  *Id.*  An exemption also pertains to persons already licensed or credentialed in other fields—attorneys, rape crisis counselors, and alcohol and substance abuse counselors—but only insofar as they may provide counseling "within their respective established authorities."  *Id.* § 8410(2).  These two exemptions effectively acknowledge the reality that mental health issues can arise in various professional contexts and reflect a legislative judgment that other professional licenses provide a sufficient safeguard against incompetent or deceptive practices, at least when the professional refrains from holding himself out as a "licensed mental health counselor" or limits his discussions to the scope of his licensed authority.  Other exemptions, applying to persons training in a state-approved educational program or acting through, with, or at the direction of an otherwise duly licensed counselor, *see id.* § 8410(3), (7), (8), similarly present circumstances thought to present reduced risks of incompetent or deceptive counseling.  As for the exemption afforded members of the clergy, to the extent they provide "pastoral counseling services . . . within the context of [their] ministerial charge or obligation," *id.* § 8410(4), this avoids any possible infringement of First Amendment religion rights.

Brokamp does not suggest otherwise.  Instead, she focuses her exemption argument largely on § 8410(5), which says that New York's license requirement does not "[p]rohibit or limit individuals, churches, schools, teachers, organizations, or not-for-profit businesses[] from providing instruction, advice, support, encouragement, or information" to others.  To the extent this assures relatives, friends, teachers, church groups, and support organizations such as the Salvation Army, the Red Cross, and Alcoholics Anonymous that they can offer instruction, advice, support, encouragement, and information without a mental health counselor license, New York could reasonably conclude that the benefits of such interactions sufficiently outweigh the risks to public health as to be excused from license requirements.  *See generally Jacobson v. Massachusetts*, 197 U.S. 11, 25 (1905) (recognizing state police power to embrace "reasonable regulations" to

36

protect public health, "mode or manner" of which "is within the discretion of the state, subject . . . to the condition that no rule prescribed by a state . . . shall contravene the Constitution of the United States").

In urging otherwise, Brokamp submits that the exemption can reach such a wide variety of persons—"life coaches, mentors, and self-help gurus"—as to risk the very harm that New York purportedly wants to prevent. Appellant Br. 42 (internal quotation marks omitted). Brokamp's concern is overstated. The license requirement would still reach such persons, however they characterized themselves, if they spoke to others for a therapeutic purpose pertaining to a mental disorder or problem in the particular circumstances specified in the definition of mental health counseling.

In sum, Brokamp's complaint has not plausibly alleged that New York's exemptions from its license requirements for mental health counselors belie a conclusion that those requirements serve a significant state interest in protecting public mental health by directly and materially alleviating concerns about incompetent and deceptive counselors.

b.    Tailoring

In arguing at the second step of intermediate scrutiny that defendants have not carried their tailoring burden, Brokamp reiterates certain points already addressed:   (1) New York's expansive definition of mental health counseling means that its licensing requirements burden substantially more speech than necessary to further the state's interest in protecting public health, and (2) numerous license exemptions in fact allow the very harms that the state purportedly seeks to prevent.  Further, she submits that this tailoring defect is particularly apparent in the application of New York's license requirement to her because, by virtue of Brokamp's Virginia license, extensive education and experience, and satisfactory unlicensed counseling in New York during the

pandemic, it is plain that she poses no threat to public health.  Neither argument persuades.

We have already detailed how New York's four-part definition of "the profession of mental health counseling" limits the speech requiring a mental health counselor license to that (1) engaged in for a therapeutic purpose, (2) focused on a disorder or problem of the psyche, and (3) given in the particular circumstances of a private practice, group, or otherwise organized setting.  *See supra* at 8–9.  These limits serve to tailor the license requirement to those circumstances where persons are most likely to present as professional mental health counselors in order to gain client trust and, thus, where there is a state interest in minimizing the risks incompetence or deception pose to public health.

At the same time, statutory exemptions serve to ensure that even speech qualifying as mental health counseling is not unduly burdened with a mental health counselor license requirement.  Thus, as detailed more fully *supra* at 35–36, no mental health counselor license is required for persons already holding other New York health care licenses, nor for persons licensed in other specified professions, to the extent such persons provide counseling only within their licensed authorities or do not hold themselves out as mental health counselors. No license requirement is imposed on members of the clergy, or on students or persons working in state-approved programs or under the supervision or direction of licensed mental health counselors.  No license is required for individuals, churches, schools, teachers, organizations, or not-for-profit businesses providing instruction, advice, support, encouragement, or information to others.  Brokamp submits that mental health counseling often involves "instruction, advice, support, encouragement, or information."  Appellant Br. 36 (internal quotation marks omitted).  We expect that is so, but to constitute mental health counseling requiring a license, the instruction, advice, support, etc., must be more than empathetic.  It must be given for a statutorily identified therapeutic

purpose, in order to address a disorder or problem of the psyche, in private practice, group, or organized settings. *See* N.Y. Educ. Law § 8402(1)(a).

Thus, from the statutory definition of "mental health counseling" together with the statutory exemptions, we can conclude that the law is sufficiently tailored to ensure that its licensing requirement does not burden more speech than necessary to allow the state to protect residents against incompetent and deceptive mental health counselors. *See Cornelio v. Connecticut*, 32 F.4th at 171.

Nor is a different conclusion warranted in Brokamp's particular case. As noted *supra* at 10–11, to provide mental health counseling services to New York residents, she need satisfy only the state's license-by-endorsement requirement, not the more detailed showing for initial licensure. This streamlined endorsement procedure itself tailors the licensing statute to avoid an undue burden on the speech of counselors, such as Brokamp, already licensed and in good standing in another state. Insofar as Brokamp might be understood to complain that even a license-by-endorsement requirement fails intermediate scrutiny, her argument falls short because New York's interest in protecting its residents from incompetent or deceptive counselors warrants the state ensuring, at a minimum, that persons really are licensed and in good standing in another state before exempting them from the state's initial license requirement. Similarly, requiring a showing that the out-of-state license was obtained by satisfying educational, experiential, and testing requirements comparable to New York's is sufficiently tailored to the state's public health interest to avoid unduly burdening First Amendment rights. Indeed, it appears that Brokamp can easily make this showing such that it is not seriously burdensome as applied to her. *See supra* at 5–6. As for New York's requirement that license-by-endorsement applicants (as well as initial applicants) complete a course in the identification of child abuse, Brokamp raises no specific First Amendment tailoring challenge to this requirement, which is, in any event, tailored to yet a further state interest—this one implicating criminal law

39

as well as public health—*i.e.*, maximizing the identification and prevention of abuse against particularly vulnerable victims: children.[25] Finally, no colorable claim of undue burden is raised by the $371 fee for licensure by endorsement. Although higher than the $175 fee for initial licensure, Brokamp does not allege that this fee is unreasonable to cover administrative costs in connection with confirming that a person seeking license by endorsement holds an out-of-state license, obtained that license by satisfying requirements comparable to New York's, and is in good standing. *See American Entertainers, LLC v. City of Rocky Mount*, 888 F.3d 707, 711 (4th Cir. 2018) (holding that "'ordinance requiring a person to pay a license or permit fee before he can engage in a constitutionally protected activity does not violate the Constitution so long as the purpose of charging the fee is limited to defraying expenses incurred in furtherance of a legitimate state activity'" (quoting *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 395 (6th Cir. 2001))).

In sum, because licensure by endorsement is the only requirement that Brokamp must satisfy to provide mental health counseling services to New York residents and because that requirement, insofar as it affects speech, survives intermediate scrutiny both on its face and as applied, Brokamp fails to state a First Amendment claim for which relief can be granted.

### B.    Vagueness Claims[26]

A statute is unconstitutionally vague in violation of the Due Process Clause if it (1) "fails to provide a person of ordinary intelligence fair notice of what is

---

[25] New York enlists a variety of professionals in this endeavor. *See* N.Y. Soc. Serv. Law § 413(1)(a).

[26] In her reply brief, Brokamp specifically disavows a Fourteenth Amendment vagueness claim, insisting that her claim is that "the licensing law is unconstitutionally vague *under the First Amendment*." Appellant Reply Br. 28 (emphasis in original).  However, the Supreme Court has explained that "[v]agueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause." *United States v. Williams*, 553

prohibited," or (2) "is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18 (2010) (internal quotation marks omitted); *see Melendez v. City of New York*, 16 F.4th at 1015. Vagueness review is heightened when, as here, a challenged statute pertains to speech protected by the First Amendment. *See Holder v. Humanitarian L. Project*, 561 U.S. at 19. Nevertheless, to the extent Brokamp complains that New York's license requirement is unconstitutionally vague both on its face and as applied to her, we first consider her as-applied challenge because a "'plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Id.* at 20 (brackets omitted) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 495 (1982)).[27] "That rule makes no exception for conduct in the form of speech." *Id.*[28]

### 1. As-Applied Vagueness Claim

Brokamp argues that New York's mental health counselor license requirement is unconstitutionally vague because it effectively "both prohibits and permits the exact same conduct." Appellant Br. 39. To support this argument,

---

U.S. 285, 304 (2008). Cognizant of our duty to read the pleadings in the light most favorable to Brokamp, we will interpret Brokamp's vagueness claims as brought under the Fourteenth Amendment.

[27] While Brokamp's vagueness claim, pleaded by frequent references to her by name, *see* Compl. ¶¶ 105–12, might be construed, as the district court did, to allege an as-applied vagueness challenge, because she argues on appeal that "*nobody* can tell what speech is covered by the law," Appellant Br. 39 n.3 (emphasis in original), we assume that she wishes to pursue a vagueness challenge both facially and as applied and that Brokamp's complaint is properly read to address both challenges. Nevertheless, as we explain in text, the failure of Brokamp's as-applied challenge necessarily defeats her facial challenge.

[28] As the Supreme Court has explained, a plaintiff whose vagueness challenge is "based on the speech of others . . . may have a valid overbreadth claim under the First Amendment, but our precedents make clear that a [Due Process] vagueness challenge does not turn on whether a law applies to a substantial amount of protected expression." *Holder v. Humanitarian L. Project*, 561 U.S. at 20 (stating that, otherwise, vagueness and overbreadth doctrines "would be substantially redundant"). As noted *supra* at Note 15, Brokamp specifically disavows an overbreadth claim in this case.

Brokamp cites that phrase in the statutory definition of "mental health counseling" specifying the purpose for which "verbal methods" must be used to warrant licensing, *i.e.*, "evaluation, assessment, amelioration, treatment, modification, or adjustment." N.Y. Educ. Law § 8402(1)(a). She submits that this is coterminous with the statutory exemption from licensure for "instruction, advice, support, encouragement, or information." *Id.* § 8410(5). For the same reason we rejected this argument as a matter of law when advanced to challenge dismissal of Brokamp's First Amendment claims, *see supra* at 35–37, we reject it as a matter of law as advanced to challenge dismissal of Brokamp's vagueness claim. The quoted definitional phrase is particular, referencing speech used for a therapeutic purpose, having a prescribed focus, and occurring in a particular circumstance. Thus, while a mental health counselor may provide "instruction, advice, support, encouragement, or information" to clients, the statutory definition of mental health counseling serves clear notice that it is only when the counselor does so (1) for therapeutic purposes of "evaluation, assessment, amelioration, treatment, modification, or adjustment," (2) focused on a mental "disability, problem, or disorder," and (3) in the context of "private practice, group, or organized settings" that a mental health counselor license is required. Meanwhile, the exception serves notice that absent such prescribed purposes, foci, or circumstances, there is no limit placed on the ability to provide "instruction, advice, support, encouragement, or information" to others.[29]

Here, there can be no question that Brokamp's professional talk therapy practice falls squarely within this statutory definition of mental health counseling requiring licensure and that both she and enforcement authorities so understood. In her promotional materials to clients, Brokamp describes herself as "a licensed professional counselor"—a reference to her Virginia mental health counselor

---

[29] This makes implausible Brokamp's pleading that "life coaches, self-help gurus, mentors, religious leaders, or even close friends . . . routinely offer[] advice that falls within the legal definition of 'mental health counseling.'" Compl. ¶ 96.

license.  *See* NOVA TERRA THERAPY, *supra* at 6.  In short, she recognizes that she is no mere life coach, mentor, or self-help guru, but a professional mental health counselor.  Further, her promotional materials state that she can provide "relief from trauma, stress, grief, and anxiety using CBT [cognitive behavioral therapy] and other research-supported counseling approaches."  *Id.*  "Relief" promises more than the "instruction, advice, support, encouragement, or information" that N.Y. Educ. Law § 8410(5) exempts from licensure.  Rather, "relief" promises "amelioration," or at least "modification, or adjustment": the therapeutic purposes New York uses to define mental health counseling requiring licensure.  N.Y. Educ. Law § 8402(1)(a).  Further, what Brokamp promises relief from is "trauma, stress, grief, and anxiety," *id.*, which as a person with two graduate degrees in mental health counseling and two decades of mental health counseling experience and licensure, she would know can reflect a mental "disability, problem, or disorder," the statutorily prescribed focus of mental health counseling.  Indeed, that conclusion is reinforced by Brokamp's representation that, in obtaining such relief for clients, she uses professional counseling methods:  CBT—a widely used form of psychotherapy, *see Cognitive Behavioral Therapy*, MAYO CLINIC, https://www.mayoclinic.org/tests-procedures/cognitive-behavioral-therapy/about/pac-20384610 (last accessed Apr. 25, 2023)—as well as "other research-supported counseling approaches," NOVA TERRA THERAPY, *supra* at 6.  Finally, Brokamp only provides such counseling in the context of her private practice, *see id.*, a factor further bringing her work squarely within New York's definition of "mental health counseling" requiring licensure, *see* N.Y. Educ. Law § 8402(1)(a).

Given these undisputed facts, it is no surprise that, in her Complaint, Brokamp herself acknowledges that her "teletherapy conversations with her clients constitute 'mental health counseling' under New York law because they include the 'assessment' and 'amelioration' of 'problem[s] or disorder[s] [of] behavior, character, development, emotion, personality or relationships.'"  Compl. ¶ 33 (alterations in original).  Further, Brokamp had notice that her practice

43

constituted "mental health counseling" when the N.Y. Board confirmed as much to her via email. *See id.* ¶ 38; *see supra* at 7. Thus, there is no colorable claim as to Brokamp having notice that the services she offers clients are mental health counseling subject to New York's license requirement.

For much the same reasons that Brokamp had notice that her counseling falls squarely within New York's definition of mental health counseling requiring licensure, so did state enforcement authorities. *See Farrell v. Burke*, 449 F.3d 470, 493–94 (2d Cir. 2006) (Sotomayor, *J.*) (observing that where party's conduct falls "so squarely in the core" of statute, "no reasonable enforcing officer could doubt the law's application in the circumstances"). That is evident from the fact that when Brokamp inquired of the N.Y. Board whether she could continue providing unlicensed counseling to New York residents after expiration of Executive Order 202.15, the N.Y. Board promptly told her that she could not. *See* Compl. ¶ 38.

Thus, Brokamp's as-applied vagueness challenge was properly dismissed for failure to state a claim.

### 2. Facial Vagueness Claim

Our ruling that Brokamp has failed to state an as-applied vagueness claim is fatal to her facial vagueness challenge. As this court has observed, "[a] facial vagueness challenge will succeed only when the challenged law can never be validly applied." *Vermont Rt. to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 128 (2d Cir. 2014). That is because a party pursuing a facial challenge must plausibly allege that a legal requirement is "vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all. Such a provision simply has *no* core." *Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. at 495 n.7 (emphasis in original) (internal quotation marks and citation omitted). For reasons already discussed, New York's definition of "mental health

44

counseling" provides a counseling "core" subject to licensure, which is here recognized by both Brokamp and the relevant state enforcement authority to apply to her counseling practice. Thus, Brokamp cannot plausibly plead that New York's license requirement is unconstitutionally vague, either facially or as applied.

## CONCLUSION

To summarize,

1.  As to standing,

    a.  Because Brokamp plausibly alleges that New York's prohibition of unlicensed mental health counseling—under threat of criminal prosecution—by itself chills her from engaging in First Amendment-protected speech, she need not apply for a license to plead injury sufficient for standing.

    b.  Because New York allows Brokamp, a Virginia-licensed mental health counselor, to satisfy New York's streamlined process for licensure by endorsement, she can claim injury from, and therefore has standing to challenge, that part of New York's license requirement.

    c.  Because Brokamp need not satisfy the particular requirements for initial licensure to provide mental health counseling to New York residents, she can allege no injury from, and therefore has no standing to challenge, that part of the law. To that extent her claims are properly dismissed for lack of jurisdiction. *See* Fed. R. Civ. P. 12(b)(1).

2.  As to Brokamp's First Amendment claims,

    a.  Assuming that New York's mental health counselor license requirement limits speech unrelated to conduct, the

45

requirement is nevertheless subject to intermediate, not strict, scrutiny because the limitation, although defined in part by purpose and function, is nevertheless content neutral.

b. New York's license requirement withstands intermediate scrutiny as a matter of law because there is no question that the law (i) serves an important government interest in promoting and protecting public health, specifically, public mental health; and (ii) is narrowly tailored by statutory definition and exemptions to advance that interest without unduly burdening speech. Thus, her First Amendment claims are properly dismissed for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

3. As to vagueness, because Brokamp fails plausibly to plead that New York's license requirement is unconstitutionally vague as applied to her, both her facial and as-applied Due Process claims are properly dismissed. *See id.*

Accordingly, for the reasons stated in this opinion, we **AFFIRM** the judgment dismissing plaintiff's claims in their entirety.

46